## EXHIBIT A

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| TUPPERWARE BRANDS CORPORATION, *et al.*,[1] | ) Case No. 24-12156 (BLS) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |
|  | ) **Re: Docket No. __** |

---

**ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF
KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP
AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE
AS OF SEPTEMBER 17, 2024**

---

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an order (the "Order") authorizing the Debtors to retain and employ Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "Kirkland") as their attorneys effective as of the Petition Date, pursuant to sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"); and the Court having reviewed the Application, the Declaration of Spencer A. Winters, the president of Spencer A. Winters, P.C., a partner of Kirkland & Ellis LLP, and a partner of Kirkland & Ellis International LLP (the "Winters Declaration"), and the

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tupperware Brands Corporation (2333); Dart Industries Inc. (5570); Deerfield Land Corporation (0323); Premiere Products, Inc. (4064); Tupperware Home Parties LLC (1671); Tupperware International Holdings Corporation (8983); Tupperware Products AG (6765); Tupperware Products, Inc. (8796); Tupperware U.S., Inc. (2010); and Tupperware Brands Latin America Holdings, L.L.C. (0264). The location of the Debtors' service address in these chapter 11 cases is: 14901 S Orange Blossom Trail, Orlando, FL 32837.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

declaration of Brian J. Fox, the Chief Restructuring Officer of Tupperware Brands Corporation (the "Brian J. Fox Declaration"); and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that the Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found based on the representations made in the Application and in the Winters Declaration that (a) Kirkland does not hold or represent an interest adverse to the Debtors' estates and (b) Kirkland is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; and the Court having found that the relief requested in the Application is in the best interests of the Debtors' estates their creditors, and other parties in interest; and the Court having found that the Debtors provided adequate and appropriate notice of the Application under the circumstances and that no other or further notice is required; and the Court having reviewed the Application and having heard statements in support of the Application at a hearing held before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

1.      The Application is granted to the extent set forth herein.

2.      The Debtors are authorized to retain and employ Kirkland as their attorneys effective as of the Petition Date in accordance with the terms and conditions set forth in the Application and in the Engagement Letter attached hereto as **Exhibit 1**.

3.      Kirkland is authorized to provide the Debtors with the professional services as described in the Application and the Engagement Letter. Specifically, but without limitation, Kirkland will render the following legal services:

a.      advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

b.      advising and consulting on their conduct during these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

c.      attending meetings and negotiating with representatives of creditors and other parties in interest;

d.      taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

e.      preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

f.      representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

g.      advising the Debtors in connection with any potential sale of assets;

h.      appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

i.      advising the Debtors regarding tax matters;

j.      taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k.      performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including:  (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors' assets; and (iii) advising the Debtors on corporate and litigation matters.

4.     Kirkland shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Rules, and any other applicable procedures and orders of the Court. Kirkland also intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013*, both in connection with the Application and the interim and final fee applications to be filed by Kirkland in these chapter 11 cases.

5.     Notwithstanding anything in the Engagement Letter to the contrary, Kirkland shall apply any remaining amounts of its prepetition special purpose retainer as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to an order of the Court awarding fees and expenses to Kirkland.  Kirkland is authorized without further order of the Court to reserve and apply amounts from the prepetition special purpose retainer that would otherwise be applied toward payment of postpetition fees and expenses as are necessary and appropriate to compensate and reimburse Kirkland for fees or expenses incurred on or prior to the Petition Date consistent with its ordinary course billing practices.

6.     Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the Declarations attached to the Application, the reimbursement provisions allowing the reimbursement of fees and expenses incurred in connection with participating in, preparing for, or responding to any action, claim, suit, or proceeding brought by or against any party that relates to the legal services provided under the Engagement Letter and fees for defending any objection to

Kirkland's fee applications under the Bankruptcy Code are not approved pending further order of the Court.

7.     Notwithstanding anything contained in the Application, its exhibits, and/or any supporting filings, including the Engagement Letter, the Debtors' rights to object to interim and/or final allowance of Kirkland's fees are fully reserved under the applicable bankruptcy law and the procedures set forth in the Interim Compensation Procedures Order.

8.     Kirkland shall not charge a markup to the Debtors with respect to fees billed by contract attorneys who are hired by Kirkland to provide services to the Debtors and shall ensure that any such contract attorneys are subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

9.     Kirkland shall provide ten-business-days' notice to the Debtors, the U.S. Trustee, and any official committee before any increases in the rates set forth in the Application or the Engagement Letter are implemented and shall file such notice with the Court.  The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

10.     The Debtors and Kirkland are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

11.     Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Rules are satisfied by the contents of the Application.

12.     To the extent the Application, the Winters Declaration, the Brian J. Fox Declaration, or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern.

13.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

14.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

## EXHIBIT 1

**Engagement Letter**

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

Anup Sathy, P.C.
To Call Writer Directly:
+1 312 862 2046
anup.sathy@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

March 19, 2020

Karen M. Sheehan
Executive Vice President, Chief Legal Officer & Secretary
Tupperware Brands Corporation
14901 S. Orange Blossom Trail
Orlando, Florida 32837

Re:     Retention to Provide Legal Services

Dear Ms. Sheehan:

We are very pleased that you have asked us to represent Tupperware Brands Corporation and only those wholly or partially owned subsidiaries listed in an addendum or supplement to this letter (collectively, "Client") in connection with a potential restructuring. Please note, the Firm's representation is only of Client; the Firm does not and will not represent any direct or indirect shareholder, director, officer, partner, employee, affiliate, or joint venturer of Client or of any other entity.

**General Terms.** This retention letter (this "Agreement") sets forth the terms of Client's retention of Kirkland & Ellis  LLP (and its affiliated entity Kirkland & Ellis International LLP (collectively, the "Firm")) to provide legal services and constitutes an agreement between the Firm and Client (the "Parties"). This Agreement sets forth the Parties' entire agreement for rendering professional services for the current matter, as well as for all other existing or future matters (collectively, the "Engagement"), except where the Parties otherwise agree in writing.

**Fees.** The Firm will bill Client for fees incurred at its regular hourly rates and in quarterly increments of an hour (or in smaller time increments as otherwise required by a court). The Firm reserves the right to adjust the Firm's billing rates from time to time in the ordinary course of the Firm's representation of Client.

Although the Firm will attempt to estimate fees to assist Client in Client's planning if requested, such estimates are subject to change and are not binding unless otherwise expressly and unequivocally stated in writing.

**Expenses.** Expenses related to providing services shall be included in the Firm's statements as disbursements advanced by the Firm on Client's behalf. Such expenses include

Beijing   Boston   Dallas   Hong Kong   Houston   London   Los Angeles   Munich   New York   Palo Alto   Paris   San Francisco   Shanghai   Washington, D.C.

# KIRKLAND & ELLIS LLP

Karen M. Sheehan
Tupperware Brands Corporation
March 19, 2020
Page 2

photocopying, printing, scanning, witness fees, travel expenses, filing and recording fees, certain secretarial overtime, and other overtime expenses, postage, express mail, and messenger charges, deposition costs, computerized legal research charges, and other computer services, and miscellaneous other charges. Client shall pay directly (and is solely responsible for) certain larger costs, such as consultant or expert witness fees and expenses, and outside suppliers' or contractors' charges, unless otherwise agreed by the Parties. By executing this Agreement below, Client agrees to pay for all charges in accordance with the Firm's schedule of charges, a copy of which is attached hereto at Schedule 1, as revised from time to time.

**Billing Procedures.** The Firm's statements of fees and expenses are typically delivered monthly, but the Firm reserves the right to alter the timing of delivering its statements depending on circumstances. Client may have the statement in any reasonable format it chooses, but the Firm will select an initial format for the statement unless Client otherwise requests in writing. Depending on the circumstances, however, estimated or summary statements may be provided, with time and expense details to follow thereafter.

**Retainer.** Client agrees to provide to the Firm an "advance payment retainer," as defined in Rule 1.15(c) of the Illinois Rules of Professional Conduct, *Dowling v. Chicago Options Assoc., Inc.*, 875 N.E.2d 1012, 1018 (Ill. 2007), and *In re Caesars Entm't Operating Co., Inc.*, No. 15-01145 (ABG) (Bankr. N.D. Ill. May 28, 2015) (and cases cited therein), in the amount of $_____. In addition, Client agrees to provide one or more additional advance payment retainers upon request by the Firm so that the amount of any advance payment retainers remains at or above the Firm's estimated fees and expenses. The Firm may apply the advance payment retainers to any outstanding fees as services are rendered and to expenses as they are incurred. Client understands and acknowledges that any advance payment retainers are earned by the Firm upon receipt, any advance payment retainers become the property of the Firm upon receipt, Client no longer has a property interest in any advance payment retainers upon the Firm's receipt, any advance payment retainers will be placed in the Firm's general account and will not be held in a client trust account, and Client will not earn any interest on any advance payment retainers; provided, however, that solely to the extent required under applicable law, at the conclusion of the Engagement, if the amount of any advance payment retainers held by the Firm is in excess of the amount of the Firm's outstanding and estimated fees, expenses, and costs, the Firm will pay to Client the amount by which any advance payment retainers exceed such fees, expenses, and costs. Client further understands and acknowledges that the use of advance payment retainers is an integral condition of the Engagement, and is necessary to ensure that: Client continues to have access to the Firm's services; the Firm is compensated for its representation of Client; the Firm is not a pre-petition creditor in the event of a Restructuring Case; and that in light of the foregoing, the provision of the advance payment retainers is in Client's best interests. The

# KIRKLAND & ELLIS LLP

Karen M. Sheehan
Tupperware Brands Corporation
March 19, 2020
Page 3

fact that Client has provided the Firm with an advance payment retainer does not affect Client's right to terminate the client-lawyer relationship.

Please be advised that there is another type of retainer known as a "security retainer," as defined in *Dowling v. Chicago Options Assoc.*, 875 N.E.2d at 1018, and *In re Caesars Entm't Operating Co., Inc.*, No. 15-01145 (ABG) (Bankr. N.D. Ill. May 28, 2015) (and cases cited therein). A security retainer remains the property of the client until the lawyer applies it to charges for services that are actually rendered and expenses that are incurred. Any unearned funds are then returned to the client. In other circumstances not present here, the Firm would consider a security retainer and Client's funds would be held in the Firm's segregated client trust account until applied to pay fees and expenses. Funds in a security retainer, however, can be subject to claims of Client's creditors and, if taken by creditors, may leave Client unable to pay for ongoing legal services, which may result in the Firm being unable to continue the Engagement. Moreover, a security retainer creates clawback risks for the Firm in the event of an insolvency proceeding. The choice of the type of retainer to be used is Client's choice alone, but for the Engagement and for the reasons set forth above, the Firm is unwilling to represent Client in the Engagement without using the advance payment retainer.

**Termination.** The Engagement may be terminated by either Party at any time by written notice by or to Client. The Engagement will end at the earliest of (a) Client's termination of the Engagement, (b) the Firm's withdrawal, and (c) the substantial completion of the Firm's substantive work. If permission for withdrawal is required by a court, the Firm shall apply promptly for such permission, and termination shall coincide with the court order for withdrawal. If this Agreement or the Firm's services are terminated for any reason, such termination shall be effective only to terminate the Firm's services prospectively and all the other terms of this Agreement shall survive any such termination.

Upon cessation of the Firm's active involvement in a particular matter (even if the Firm continues active involvement in other matters on Client's behalf), the Firm will have no further duty to inform Client of future developments or changes in law as may be relevant to such matter. Further, unless the Parties mutually agree in writing to the contrary, the Firm will have no obligation to monitor renewal or notice dates or similar deadlines that may arise from the matters for which the Firm had been retained.

**Cell Phone and E-Mail Communication.** The Firm hereby informs Client and Client hereby acknowledges that the Firm's attorneys sometimes communicate with their clients and their clients' professionals and agents by cell telephone, that such communications are capable of being intercepted by others and therefore may be deemed no longer protected by the attorney-client

# KIRKLAND & ELLIS LLP

Karen M. Sheehan
Tupperware Brands Corporation
March 19, 2020
Page 4

privilege, and that Client must inform the Firm if Client does not wish the Firm to discuss privileged matters on cell telephones with Client or Client's professionals or agents.

The Firm hereby informs Client and Client hereby acknowledges that the Firm's attorneys sometimes communicate with their clients and their clients' professionals and agents by unencrypted e-mail, that such communications are capable of being intercepted by others and therefore may be deemed no longer protected by the attorney-client privilege, and that Client must inform the Firm if Client wishes to institute a system to encode all e-mail between the Firm and Client or Client's professionals or agents.

**File Retention.**  All records and files will be retained and disposed of in compliance with the Firm's policy in effect from time to time.  Subject to future changes, it is the Firm's current policy generally not to retain records relating to a matter for more than five years.  Upon Client's prior written request, the Firm will return client records that are Client's property to Client prior to their destruction.  It is not administratively feasible for the Firm to advise Client of the closing of a matter or the disposal of records.  The Firm recommends, therefore, that Client maintain Client's own files for reference or submit a written request for Client's client files promptly upon conclusion of a matter.  Notwithstanding anything to the contrary herein, Client acknowledges and agrees that any applicable privilege of Client (including any attorney-client and work product privilege or any duty of confidentiality) (collectively, the "Privileges") belongs to Client alone and not to any successor entity (including without limitation the Client after a change in control or other similar restructuring or non-restructuring transaction (including without limitation a reorganized Client after the effective date of a plan of reorganization), whether through merger, asset or equity sale, business combination, or otherwise, irrespective of whether such transaction occurs in a Restructuring Case or on an out-of-court basis (in each case, a "Transaction")).  Client hereby waives any right, title, and interest of such successor entity to all information, data, documents, or communications in any format covered by the Privileges that is in the possession of the Firm ("Firm Materials"), to the extent that such successor entity had any right, title, and interest to such Firm Materials.  For the avoidance of doubt, Client agrees and acknowledges that after a Transaction, such successor entity shall have no right to claim or waive the Privileges or request the return of any such Firm Materials; instead, such Firm Materials shall remain in the Firm's sole possession and control for its exclusive use, and the Firm will (a) not waive any Privileges or disclose the Firm Materials, (b) take all reasonable steps to ensure that the Privileges survive and remain in full force and effect, and (c) assert the Privileges to prevent disclosure of any Firm Materials.

**Data Protection.**  You further agree that, if you provide us with personal data, you have complied with applicable data protection legislation and that we may process such personal data in accordance with our Data Transfer and Privacy Policy at www.kirkland.com.  We process your

# KIRKLAND & ELLIS LLP

Karen M. Sheehan
Tupperware Brands Corporation
March 19, 2020
Page 5

personal data in order to (i) carry out work for you; (ii) share the data with third parties such as expert witnesses and other professional advisers if our work requires; (iii) comply with applicable laws and regulations and (iv) provide you with information relating to our Firm and its services.

**Conflicts of Interest.**  As is customary for a law firm of the Firm's size, there are numerous business entities, with which Client currently has relationships, that the Firm has represented or currently represents in matters unrelated to Client.

Further, in undertaking the representation of Client, the Firm wants to be fair not only to Client's interests but also to those of the Firm's other clients.  Because Client is engaged in activities (and may in the future engage in additional activities) in which its interests may diverge from those of the Firm's other clients, the possibility exists that one of the Firm's current or future clients may take positions adverse to Client (including litigation or other dispute resolution mechanisms) in a matter in which such other client may have retained the Firm or one of Client's adversaries may retain the Firm in a matter adverse to another entity or person.

In the event a present conflict of interest exists between Client and the Firm's other clients or in the event one arises in the future, Client agrees to waive any such conflict of interest or other objection that would preclude the Firm's representation of another client (a) in other current or future matters substantially unrelated to the Engagement or (b) other than during a Restructuring Case (as defined below), in other matters related to Client (such representation an "Allowed Adverse Representation").  By way of example, such Allowed Adverse Representations might take the form of, among other contexts: litigation (including arbitration, mediation and other forms of dispute resolution); transactional work (including consensual and non-consensual merger, acquisition, and takeover situations, financings, and commercial agreements); counseling (including advising direct adversaries and competitors); and restructuring (including bankruptcy, insolvency, financial distress, recapitalization, equity and debt workouts, and other transactions or adversarial adjudicative proceedings related to any of the foregoing and similar matters).

Client also agrees that it will not, for itself or any other entity or person, assert that either (i) the Firm's representation of Client or any of Client's affiliates in any past, present, or future matter or (ii) the Firm's actual or possible possession of confidential information belonging to Client or any of Client's affiliates is a basis to disqualify the Firm from representing another entity or person in any Allowed Adverse Representation.  Client further agrees that any Allowed Adverse Representation does not breach any duty that the Firm owes to Client or any of Client's affiliates. Client also agrees that the Firm's representation in the Engagement is solely of Client and that no member or other entity or person related to it (such as a shareholder, parent, subsidiary, affiliate, director, officer, partner, employee, or joint venturer) has the status of a client for conflict of interest purposes.

# KIRKLAND & ELLIS LLP

Karen M. Sheehan
Tupperware Brands Corporation
March 19, 2020
Page 6

In addition, if a waiver of a conflict of interest necessary to allow the Firm to represent another client in a matter that is not substantially related to the Engagement is not effective for any reason, Client agrees that the Firm may withdraw from the Engagement.  Should that occur, Client will not, for itself or any other entity or person, seek to preclude such termination of services or assert that either (a) the Firm's representation of Client or any of Client's affiliates in any past, present, or future matter or (b) the Firm's actual or possible possession of confidential information belonging to Client or any of Client's affiliates is a basis to disqualify the Firm from representing such other client or acting on such adverse matter.

It is important that you review this letter carefully and consider all of the advantages and disadvantages of waiving certain conflicts of interests that would otherwise bar the Firm from representing parties with interests adverse to you during the time in which the Firm is representing you.  You also understand that because this waiver includes future issues and future clients that are unknown and unknowable at this time, it is impossible to provide you with any more details about those prospective clients and matters.  Thus, in choosing to execute this waiver, you have recognized the inherent uncertainty about the array of potential matters and clients the Firm might take on in matters that are adverse to you but have nonetheless decided it is in your interest to waive conflicts of interest regarding the Allowed Adverse Representations and waive rights to prohibit the Firm's potential withdrawal should a conflict waiver prove ineffectual.

The Firm informs Client that certain entities owned by current or former Firm attorneys and senior staff ("attorney investment entities") have investments in funds or companies that may, directly or indirectly, be affiliated with Client, hold investments in Client's debt or equity securities, may be adverse to Client, or conduct commercial transactions with Client (each, a "Passive Holding").  The attorney investment entities are passive and have no management or other control rights in such funds or companies.  The Firm notes that other persons may in the future assert that a Passive Holding creates, in certain circumstances, a conflict between the Firm's exercise of its independent professional judgment in rendering advice to Client and the financial interest of Firm attorneys participating in the attorney investment entities, and such other persons might seek to limit Client's ability to use the Firm to advise Client on a particular matter.  While the Firm cannot control what a person might assert or seek, the Firm believes that the Firm's judgment will not be compromised by virtue of any Passive Holding.  Please let us know if Client has any questions or concerns regarding the Passive Holdings.  By executing this letter, Client acknowledges the Firm's disclosure of the foregoing.

**Restructuring Cases**.  If it becomes necessary for Client to commence a restructuring case under chapter 11 of the U.S. Bankruptcy Code (a "Restructuring Case"), the Firm's ongoing employment by Client will be subject to the approval of the court with jurisdiction over the petition.  If necessary, the Firm will take steps necessary to prepare the disclosure materials

# KIRKLAND & ELLIS LLP

Karen M. Sheehan
Tupperware Brands Corporation
March 19, 2020
Page 7

required in connection with the Firm's retention as lead restructuring counsel. In the near term, the Firm will begin conflicts checks on potentially interested parties as provided by Client.

If necessary, the Firm will prepare a preliminary draft of a schedule describing the Firm's relationships with certain interested parties (the "Disclosure Schedule"). The Firm will give Client a draft of the Disclosure Schedule once it is available. Although the Firm believes that these relationships do not constitute actual conflicts of interest, these relationships must be described and disclosed in Client's application to the court to retain the Firm.

If in the Firm's determination a conflict of interest arises in Client's Restructuring Case requiring separate conflicts counsel, then Client will be required to use separate conflicts counsel in those matters.

**No Guarantee of Success.** It is impossible to provide any promise or guarantee about the outcome of Client's matters. Nothing in this Agreement or any statement by Firm staff or attorneys constitutes a promise or guarantee. Any comments about the outcome of Client's matter are simply expressions of judgment and are not binding on the Firm.

**Consent to Use of Information.** In connection with future materials that, for marketing purposes, describe facets of the Firm's law practice and recite examples of matters the Firm handles on behalf of clients, Client agrees that, if those materials avoid disclosing Client's confidences and secrets as defined by applicable ethical rules, they may identify Client as a client, may contain factual synopses of Client's matters, and may indicate generally the results achieved.

**Reimbursement of Fees and Expenses.** Client agrees to promptly reimburse the Firm for all internal or external fees and expenses, including the amount of the Firm's attorney and paralegal time at normal billing rates, as incurred by the Firm in connection with participating in, preparing for, or responding to any action, claim, objection, suit, or proceeding brought by or against any third-party that relates to the legal services provided by the Firm under this Agreement. Without limiting the scope of the foregoing, and by way of example only, this paragraph extends to all such fees and expenses incurred by the Firm: in responding to document subpoenas, and preparing for and testifying at depositions and trials; and with respect to the filing, preparation, prosecution or defense of any applications by the Firm for approval of fees and expenses in a judicial, arbitral, or similar proceeding. Further, Client understands, acknowledges, and agrees that in connection with a Restructuring Case, if Client has not objected to the payment of a Firm invoice or to a Firm fee and expense application, has in fact paid such invoice, or has approved such fee and expense application, then Client waives its right (and the right of any successor entity as a result of a Transaction or otherwise) to subsequently object to the payment of fees and expenses covered by such invoice or fee application.

# KIRKLAND & ELLIS LLP

Karen M. Sheehan
Tupperware Brands Corporation
March 19, 2020
Page 8

**LLP**.  Kirkland & Ellis LLP is a limited liability partnership organized under the laws of Illinois, and Kirkland & Ellis International LLP is a limited liability partnership organized under the laws of Delaware.  Pursuant to those statutory provisions, an obligation incurred by a limited liability partnership, whether arising in tort, contract or otherwise, is solely the obligation of the limited liability partnership, and partners are not personally liable, directly or indirectly, by way of indemnification, contribution, assessment or otherwise, for such obligation solely by reason of being or so acting as a partner.

**Governing Law**.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Illinois, without giving effect to the conflicts of law principles thereof.

**Miscellaneous.**  This Agreement sets forth the Parties' entire agreement for rendering professional services.  It can be amended or modified only in writing and not orally or by course of conduct.  Each Party signing below is jointly and severally responsible for all obligations due to the Firm and represents that each has full authority to execute this Agreement so that it is binding.  This Agreement may be signed in one or more counterparts and binds each Party countersigning below, whether or not any other proposed signatory ever executes it.  If any provision of this Agreement or the application thereof is held invalid or unenforceable, the invalidity or unenforceability shall not affect other provisions or applications of this Agreement which can be given effect without such provisions or application, and to this end the provisions of this Agreement are declared to be severable.  Any agreement or waiver contained herein by Client extends to any assignee or successor in interest to Client, including without limitation the reorganized Client upon and after the effective date of a plan of reorganization in a Restructuring Case.

This Agreement is the product of arm's-length negotiations between sophisticated parties, and Client acknowledges that it is experienced with respect to the retention of legal counsel.  Therefore, the Parties acknowledge and agree that any otherwise applicable rule of contract construction or interpretation which provides that ambiguities shall be construed against the drafter (and all similar rules of contract construction or interpretation) shall not apply to this Agreement.  The Parties further acknowledge that the Firm is not advising Client with respect to this Agreement because the Firm would have a conflict of interest in doing so, and that Client has consulted (or had the opportunity to consult) with legal counsel of its own choosing.   Client further acknowledges that Client has entered into this Agreement and agreed to all of its terms and conditions voluntarily and fully-informed, based on adequate information and Client's own independent judgment.  The Parties further acknowledge that they intend for this Agreement to be effective and fully enforceable upon its execution and to be relied upon by the Parties.

* * *

# KIRKLAND & ELLIS LLP

Karen M. Sheehan
Tupperware Brands Corporation
March 19, 2020
Page 9

Please confirm your agreement with the arrangements described in this letter by signing the enclosed copy of this letter in the space provided below and returning it to us. Please understand that, if we do not receive a signed copy of this letter within twenty-one days, we will withdraw from representing you in this Engagement.

Very truly yours,

KIRKLAND & ELLIS LLP

By: _Anup Sathy, P.C./cas_____
       Printed Name: Anup Sathy, P.C.
       Title: Partner

Agreed and accepted this 23rd of March, 2020

Tupperware Brands Corporation

By: _____
Name: Karen M. Sheehan
Title: Executive Vice President, Chief Legal
Officer & Secretary

**KIRKLAND & ELLIS LLP**

Karen M. Sheehan
Tupperware Brands Corporation
March 19, 2020
Page 9

Please confirm your agreement with the arrangements described in this letter by signing the enclosed copy of this letter in the space provided below and returning it to us. Please understand that, if we do not receive a signed copy of this letter within twenty-one days, we will withdraw from representing you in this Engagement.

Very truly yours,

KIRKLAND & ELLIS LLP

By: _____
      Printed Name: Anup Sathy, P.C.
      Title:  Partner

Agreed and accepted this 23rd of March 2020

Tupperware Brands Corporation

By: _____
Name: Karen M. Sheehan
Title: Executive Vice President, Chief Legal Officer & Secretary

Karen M. Sheehan
Tupperware Brands Corporation
March 19, 2020
Page No. 1

**KIRKLAND & ELLIS LLP**

**CLIENT-REIMBURSABLE EXPENSES AND OTHER CHARGES**

*Effective 01/01/2020*

The following outlines Kirkland & Ellis LLP's ("K&E LLP") policies and standard charges for various services performed by K&E LLP and/or by other third parties on behalf of the client which are often ancillary to our legal services.  Services provided by in-house K&E LLP personnel are for the convenience of our clients.  Given that these services are often ancillary to our legal services, in certain instances it may be appropriate and/or more cost efficient for these services to be outsourced to a third-party vendor.  If services are provided beyond those outlined below, pricing will be based on K&E LLP's approximate cost and/or comparable market pricing.

- **Duplicating, Reprographics and Printing**:  The following list details K&E LLP's charges for duplicating, reprographics and printing services:

  - Black and White Copy or Print (all sizes of paper):
    - $0.16 per impression for all U.S. offices
    - €0.10 per impression in Munich
    - £0.15 per impression in London
    - HK$1.50 per impression in Hong Kong
    - RMB1.00 per impression in Beijing and Shanghai
  - Color Copy or Print (all sizes of paper):
    - $0.55 per impression
  - Scanned Images:
    - $0.16 per page for black and white or color scans
  - Other Services:
    - CD/DVD Duplicating or Mastering - $7/$10 per CD/DVD
    - Binding - $0.70 per binding
    - Large or specialized binders - $13/$27
    - Tabs - $0.13 per item
    - OCR/File Conversion - $0.03 per page
    - Large Format Printing - $1.00 per sq. ft.

- **Secretarial and Word Processing**:  Clients are not charged for secretarial and word processing activities incurred on their matters during standard business hours.

- **Overtime Charges**:  Clients will be charged for overtime costs for secretarial and document services work if either (i) the client has specifically requested the after-hours work or (ii) the nature of the work being done for the client necessitates out-of-hours overtime and such work could not have been done during normal working

Karen M. Sheehan
Tupperware Brands Corporation
March 19, 2020
Page No. 2

hours.  If these conditions are satisfied, costs for related overtime meals and transportation also will be charged.

- **Travel Expenses**:  We charge clients our out-of-pocket costs for travel expenses including associated travel agency fees.  We charge coach fares (business class for international flights) unless the client has approved business-class, first-class or an upgrade.  K&E LLP personnel are instructed to incur only reasonable airfare, hotel and meal expenses.  K&E LLP negotiates, uses, and passes along volume discount hotel and air rates whenever practicable.  However, certain retrospective rebates may not be passed along.

- **Catering Charges:**  Clients will be charged for any in-house catering service provided in connection with client matters.

- **Communication Expenses**:  We do not charge clients for telephone calls or faxes made from K&E LLP's offices with the exception of third-party conference calls and videoconferences.

  Charges incurred for conference calls, videoconferences, cellular telephones, and calls made from other third-party locations will be charged to the client at the actual cost incurred.  Further, other telecommunication expenses incurred at third-party locations (e.g., phone lines at trial sites, Internet access, etc.) will be charged to the client at the actual cost incurred.

- **Overnight Delivery/Postage**:  We charge clients for the actual cost of overnight and special delivery (e.g., Express Mail, FedEx, and DHL), and U.S. postage for materials mailed on the client's behalf.  K&E LLP negotiates, uses, and passes along volume discount rates whenever practicable.

- **Messengers**:  We charge clients for the actual cost of a third party vendor messenger.

- **Library Research Services:**  Library Research staff provides research and document retrieval services at the request of attorneys, and clients are charged per hour for these services.  Any expenses incurred in connection with the request, such as outside retrieval service or online research charges, are passed on to the client at cost, including any applicable discounts.

- **Online Research Charges**:  K&E LLP charges for costs incurred in using third-party online research services in connection with a client matter.  K&E LLP negotiates and uses discounts or special rates for online research services whenever possible and practicable and passes through the full benefit of any savings to the client based on actual usage.

Karen M. Sheehan
Tupperware Brands Corporation
March 19, 2020
Page No. 3

- **Inter-Library Loan Services:** Our standard client charge for inter-library loan services when a K&E LLP library employee borrows a book from an outside source is $25 per title.  There is no client charge for borrowing books from K&E LLP libraries in other cities or from outside collections when the title is part of the K&E LLP collection but unavailable.

- **Off-Site Legal Files Storage**:  Clients are not charged for off-site storage of files unless the storage charge is approved in advance.

- **Electronic Data Storage**:  K&E LLP will not charge clients for costs to store electronic data and files on K&E LLP's systems if the data stored does not exceed 100 gigabytes (GB).  If the data stored for a specific client exceeds 100GB, K&E LLP will charge clients $4.00 per month/per GB for all network data stored until the data is either returned to the client or properly disposed of.  For e-discovery data on the Relativity platform, K&E LLP will also charge clients $4.00 per month/per GB until the data is either returned to the client or properly disposed of.

- **Calendar Court Services**:  Our standard charge is $25 for a court filing and other court services or transactions.

- **Supplies**:  There is no client charge for standard office supplies.  Clients are charged for special items (e.g., a minute book, exhibit tabs/indexes/dividers, binding, etc.) and then at K&E LLP's actual cost.

- **Contract Attorneys and Contract Non-Attorney Billers**:  If there is a need to utilize a contract attorney or contract non-attorney on a client engagement, clients will be charged a standard hourly rate for these billers unless other specific billing arrangements are agreed between K&E LLP and client.

- **Expert Witnesses, Experts of Other Types, and Other Third Party Consultants**:  If there is a need to utilize an expert witness, expert of other type, or other third party consultant such as accountants, investment bankers, academicians, other attorneys, etc. on a client engagement, clients will be requested to retain or pay these individuals directly unless specific billing arrangements are agreed between K&E LLP and client.

- **Third Party Expenditures**:  Third party expenditures (e.g., corporate document and lien searches, lease of office space at Trial location, IT equipment rental, SEC and regulatory filings, etc.) incurred on behalf of a client, will be passed through to the client at actual cost.  If the invoice exceeds $50,000, it is K&E LLP's policy that wherever possible such charges will be directly billed to the client.  In those circumstances where this is not possible, K&E LLP will seek reimbursement from our client prior to paying the vendor.

Karen M. Sheehan
Tupperware Brands Corporation
March 19, 2020
Page No. 4

Unless otherwise noted, charges billed in foreign currencies are determined annually based on current U.S. charges at an appropriate exchange rate.

## <u>EXHIBIT B</u>

**Winters Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| TUPPERWARE BRANDS CORPORATION, *et al.*,[1] | ) Case No. 24-12156 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**DECLARATION OF SPENCER A. WINTERS**
**IN SUPPORT OF THE APPLICATION OF DEBTORS**
**FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION**
**AND EMPLOYMENT OF KIRKLAND & ELLIS LLP AND KIRKLAND**
**& ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR THE DEBTORS**
**AND DEBTORS IN POSSESSION EFFECTIVE AS OF SEPTEMBER 17, 2024**

I, Spencer A. Winters, being duly sworn, state the following under penalty of perjury:

1.      I am the president of Spencer A. Winters, P.C., a partner of the law firm of Kirkland & Ellis LLP, located at 333 West Wolf Point Plaza, Chicago, Illinois 60654, and a partner of Kirkland & Ellis International, LLP (together with Kirkland & Ellis LLP, collectively, "Kirkland").[2]  I am one of the lead attorneys from Kirkland working on the above-captioned chapter 11 cases.  I am a member in good standing of the Bar of the State of Illinois, and I have been admitted to practice in the United States District Court of the Northern District of Illinois. There are no disciplinary proceedings pending against me.

2.      I submit this declaration (the "Declaration") in support of the *Application of Debtors for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tupperware Brands Corporation (2333); Dart Industries Inc. (5570); Deerfield Land Corporation (0323); Premiere Products, Inc. (4064); Tupperware Home Parties LLC (1671); Tupperware International Holdings Corporation (8983); Tupperware Products AG (6765); Tupperware Products, Inc. (8796); Tupperware U.S., Inc. (2010); and Tupperware Brands Latin America Holdings, L.L.C. (0264). The location of the Debtors' service address in these chapter 11 cases is: 14901 S Orange Blossom Trail, Orlando, FL 32837.

[2]    Capitalized terms used but not otherwise defined herein shall have the meaning as set forth in the Application.

*and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of September 17, 2024* (the "Application").[3]  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

### Kirkland's Qualifications

4.      The Debtors seek to retain Kirkland because of Kirkland's recognized expertise and extensive experience and knowledge in the field of debtors' protections, creditors' rights, and business reorganizations under chapter 11 of the Bankruptcy Code.

5.      Kirkland has been actively involved in major chapter 11 cases and has represented debtors in many cases, including, among others: *In re Sunpower Corp.* No. 24-11659 (CTG) (Bankr. D. Del. Sept. 11, 2024); *In re Vyaire Medical, Inc.,* No. 24-11217 (BLS) (Bankr. D. Del. Aug. 5, 2024); *In re Appgate, Inc.,* No. 24-10956 (CTG) (Bankr. D. Del. June 13, 2024); *In re Express, Inc.,* No. 24-10831 (KBO) (Bankr. D. Del. June 4, 2024); *In re Sientra, Inc.,* No. 24-10245 (JTD) (Bankr. D. Del. Feb 12, 2024); *In re MVK FarmCo LLC,* No. 23-11721 (LSS) (Bankr. D. Del. Oct. 13, 2023); *In re Yellow Corp.,* No. 23-11069 (CTG) (Bankr. D. Del. Aug. 30, 2023).[4]

6.      In preparing for its representation of the Debtors in these chapter 11 cases, Kirkland has become familiar with the Debtors' business and many of the potential legal issues that may arise in the context of these chapter 11 cases.  I believe that Kirkland is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

---

[3]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

[4]   Because of the voluminous nature of the orders cited in this Declaration, they are not attached to this Declaration. Copies of these orders are available upon request to Kirkland.

**Services to Be Provided**

7.    Subject to further order of the Court and that certain engagement letter dated March

19, 2020 (the "Engagement Letter"), a copy of which is attached as **Exhibit 1** to the Order, the

Debtors retained Kirkland to render, without limitation, the following legal services:

a.    advising the Debtors with respect to their powers and duties as debtor in possession in the continued management and operation of their businesses and properties;

b.    advising and consulting on the conduct of these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

c.    attending meetings and negotiating with representatives of creditors and other parties in interest;

d.    taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

e.    preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

f.    representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

g.    advising the Debtors in connection with any potential sale of assets;

h.    appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

i.    advising the Debtors regarding tax matters;

j.    taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k.    performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors' assets; and (iii) advising the Debtors on corporate and litigation matters.

3

**Professional Compensation**

8.      Kirkland intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court.  The hourly rates and corresponding rate structure Kirkland will use in these chapter 11 cases are the same as the hourly rates and corresponding rate structure that Kirkland uses in other debtor representations, and are comparable to the hourly rates and corresponding rate structure that Kirkland uses for complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required.  These rates and the rate structure reflect that such restructuring and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

9.      Kirkland operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

10.      Kirkland's current hourly rates for matters related to these chapter 11 cases range as follows:[5]

---

[5]    For professionals and paraprofessionals residing outside of the U.S., hourly rates are billed in the applicable currency.  When billing a U.S. entity, such foreign rates are converted into U.S. dollars at the then applicable conversion rate.  After converting these foreign rates into U.S. dollars, it is possible that certain rates may exceed the billing rates listed in the chart herein.  While the rate ranges provided for in this Application may change if an individual leaves or joins Kirkland, and if any such individual's billing rate falls outside the ranges disclosed above, Kirkland does not intend to update the ranges for such circumstances.

| Billing Category[6] | U.S. Range |
|---|---|
| Partners | $1,195-$2,465 |
| Of Counsel | $820-$2,245 |
| Associates | $745-$1,495 |
| Paraprofessionals | $325-$625 |

11.     Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly for the work of its attorneys and paralegals and to cover fixed and routine expenses.  Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[7]

12.     It is Kirkland's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client.  It is also Kirkland's policy to charge its clients only the amount actually incurred by Kirkland in connection with such items.  Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

13.     To ensure compliance with all applicable deadlines in these chapter 11 cases, Kirkland utilizes the services of overtime secretaries.  Kirkland charges fees for these services pursuant to the Engagement Letter between Kirkland and the Debtors, which permits Kirkland to

---

[6]     Although Kirkland does not anticipate using contract attorneys during these chapter 11 cases, in the unlikely event that it becomes necessary to use contract attorneys, Kirkland will not charge a markup to the Debtors with respect to fees billed by such attorneys.  Moreover, any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by Kirkland will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code.

[7]     For example, like many of its peer law firms, Kirkland typically increases the hourly billing rate of attorneys and paraprofessionals twice a year in the form of: (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013).  As set forth in the Order, Kirkland will provide ten business days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and shall file such notice with the Court.

bill the Debtors for overtime secretarial charges that arise out of business necessity.  In addition, Kirkland professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices.

14.    Kirkland currently charges the Debtors $0.16 per page for standard duplication in its offices in the United States.  Notwithstanding the foregoing and consistent with the Local Rules, Kirkland will charge no more than $0.10 per page for standard duplication services in these chapter 11 cases.  Kirkland does not charge its clients for incoming facsimile transmissions. Kirkland has negotiated a discounted rate for Westlaw computer-assisted legal research. Computer-assisted legal research is used whenever the researcher determines that using Westlaw is more cost effective than using traditional (non-computer assisted legal research) techniques.

### Compensation Received by Kirkland from the Debtors

15.    Pursuant to the Engagement Letter, on May 19, 2023, the Debtors paid $200,000 to Kirkland, which, as stated in the Engagement Letter, constituted a "special purpose retainer" (also known as an "advance payment retainer") as defined in Rule 1.5(d) of the Illinois Rules of Professional Conduct and *Dowling v. Chicago Options Assoc., Inc.*, 875 N.E.2d 1012, 1018 (Ill. 2007).  Subsequently, the Debtors paid to Kirkland additional special purpose retainer totaling approximately $14.2 million in the aggregate.[8]  As stated in the Engagement Letter, any special purpose retainer is earned by Kirkland upon receipt, any special purpose retainer becomes the property of Kirkland upon receipt, the Debtors no longer have a property interest in any special purpose retainer upon Kirkland's receipt, any special purpose retainer will be placed in Kirkland's general account and will not be held in a client trust account, and the Debtors will not earn any

---

[8]    Prior to May 19, 2023, the Debtors paid Kirkland monthly in the ordinary course.

interest on any special purpose retainer.[9]  A chart identifying the statements setting forth the professional services provided by Kirkland to the Debtors and the expenses incurred by Kirkland in connection therewith, as well as the special purpose retainer transferred by the Debtors to Kirkland, prior to the Petition Date is set forth below.

16.    During the 90-day period before the Petition Date, the Debtors paid special purpose retainer in the following amounts to Kirkland:

| Type of Transaction | Date | Amount of Fees and Expenses Listed on Statement | Amount of Special Purpose Retainer Requested | Amount of Special Purpose Retainer Received | Resulting Special Purpose Retainer Following |
|---|---|---|---|---|---|
| Initial Request for Special Purpose Retainer | 6/17 | | $500,000 | | |
| Receipt of Initial Special Purpose Retainer | 6/20 | | | $500,000 | $1,092,361.84 |
| Additional Special Purpose Retainer | 6/24 | | $500,000 | | |
| Receipt of Additional Special Purpose Retainer | 6/25 | | | $500,000 | $1,592,361.84 |
| Additional Special Purpose Retainer | 6/27 | | $500,000 | | |
| Receipt of Additional Special Purpose Retainer | 6/28 | | | $500,000 | $2,092,361.84 |
| Additional Special Purpose Retainer | 7/1 | | $500,000 | | |
| Receipt of Additional Special Purpose Retainer | 7/1 | | | $500,000 | $2,592,361.84 |
| Additional Special Purpose Retainer | 7/8 | | $500,000 | | |
| Receipt of Additional Special Purpose Retainer | 7/9 | | | $500,000 | $3,092,361.84 |
| Statement of Fees and Expenses | 7/12 | $2,579,630.82 | | | $512,731.02 |
| Additional Special Purpose Retainer | 7/23 | | $500,000 | | |
| Receipt of Additional Special Purpose Retainer | 7/24 | | | $500,000 | $1,012,731.02 |

---

[9]    The Engagement Letter provides that Kirkland may continue to hold any remaining prepetition special purpose retainer during the pendency of a chapter 11 case rather than applying such special purpose retainer to postpetition fees and expenses.  Kirkland evaluates whether to retain any remaining prepetition special purpose retainer on a case-by-case basis.  In this particular case, Kirkland has elected not to hold any remaining prepetition special purpose retainer but, instead, will apply any remaining special purpose retainer to postpetition fees and expenses as such fees and expenses are allowed by the Court.

| Type of Transaction | Date | Amount of Fees and Expenses Listed on Statement | Amount of Special Purpose Retainer Requested | Amount of Special Purpose Retainer Received | Resulting Special Purpose Retainer Following |
|---|---|---|---|---|---|
| Additional Special Purpose Retainer | 7/29 | | $1,000,000 | | |
| Receipt of Additional Special Purpose Retainer | 7/30 | | | $750,000 | $1,762,731.02 |
| Receipt of Additional Special Purpose Retainer | 8/7 | | | $250,000 | $2,012,731.02 |
| Additional Special Purpose Retainer | 8/12 | | $500,000 | | |
| Receipt of Additional Special Purpose Retainer | 8/13 | | | $500,000 | $2,512,731.02 |
| Additional Special Purpose Retainer | 8/19 | | $500,000 | | |
| Receipt of Additional Special Purpose Retainer | 8/19 | | | $500,000 | $3,012,731.02 |
| Statement of Fees and Expenses | 8/21 | $1,411,439.27 | | | $1,601,291.75 |
| Additional Special Purpose Retainer | 8/27 | | $500,000 | | |
| Receipt of Additional Special Purpose Retainer | 8/28 | | | $500,000 | $2,101,291.75 |
| Additional Special Purpose Retainer | 9/11 | | $500,000 | | |
| Receipt of Additional Special Purpose Retainer | 9/12 | | | $500,000 | $2,601,291.75 |
| Statement of Fees and Expenses | 9/13 | $1,363,033.08 | | | $1,238,258.67 |
| Additional Special Purpose Retainer | 9/16 | | $500,000 | | |
| Receipt of Additional Special Purpose Retainer | 9/16 | | | $500,000 | $1,738,258.67 |
| Statement of Fees and Expenses | 9/17 | $1,140,508.75 | | | $597,461.70 |

17.    As of the Petition Date, the Debtors did not owe Kirkland any amounts for legal services rendered before the Petition Date.  Although certain expenses and fees may have been incurred, but not yet applied to Kirkland's special purpose retainer, Kirkland's total special purpose retainer always exceeded any amounts listed or to be listed on statements describing services rendered and expenses incurred (on a "rates times hours" and "dates of expenses incurred" basis) in the 90-day period prior to the Petition Date.

8

18.    Pursuant to Bankruptcy Rule 2016(b), Kirkland has not shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with Kirkland or (b) any compensation another person or party has received or may receive.

### Statement Regarding U.S. Trustee Guidelines

19.    Kirkland shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Rules, and any other applicable procedures and orders of the Court. Kirkland also intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective As of November 1, 2013* (the "Revised UST Guidelines"), both in connection with this Application and the interim and final fee applications to be filed by Kirkland in these chapter 11 cases.

### Attorney Statement Pursuant to Revised UST Guidelines

20.    The following is provided in response to the request for additional information set forth in Paragraph D.1. of the Revised UST Guidelines:

a.    **Question**: Did Kirkland agree to any variations from, or alternatives to, Kirkland's standard billing arrangements for this engagement?

**Answer**: No. Kirkland and the Debtors have not agreed to any variations from, or alternatives to, Kirkland's standard billing arrangements for this engagement. The rate structure provided by Kirkland is appropriate and is not significantly different from (a) the rates that Kirkland charges for other non-bankruptcy representations or (b) the rates of other comparably skilled professionals.

9

b. **Question**: Do any of the Kirkland professionals in this engagement vary their rate based on the geographic location of the Debtors' chapter 11 cases?

**Answer**: No. The hourly rates used by Kirkland in representing the Debtors are consistent with the rates that Kirkland charges other comparable chapter 11 clients, regardless of the location of the chapter 11 case.

c. **Question**: If Kirkland has represented the Debtors in the 12 months prepetition, disclose Kirkland's billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If Kirkland's billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

**Answer**: Kirkland's current hourly rates for services rendered on behalf of the Debtors range as follows:[10]

| Billing Category[11] | U.S. Range |
|---|---|
| Partners | $1,195-$2,465 |
| Of Counsel | $820-$2,245 |
| Associates | $745 - $1,495 |
| Paraprofessionals | $325 - $625 |

Kirkland represented the Debtors from September 17, 2023 to December 31, 2023 using the hourly rates listed below:

| Billing Category | U.S. Range |
|---|---|
| Partners | $1,195-$2,245 |
| Of Counsel | $820-$2,125 |
| Associates | $685-$1,395 |
| Paraprofessionals | $295-$575 |

d. **Question**: Have the Debtors approved Kirkland's budget and staffing plan, and, if so, for what budget period?

---

[10]  While the rate ranges provided for in this Application may change if an individual leaves or joins Kirkland, and if any such individual's billing rate falls outside the ranges disclosed above, Kirkland does not intend to update the ranges for such circumstances.

[11]  Although Kirkland does not anticipate using contract attorneys during these chapter 11 cases, in the unlikely event that it becomes necessary to use contract attorneys, Kirkland will not charge a markup to the Debtors with respect to fees billed by such attorneys. Any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by Kirkland will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code.

**Answer**: Yes, for the period from September 17, 2024 through November 1, 2024.

### Kirkland's Disinterestedness

21.    In connection with its proposed retention by the Debtors in these chapter 11 cases, Kirkland undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors. Specifically, Kirkland obtained from the Debtors and their representatives the names of individuals and entities that may be parties in interest in these chapter 11 cases (the "Potential Parties in Interest") and such parties are listed on **Schedule 1** hereto.  Kirkland has searched its electronic database for its connections to the entities listed on **Schedule 1** hereto.  In addition, after Kirkland identified all client connections with the parties in interest over a specified time period, Kirkland circulated a survey email to all Kirkland attorneys who billed 10 or more hours to such clients during the prior six years.  Further, beyond the individual emails, Kirkland sent a daily report of new matters firm wide.  All Kirkland attorneys are responsible for reviewing the daily report of new matters and raising any potential concerns with respect to new representations.  Kirkland did not receive any answers in the affirmative to these emails.   Additionally, to the extent that I have been able to ascertain that Kirkland has been retained within the last three years to represent any of the Potential Parties in Interest (or their affiliates, as the case may be) in matters unrelated to these cases, such facts are disclosed on **Schedule 2** attached hereto.

22.    Kirkland and certain of its partners and associates may have in the past represented, may currently represent, and likely in the future will represent, entities that may be parties in interest in these chapter 11 cases in connection with matters unrelated (except as otherwise disclosed herein) to the Debtors and these chapter 11 cases.  Kirkland has searched its electronic

11

database for its connections to the entities listed on **Schedule 1** attached hereto.  The information listed on **Schedule 1** may have changed without our knowledge and may change during the pendency of these chapter 11 cases.  Accordingly, Kirkland will update this Declaration as necessary and when Kirkland becomes aware of additional material information.  The following is a list of the categories that Kirkland has searched:[12]

| Schedule | Category |
|---|---|
| 1(a) | Debtors |
| 1(b)` | Directors & Officers |
| 1(c) | Known Affiliates and Joint Venture Entities |
| 1(d) | Significant Equity Holders |
| 1(e) | Bankruptcy Judges & Staff |
| 1(f) | Bankruptcy Professionals |
| 1(g) | Banks/Lenders/Lender Advisors |
| 1(h) | Committee Members and Advisors |
| 1(i) | Insurance and Sureties |
| 1(j) | Landlords |
| 1(k) | Potential M&A Counterparties and Advisors |
| 1(l) | Swiss Vendors |
| 1(m) | Taxing Authorities and Tax Advisors |
| 1(n) | Top 50 Unsecured Creditors |
| 1(o) | U.S. Trustee Personnel |
| 1(p) | U.S. Vendors |
| 1(q) | Utility Providers |

23.    To the best of my knowledge, (a) Kirkland is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) Kirkland has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in this Declaration.

---

[12]   Kirkland's inclusion of parties in the following Schedules is solely to illustrate Kirkland's conflict search process and is not an admission that any party has a valid claim against the Debtors or that any party properly belongs in the schedules or has a claim or legal relationship to the Debtors of the nature described in the schedules.

24.     Listed on **Schedule 2** to this Declaration are the results of Kirkland's conflicts searches of the above-listed entities.[13]  For the avoidance of doubt, Kirkland will not commence a cause of action in these chapter 11 cases against the entities listed on **Schedule 2** that are current clients of Kirkland (including entities listed below under the "Specific Disclosures" section of this Declaration) unless Kirkland has an applicable waiver on file or first receives a waiver from such entity allowing Kirkland to commence such an action.  To the extent that a waiver does not exist or is not obtained from such entity and it is necessary for the Debtors to commence an action against that entity, the Debtors will be represented in such particular matter by conflicts counsel.[14]

25.     Of the entities listed on **Schedule 2**, only four represented more than one percent of Kirkland's fee receipts for the twelve-month period ending on September 30, 2024.  KKR, Vista Equity Partners Management LLC, Thoma Bravo LP, and GTCR LLC are affiliated with unsecured creditors of the Debtors and each separately represented more than one percent of Kirkland's fee receipts for the twelve-month period ending on in September 2024.[15]  I do not believe that any current or former representation of KKR, Vista Equity Partners Management LLC,

---

[13]  As referenced in **Schedule 2**, the term "current client" means an entity listed as a client in Kirkland's conflicts search system to whom time was posted in the 12 months preceding the Petition Date.  As referenced in **Schedule 2**, the term "former client" means an entity listed as a client in Kirkland's conflicts search system to whom time was posted between 12 and 36 months preceding the Petition Date.  As referenced in **Schedule 2**, the term "closed client" means an entity listed as a client in Kirkland's conflicts search system to whom time was posted in the 36 months preceding the Petition Date, but for which the client representation has been closed.  Whether an actual client relationship exists can only be determined by reference to the documents governing Kirkland's representation rather than its potential listing in Kirkland's conflicts search system.  The list generated from Kirkland's conflicts search system is over-inclusive.  As a general matter, Kirkland discloses connections with "former clients" or "closed clients" for whom time was posted in the last 36 months, but does not disclose connections if time was billed more than 36 months before the Petition Date.

[14]  Contemporaneous with the filing of the Application, the Debtors also are seeking to retain and employ Cole Schotz P.C. as conflicts counsel pursuant to the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Cole Schotz P.C. as Delaware Co-Counsel for the Debtors Effective as of the Petition Date*.

[15]  Specific percentages will be disclosed to the U.S. Trustee upon request.

Thoma Bravo LP, and GTCR LLC precludes it from meeting the disinterestedness standard under the Bankruptcy Code.

26.     Kirkland's conflicts search of the entities listed on **<u>Schedules 1(a) – 1(q)</u>** (that Kirkland was able to locate using its reasonable efforts) reveals, to the best of my knowledge, that those Kirkland attorneys and paraprofessionals who previously worked at other law firms that represented such entities in these chapter 11 cases have not worked on matters relating to the Debtors' restructuring efforts while at Kirkland.

27.     Based on the conflicts search conducted to date and described herein, to the best of my knowledge, neither I, Kirkland, nor any partner or associate thereof, insofar as I have been able to ascertain, have any connection with the Debtors, their creditors, or any other parties in interest, their respective attorneys and accountants, the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>"), any person employed by the U.S. Trustee, or any Bankruptcy Judge currently serving on the United States Bankruptcy Court for the District of Delaware, except as disclosed or otherwise described herein.

28.     Kirkland will review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, Kirkland will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

29.     Generally, it is Kirkland's policy to disclose entities in the capacity that they first appear in a conflicts search.  For example, if an entity already has been disclosed in this Declaration in one capacity (*e.g.*, a customer), and the entity appears in a subsequent conflicts search in a different capacity (*e.g.*, a vendor), Kirkland does not disclose the same entity again in supplemental

declarations, unless the circumstances are such in the latter capacity that additional disclosure is required.

30.    From time to time, certain former partners of Kirkland are entitled to compensation for a limited period of time following their departure from the firm.

31.    From time to time, Kirkland has referred work to other professionals to be retained in these chapter 11 cases.  Likewise, certain such professionals have referred work to Kirkland.

32.    Certain insurance companies pay the legal bills of Kirkland clients.  Some of these insurance companies may be involved in these chapter 11 cases.  None of these insurance companies, however, are Kirkland clients as a result of the fact that they pay legal fees on behalf of Kirkland clients.

**Specific Disclosures**

33.    As specifically set forth below and in the attached exhibits, Kirkland represents certain of the Debtors' creditors, equity security holders, or other entities that may be parties in interest in ongoing matters unrelated to the Debtors and these chapter 11 cases.  None of the representations described herein are materially adverse to the interests of the Debtors' estates.  Moreover, pursuant to section 327(c) of the Bankruptcy Code, Kirkland is not disqualified from acting as the Debtors' counsel merely because it represents certain of the Debtors' creditors, equity security holders, or other entities that may be parties in interest in matters unrelated to these chapter 11 cases.

**A.    Connections to Holders of Equity Interests in the Debtors.**

34.    As disclosed on **Schedule 2**, Kirkland currently represents, and in the past has represented, Allspring Global Investments LLC, Balyasny Asset Management LP, BlackRock Inc., Citadel Securities LLC, D.E. Shaw & Co. LP, Federated Hermes Inc., Fidelity

Management & Research Co. LLC, Invesco Capital Management LLC, Millennium Management LLC, Northern Trust Corp., and The Vanguard Group, and/or certain of their affiliates, subsidiaries, employees, and/or upstream entities (collectively, the "Significant Equity Holders") on a variety of matters. Kirkland has not represented, and will not represent, the Significant Equity Holders in connection with any matter in these chapter 11 cases during the pendency of these chapter 11 cases. All current and prior Kirkland representations of the Significant Equity Holders have been in matters unrelated to the Debtors or these chapter 11 cases. I do not believe that Kirkland's current or prior representation of the Significant Equity Holders precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

**B.      Connections to Officers and Directors.**

35.      As disclosed below and on **Schedule 2**, Kirkland currently represents, and in the past has represented, certain affiliates, subsidiaries and entities associated with the Debtors' current and recent former officers and directors. I do not believe that Kirkland's current or prior representation of the affiliates, subsidiaries, and entities associated with certain officers and directors precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

36.      Paul Aronzon, Paul Keglevic, and William Transier, each current directors of certain of the Debtors, have served, or may serve from time to time, in various management and/or director capacities of certain Kirkland clients or affiliates thereof. I do not believe that Kirkland's current or prior representation of clients for which Messrs. Aronzon, Keglevic, or Transier serve or have served in management and/or director capacities precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

**C.**    **Potential M&A Transaction Counterparties.**

37.    The Debtors are in discussions with certain parties (and may be in discussions with other parties in the future) regarding potential M&A transactions regarding the Debtors and their businesses.  Due to the inherently competitive nature of this process, it is imperative that the identities of these potential counterparties remain confidential.  Contemporaneously with the filing of the Application, the Debtors have disclosed to the U.S. Trustee and counsel to the Committee the identities of the potential counterparties and Kirkland's connections to such potential counterparties, and Kirkland believes such disclosure is sufficient and reasonable under the circumstances and at this time.  However, should the Court request disclosure of the identities of the potential counterparties, the Debtors are prepared to file with the Court under seal a version of this Declaration that contains a schedule of the potential counterparties and Kirkland's connections to such potential counterparties.  For the avoidance of doubt, Kirkland will not represent any of the potential counterparties in connection with any matter in these chapter 11 cases.

**D.**    **Other Chapter 11 Professionals.**

38.    As disclosed on **<u>Schedule 2</u>**, Kirkland currently represents, and in the past has represented, certain affiliates, subsidiaries, and entities associated with various professionals that the Debtors seeks to retain in connection with these chapter 11 cases.  Kirkland's current and prior representations of these professionals have been in matters unrelated to the Debtors or these chapter 11 cases.   Kirkland has not represented, and will not represent, any such professionals in connection with any matter in these chapter 11 cases during the pendency of these chapter 11 cases. I do not believe that Kirkland's current or prior representation of these professionals precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

39.     The Debtors' proposed restructuring advisor is Alvarez & Marsal North America, LLC ("**A&M Advisory**").  As disclosed on **Schedule 2**, Kirkland represents Alvarez & Marsal, Inc. ("**A&M Inc.**"), Alvarez & Marsal Capital, LLC ("**A&M Capital**"), AMCP Security Holdings L.P. / Centerra Group, LLC, Alvarez & Marsal Tax and UK LLP, and affiliated entities in matters unrelated to the Debtors and these chapter 11 cases.  In addition, subject to the parameters discussed in the Kirkland Attorney and Employee Investments section of this Declaration, Kirkland person(s) have invested in one or more funds affiliated with A&M Capital.  Further, certain former Kirkland attorneys are currently employed by A&M Advisory. Though previously employed by Kirkland, any work provided by these former Kirkland attorneys was unrelated to the Debtors or these chapter 11 cases.  I do not believe that Kirkland's representation of these parties precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

40.     The Debtors' proposed investment banker is Moelis & Company LLC ("Moelis"). As disclosed on **Schedule 2**, Kirkland currently represents, and in the past has represented, Moelis and certain of its affiliates on a variety of matters.  Kirkland's current and prior representations of Moelis and its affiliates have been in matters unrelated to the Debtors or these chapter 11 cases. Kirkland has not represented, and will not represent, Moelis in connection with any matter in these chapter 11 cases during the pendency of these chapter 11 cases.  I do not believe that Kirkland's current or prior representation of Moelis precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

41.     On September 20, 2024, the Court approved Epiq Corporate Restructuring, LLC ("Epiq") as the Debtors' notice and claims agent.[16]   As disclosed on **Schedule 2**, Kirkland currently represents, and in the past has represented, Epiq and certain of its upstream entities and affiliates in matters unrelated to the Debtors and these chapter 11 cases.  Kirkland has not represented, and will not represent, Epiq in connection with any matter in these chapter 11 cases during the pendency of these chapter 11 cases.  I do not believe that Kirkland's current and prior representation of Epiq precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

42.     The Committee is retaining Berkeley Research Group, LLC as its financial advisor. As disclosed on **Schedule 2**, Kirkland currently represents, and in the past has represented, Berkeley Research Group, LLC and certain of its affiliates (collectively, "Berkeley") on a variety of matters.  Kirkland's current and prior representations of Berkeley have been in matters unrelated to the Debtors or these chapter 11 cases.  Kirkland has not represented, and will not represent, Berkeley in connection with any matter in these chapter 11 cases during the pendency of these chapter 11 cases.  I do not believe that Kirkland's current or prior representation of Berkeley precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

**E.     Kirkland Attorney and Employee Investments.**

43.     From time to time, Kirkland partners, of counsel, associates, and employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and other types of investment funds (the "Investment Funds"), through which such individuals indirectly acquire an interest in debt or equity securities of many companies, one of

---

[16]   See *Order Authorizing Retention and Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent* [Docket No. 71].

which may be one of the Debtors, their creditors, or other parties in interest in these chapter 11 cases, often without Kirkland's knowledge. Each Kirkland person generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. The Investment Fund is generally operated as a blind pool, meaning that when the Kirkland persons make an investment in the Investment Fund, he, she, or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

44.    From time to time one or more Kirkland partners and of counsel voluntarily choose to form an entity (a "Passive-Intermediary Entity") to invest in one or more Investment Funds. Such Passive-Intermediary Entity is composed only of persons who were Kirkland partners and of counsel at the time of the Passive-Intermediary Entity's formation (although some may later become former Kirkland partners and of counsel). Participation in such a Passive-Intermediary Entity is wholly voluntary and only a portion of Kirkland's partners and of counsel choose to participate. The Passive-Intermediary Entity generally owns substantially less than one percent of any such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. Each Investment Fund in which a Passive-Intermediary Entity invests is operated as a blind pool, so that the Passive-Intermediary Entity does not know what securities the blind pool Investment Funds will purchase or sell, and has no control over such purchases or sales. And, indeed, the Passive-Intermediary Entity often arranges for statements and communications from certain Investment Funds to be sent solely to a blind administrator who edits out all information regarding the identity of the Investment Fund's underlying investments, so that the Passive-Intermediary

Entity does not learn (even after the fact) the identity of the securities purchased, sold, or held by the Investment Fund.  To the extent the Passive-Intermediary Entity is or becomes aware of the identity of the securities purchased, sold, or held by the Investment Funds ("Known Holdings"), such Known Holdings are submitted to Kirkland's conflict checking system.

45.    From time to time, Kirkland partners, of counsel, associates, and employees personally directly acquire a debt or equity security of a company which may be (or become) one of the Debtors, their creditors, or other parties in interest in these chapter 11 cases.  Kirkland has a long-standing policy prohibiting attorneys and employees from using confidential information that may come to their attention in the course of their work, so that all Kirkland attorneys and employees are barred from trading in securities with respect to which they possess confidential information.

**F.    Former Clerks.**

46.    The following Kirkland employees had clerkships in the United States Bankruptcy Court for District of Delaware during the last three years (together, the "Former Clerks").  I do not believe that the Former Clerk's work for the Court precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

47.    Jose Elaine Lugo is a Kirkland associate who clerked with the Honorable Karen B. Owens in the United States Bankruptcy Court for the District of Delaware, from September 2020 to September 2021.  Ms. Lugo began working at Kirkland in September 2021, and had no connection with the Debtors' chapter 11 cases while working for Judge Owens.  I do not believe that Ms. Lugo's work for the Court precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

21

48.    Jacob Black is a Kirkland associate who clerked with the Honorable Christopher S. Sontchi (ret.) in the United States Bankruptcy Court for the District of Delaware, from January 2020 to August 2021.  Mr. Black began working at Kirkland in September 2021, and had no connection with the Debtors' chapter 11 cases while working for Judge Sontchi.  I do not believe that Mr. Black's work for the Court precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

## G.    Other Disclosures.

49.    Finally, certain interrelationships exist among the Debtors and their non-Debtor affiliates (the "Intercompany Relationships").  Nevertheless, the Debtors have advised Kirkland that the Intercompany Relationships do not pose any conflict of interest because of the general unity of interest among the Debtors.  Insofar as I have been able to ascertain, I know of no conflict of interest that would preclude Kirkland's joint representation of the Debtors in these chapter 11 cases.

50.    As disclosed on **Schedule 2**, Kirkland currently represents, and formerly has represented, Bank of America, N.A. ("Bank of America") and certain of its affiliates in a variety of matters.  Bank of America is a lender under the Debtors' prepetition credit facilities and is a member of the Ad Hoc Group of Secured Lenders.[17]  Kirkland's representations of Bank of America, in the aggregate, accounted for less than one percent of Kirkland's fee receipts for the twelve-month period ending on September 30, 2024.  All of Kirkland's current and prior representations of Bank of America have been unrelated to the Debtors and these chapter 11 cases.

---

[17]  *See Verified Statement of the Ad Hoc Group of Secured Lenders Pursuant to Bankruptcy Rule 2019* [Docket No. 84].

I do not believe that Kirkland's representation of Bank of America precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

51.    The spouse of Kirkland partner Helen E. Witt, P.C. is a managing director of JPMorgan Chase & Co.  JPMorgan Chase Bank, N.A. is a cash management bank for certain of the Debtors.  Out of an abundance of caution, Kirkland has instituted formal screening measures to screen Ms. Witt from all aspects of Kirkland's representation of the Debtors.

52.    Furthermore, prior to joining Kirkland, certain Kirkland attorneys represented clients adverse to Kirkland's current and former restructuring clients.  Certain of these attorneys (the "Screened Kirkland Attorneys") will not perform work in connection with Kirkland's representation of the Debtors and will not have access to confidential information related to the representation.  Kirkland's formal ethical screen provides sufficient safeguards and procedures to prevent imputation of conflicts by isolating the Screened Kirkland Attorneys and protecting confidential information.

53.    Under Kirkland's screening procedures, Kirkland's conflicts department distributes a memorandum to all Kirkland attorneys and legal assistants directing them as follows: (a) not to discuss any aspects of Kirkland's representation of the Debtors with the Screened Kirkland Attorneys; (b) to conduct meetings, phone conferences, and other communications regarding Kirkland's representation of the Debtors in a manner that avoids contact with the Screened Kirkland Attorneys; (c) to take all measures necessary or appropriate to prevent access by the Screened Kirkland Attorneys to the files or other information related to Kirkland's representation of the Debtors; and (d) to avoid contact between the Screened Kirkland Attorneys and all Kirkland personnel working on the representation of the Debtors unless there is a clear understanding that there will be no discussion of any aspects of Kirkland's representation of the Debtors.

23

Furthermore, Kirkland already has implemented procedures to block the Screened Kirkland Attorneys from accessing files and documents related to the Debtors that are stored in Kirkland's electronic document managing system.

## **Affirmative Statement of Disinterestedness**

54.     Based on the conflicts search conducted to date and described herein, to the best of my knowledge and insofar as I have been able to ascertain, (a) Kirkland is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) Kirkland has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed herein.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Dated:  October 18, 2024                             Respectfully submitted,

                                                     */s/ Spencer A. Winters*
                                                     Spencer A. Winters
                                                     as President of Spencer A. Winters, P.C., as
                                                     Partner of Kirkland & Ellis LLP; and as Partner
                                                     of Kirkland & Ellis International LLP

## Schedule 1

The following lists contain the names of reviewed entities as described more fully in the *Declaration of Spencer A. Winters in Support of the Application of Debtors for the Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of September 17, 2024* (the "<u>Winters Declaration</u>").[1]  Where the names of the entities reviewed are incomplete or ambiguous, the scope of the search was intentionally broad and inclusive, and Kirkland & Ellis LLP and Kirkland & Ellis International LLP reviewed each entity in its records, as more fully described in the Winters Declaration, matching the incomplete or ambiguous name.

---

[1]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Winters Declaration .

# SCHEDULE 1

### List of Schedules

| Schedule | Category |
|----------|----------|
| 1(a) | Debtors |
| 1(b) | Directors & Officers |
| 1(c) | Known Affiliates and Joint Venture Entities |
| 1(d) | Significant Equity Holders |
| 1(e) | Bankruptcy Judges & Staff |
| 1(f) | Bankruptcy Professionals |
| 1(g) | Banks/Lenders/Lender's Advisors |
| 1(h) | Committee Members and Advisors |
| 1(i) | Insurance and Sureties |
| 1(j) | Landlords |
| 1(k) | Potential M&A Counterparties and Advisors |
| 1(l) | Swiss Vendors |
| 1(m) | Taxing Authorities and Tax Advisors |
| 1(n) | Top 50 Unsecured Creditors |
| 1(o) | U.S. Trustee Personnel |
| 1(p) | U.S. Vendors |
| 1(q) | Utility Providers |

# SCHEDULE 1(a)

## __Debtors__

Dart Industries Inc.
Deerfield Land Corporation
Premiere Products, Inc.
Tupperware Brands Corporation
Tupperware Brands Latin America Holdings L.L.C.
Tupperware Home Parties LLC
Tupperware International Holdings Corporation
Tupperware Products AG
Tupperware Products Inc.
Tupperware U.S., Inc.

# SCHEDULE 1(b)

## Directors & Officers

Aronzon, Paul S.
Bush, Lori
Cameron, Susan M.
Goldman, Laurie Ann
Goldman, Laurie Ann
Greener, Todd
Harbour, Pamela Jones
Hughes, Jim
Keglevic, Paul
Lomow, Samantha
Minges, Tim
O'Leary, Christopher D.
Riley, Richard T.
Sambade, Martin
Sheehan, Karen
Szostak, M. Anne
Transier, William

# SCHEDULE 1(c)

## Known Affiliates and Joint Venture Entities

Administradora Dart S De RL De CV
Armand Dupree Inc.
BC International Cosmetic & Image Services
Beauticontrol Inc.
Beauty Products Inc.
Cav Sul Centro De Apoio De Vendas Productos Pessoais Ltda.
Dart De Venezuela CA
Dart Do Brasil Industria E Comercio Ltda.
Dart Financial Services Ltd.
Dart Industries (New Zealand) Ltd.
Dart Industries Hong Kong Ltd.
Dart Manufacturing India Pvt. Ltd.
Dart SA De CV
Dartco Manufacturing Inc.
Deerfield Crosslands LLC
Diecraft Australia Pty. Ltd.
Fuller Cosmetics - Venda Diretå De Cosmeticos Ltda.
International Investor Inc.
Inversiones TWPT CA
Newco Logistica E Participacoes Ltda.
Nutrimetics International Commercial Import Export SA
Premiere Brands International Coöperatief UA
Premiere Brands International Holdings BV
Premiere Brands International LLC
Premiere Brands LLC
Premiere Products Brands of Canada Ltd.
Premiere Servicios De Administracion S De RL De CV
PT Cahaya Prestasi Indonesia
PT Tupperware Indonesia
PT Tupperware Indonesia Services
SASL Holdco LLC
TPI Holdco LLC
Tupperware (China) Co. Ltd.
Tupperware (Portugal) Artigos Domésticos Lda. Sucursal En España

Tupperware (Portugal) Artigos Domésticos Unipessoal Lda.
Tupperware (Shanghai) Industry Co. Ltd.
Tupperware Asia Pacific Holdings Private Ltd.
Tupperware Australia Pty Ltd.
Tupperware Bangladesh Private Ltd.
Tupperware Belgium NV
Tupperware Brands (Thailand) Ltd.
Tupperware Brands Americas BV
Tupperware Brands Argentina SA
Tupperware Brands Asia Pacific Pte. Ltd.
Tupperware Brands Japan Ltd.
Tupperware Brands Korea Ltd.
Tupperware Brands Malaysia Sdn. Bhd.
Tupperware Brands Mexico S De RL De CV
Tupperware Brands Philippines Inc.
Tupperware Bulgaria Eood
Tupperware Colombia SAS
Tupperware Czech Republic Spol SRO
Tupperware De Costa Rica SA
Tupperware De El Salvador SA De CV
Tupperware De Guatemala SA
Tupperware Del Ecuador Cia Ltda.
Tupperware Deutschland Gmbh
Tupperware Distributors Inc.
Tupperware DOO
Tupperware East Asia LLC
Tupperware Eastern Europe SRL
Tupperware Egypt Ltd.
Tupperware France SA
Tupperware General Services NV
Tupperware Global Centre Sarl
Tupperware Hellas Single Member SAIC
Tupperware Hk Procurement Ltd.
Tupperware Honduras S De RL
Tupperware Hungary Kft.
Tupperware Iberica SA
Tupperware India Private Ltd.
Tupperware Industria Lusitana De Artigos Domesticos Ltda.

Tupperware International Capital
    Designated Activity Co.
Tupperware Israel Ltd.
Tupperware Italia SPA
Tupperware Kazakhstan LLP
Tupperware LLC
Tupperware Malaysia Services Sdn. Bhd
Tupperware Morocco SARLAU
Tupperware Nederland BV
Tupperware Nordic A/S
Tupperware Österreich Gmbh
Tupperware Panama SA
Tupperware Polska Sp ZOO
Tupperware Products Inc. Wilmington,
    Zweigniederlassung Root
Tupperware Services Mexico S De Rl De
    CV
Tupperware Singapore Pte. Ltd.
Tupperware Southern Africa (Proprietary)
    Ltd.
Tupperware Trading Services (Shenzhen)
    Co. Ltd.
Tupperware Turkey Inc.
Tupperware Turkey Inc. Istanbul Turkiye
    Subesi
Tupperware Ukraine LLC
Tupperware United Kingdom & Ireland Ltd.
Tupperware Vietnam LLC
União Sul Comercial De Plásticos Ltda.

# SCHEDULE 1(d)

## Significant Equity Holders

Allspring Global Investments LLC
Arrowstreet Capital LP
Balyasny Asset Management LP
Blackrock Fund Advisors
Charles Schwab Investment Management Inc.
Citadel Securities LLC
D.E. Shaw & Co. LP
Federated MDTA LLC
Fidelity Management & Research Co. LLC
Fuller & Thaler Asset Management Inc.
Geode Capital Management LLC
Hotchkis & Wiley Capital Management LLC
Invesco Capital Management LLC
LSV Asset Management
Millennium Management LLC
Northern Trust Investments Inc.
Parametric Portfolio Associates LLC
State Street Global Advisors Inc.
Vanguard Group Inc., The
Voloridge Investment Management LLC

## SCHEDULE 1(e)

### Bankruptcy Judges & Staff

Barksdale, Nickita
Batts, Cacia
Bello, Rachel
Brady, Claire
Capp, Laurie
Cavello, Robert
Dorsey, John T.
Farrell, Catherine
Gadson, Danielle
Goldblatt, Craig T.
Haney, Laura
Horan, Thomas M.
Hrycak, Amanda
Johnson, Lora
Lopez, Marquietta
Lugano, Al
O'boyle, Una
Owens, Karen B.
Shannon, Brendan L.
Silverstein, Laurie Selber
Stickles, J. Kate
Subda, Paula
Walker, Jill
Walrath, Mary F.
Yeager, Demitra

# SCHEDULE 1(f)

## **Bankruptcy Professionals**

Alvarez & Marsal Holdings LLC
Cole Schotz P.C.
Epiq Restructuring LLC
Kirkland & Ellis LLP
Moelis & Co. LLC

# SCHEDULE 1(g)

## Banks/Lenders/Lender Advisors

Associated Bank NA
BMO Harris Bank NA
Alden Global Opportunities Master Fund LP
Bank of America NA
Banco Comercial Português S.A.
Citibank NA
Dechert LLP
Fifth Third Bank NA
HSBC USA NA
JPMorgan Chase & Co.
Key Bank NA
KIA II LLC
McGuireWoods LLP
MNG Enterprises Inc.
RPA Advisors LLC
Stonehill Institutional Partners LP
Strategic Investment Opportunities LLC
Synovus Bank
TD Bank NA
Truist Bank
Truist Financial
U.S. Bank NA
Wells Fargo
Young Conaway Stargatt & Taylor LLP

# SCHEDULE 1(h)

## **Committee Members and Advisors**

All Blue Solutions Inc.
Berkeley Research Group LLC
Brown Rudnick LLP
Cesco Linguistic Services Inc.
Morris James LLP
Pension Benefit Guaranty Corp.

# SCHEDULE 1(i)

### Insurance and Sureties

ACE American Insurance Co.
AIG Specialty Insurance Co.
Allianz Global Corporate & Specialty SE
Allianz Global Risks US Insurance Co.
Allianz SE
Allied World Assurance Co. Ltd.
American International Group Inc.
Argo Group Ltd.
Ascot Insurance Co.
Aviva Insurance Ltd.
AXA XL
Axis Insurance Services LLC
Balance Partners LLC
Beazley Property Consortium 9587
Berkshire Hathaway Inc.
CapSpecialty
Chubb Ltd.
DUAL Group, The
Endurance American Specialty Insurance Co.
Euclid Insurance Services Inc.
Hiscox Insurance Co.
Interstate Fire & Casualty Co.
Lloyd's of London (Beazley)
Lloyd's Underwriter Syndicate No 4020 ARK - Global Property, London, England
Lloyd's Underwriter Syndicate No. 0033 HIS, London, England
Lloyd's Underwriter Syndicate No. 0382 HDU, London, England
Lloyd's Underwriter Syndicate No. 0435 FDY, London, England
Lloyd's Underwriter Syndicate No. 0609 AUW, London, England
Lloyd's Underwriter Syndicate No. 1183 TAL, London, England
Lloyd's Underwriter Syndicate No. 1618 KII, London, England
Lloyd's Underwriter Syndicate No. 1686 AXS, London, England

Lloyd's Underwriter Syndicate No. 1886 QBE, London, England
Lloyd's Underwriter Syndicate No. 2987 BRIT, London, England
Lloyd's Underwriter Syndicate No. 5555 QPS
Marsh & McLennan Cos. Inc.
Mercer
Princeton Excess & Surplus Lines Insurance Co., The
RLI Insurance Co.
RSUI Group Inc.
SCOR UK Co. Ltd.
Shelf Opco Bermuda Ltd.
Sompo Holdings Inc.
Swiss Re Corporate Solutions Elite Insurance Corp.
Wesco Insurance Co.
XL Specialty Insurance Co.

# SCHEDULE 1(j)

## **Landlords**

O'Connor Capital Partners Ltd.
OC-IB Headquarters Property Owner LLC
Phoenix Fund Six LLC
Realty Income Corp.

# SCHEDULE 1(k)

## **Potential M&A Counterparties and Advisors**

[Confidential]

# SCHEDULE 1(l)

## Swiss Vendors

AD Majoris
Adiamas
Administradora Dart S De RL De CV
Borealis
Braskem Idesa SAPI
Bumimulia
Dome (China)
Dongguan Jinyi Import & Export Co. Ltd.
DP Plast
Eastman Chemical Co.
ExxonMobil Chemical Co.
FM Polska Sp Zoo
Ghidini
Granula AG
Guimaraes, Augusto
Hule Y Silicon SA De CV
Indelpro
Ineos
Jieyang Jinpaul Cutlery Co. Ltd.
Kai Cutlery (HK) Ltd.
Klg Europe - Venlo BV
Konstar Industries Ltd.
Kyndryl Switzerland GmbH
Link Enterprise Ltd.
Linkfair Household (HK) Ltd.
Manuthiers
Millenarie International Co. Ltd.
Milleounis Transport EE
Polimeros Nacionales SA De CV
Polytype AG
Resirene
Rhenus Logistics SPA
Sabic IP US
SP Plast SRO
Svarba SRO
Vuye Flexible Packaging
Walstead Kraków Sp ZOO
Yamada-Vistamex SA De Cv
Yuyao Boda Electrical
Zhejiang Latim Electric

# SCHEDULE 1(m)

## Taxing Authorities and Tax Advisors

Apache Junction, City of (AZ)
Auburn, City of (AL)
Aztec, City of (NM)
Baker Tilly US LLP
BDO Global
Broomfield, City of (CO)
Broomfield, County of (CO)
California, State of, Franchise Tax Board
Cherry Hills Village, City of (CO)
Cordova, City of (AK)
Davis Group PA
Deloitte
Denmark, Government of, Erhvervsstyrelsen
Goose Creek, City of (SC)
GTreasury SS LLC
Gunnison, City of (CO)
Hollywood, Town of (CA)
Houston, City of (AK)
Kake, City of (AK)
Labyrinth Inc.
Lincoln, City of (NE)
Moore, Scott
Nevada, State of, Department of Taxation
Riverside, City of (CA)
Semmes, City of (AL)
South Carolina, State of, Department of Revenue
St. Florian, Town of (AL)
Tax Director Services Inc.
TaxForce Inc.
Tucker, A. Lee
Tuscaloosa, City of (AL)
Unalaska, City of (AK)
United States, Government of the, Department of Treasury, Internal Revenue Service
Weaver, City of (AL)
Wetumpka, City of (AL)
Williamsburg, County of (SC), Treasurer

# SCHEDULE 1(n)

## Top 50 Unsecured Creditors

AD Majoris
All Blue Solutions Inc.
Alorica Inc.
Applications Software Technology LLC
Avalara Inc.
BDO Seidman LLP
Better Half Partners LLC
BMS Vision Ltd.
Bumimulia
Chang Tsi & Partners Ltd.
Compuquip Technologies LLC
Computer Packages Inc.
Daniel J. Edelman Inc.
Dongguan Jinyi Import & Export Co. Ltd.
Drive Marketing LLC
DXC Technology Services LLC
Ernst & Young LLP
FM Polska Sp Zoo
Ghidini
Green Orchid Landscape Services
Guimaraes, Augusto
Hule Y Silicon SA De CV
Jenkon Inc.
Konstar Industries Ltd.
Link Enterprise Ltd.
Linkfair Household (HK) Ltd.
Manuthiers
Marsh & McLennan Cos. Inc.
Masergy Communications Inc.
Microsoft Licensing GP
Millenarie International Co. Ltd.
Olsten Staffing Services Corp.
Oracle America Inc.
Polimeros Nacionales SA De CV
Print LSC Communications S De R L De C
    V
Rallyware Inc.
Rhenus Logistics SPA
Rimini Street Inc.
SADA Systems Inc.
Sidley Austin LLP
Simpler Postage Inc.

Svarba SRO
US Security Associates Inc.
Vallen Distribution Inc.
Vuye Flexible Packaging
Wei Lih Ho & Co.
Winterscheidt, Michael Francis
Yamada-Vistamex SA De Cv
Zhejiang Latim Electric

# SCHEDULE 1(o)

## U.S. Trustee Personnel

Attix, Lauren
Bates, Malcolm M.
Bu, Fang
Casey, Linda
Cudia, Joseph
Dice, Holly
Dortch, Shakima L.
Fox, Timothy J., Jr.
Giordano, Diane
Girello, Michael
Green, Christine
Hackman, Benjamin
Jones, Nyanquoi
Konde, Hawa
Leamy, Jane
Lipshie, Jonathan
McCollum, Hannah M.
McMahon, Joseph
Nyaku, Jonathan
O'Malley, James R.
Richenderfer, Linda
Schepacarter, Richard
Serrano, Edith A.
Sierra-Fox, Rosa
Thomas, Elizabeth
Wynn, Dion

# SCHEDULE 1(p)

## U.S. Vendors

Accenture LLP
Ace Mold Co. Ltd.
All Blue Solutions Inc.
Alorica Inc.
Applications Software Technology LLC
Arazi-Gamliel, Oran
Avalara Inc.
Axiom Global Inc.
Baker Tilly US LLP
Basf Corp.
BDO Seidman LLP
Better Half Partners LLC
BMC Software Inc.
BMS Vision
Braskem America Inc.
Bynder LLC
CenturyLink Communications
Chang Tsi & Partners Ltd.
Cigna Health & Life Insurance Co.
Compuquip Technologies LLC
Computer Packages Inc.
Corporation Service Co.
Coupa Software Inc.
CyberSource Corp.
Daniel J. Edelman Inc.
Deloitte Consulting LLP
Deloitte Tax LLP
Disney Enterprises Inc.
Drive Marketing
Duke Energy Progress
DXC Technology Services LLC
Ernst & Young LLP
Exxonmobil Chemical Co.
Foli De Mexico S.A. De C.V.
Gaylord Palms Resort & Convention Center
Gibson Dunn & Crutcher LLP
Global Crossing Telecommunications Inc.
Global Overview LLC
Green Orchid Landscape Services
Gregory Poole Equipment Co.
GXO Logistics Supply Chain Inc.
Hartford Life & Accident Insurance Co.

Hays US Corp.
Hollywell Partners LLC
International Paper Co.
Iris Software Inc.
Jenkon Inc.
Korber Supply Chain USA Inc. - Payrun
    Carrier Funding
KPMG LLP
Marsh & McLennan Cos. Inc.
Masergy Communications Inc.
Matross, Melissa
Meridian Compensation Partners LLC
Microsoft Licensing GP
Mittera Group Inc.
MultiBrain Network Inc.
Olsten Staffing Services Corp.
Onetrust Technology Ltd.
Oracle America Inc.
Phoenix Fund Six LLC
Planimolde SA
Pricewaterhousecoopers LLP
Print LSC Communications S De R L De C
    V
Rallyware Inc.
Realty Income Corp.
Red Rocket Studios LLC
ReSmart LLC
Ricoh USA Inc.
Rimini Street Inc.
Robert Half International Inc.
RPA Advisors LLC
Sada Systems Inc.
Sidley Austin LLP
Simpler Postage Inc.
SNI Cos. Inc.
Spirit Realty LP
Tax Director Services Inc.
TaxForce Inc.
Teksystems
Thomson Reuters Tax & Accounting Inc.
Trovata Inc.
Truist Bank

US Security Associates Inc. (Allied
    Universal Co.)
Vallen Distribution Inc.
Vasantha Tool Crafts
Visual Lease LLC
Wei Lih Ho & Co.
Wheels Inc.
Winterscheidt, Michael Francis
Workday Inc.
WPP Group USA Inc.
Xceleration Partners LLC

# SCHEDULE 1(q)

## **Utility Providers**

CenturyLink Communications
Duke Energy One Inc.
Duke Energy Progress
Frontier Communications Inc.
Global Crossing Telecommunications Inc.
GTT Communications Inc.
Hemingway, Town of (SC)
R&R Metal Co. Inc.
Santee Electric Cooperative
Sonoco Recycling LLC
Sprint Corp.
Stericycle Inc.
Toho Water Authority
Waste Management Inc.

**SCHEDULE 2**

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| Accenture LLP | Accenture (Botswana) (Proprietary) Ltd. | Current |
| ACE American Insurance Co. Chubb Ltd. | Chubb Bermuda Insurance Ltd. | Current |
| AIG Specialty Insurance Co. American International Group Inc. | AIG DECO Fund I LP | Current |
| | AIG DECO Fund II LP | Current |
| | National Union Fire Insurance Company of Pittsburgh, PA | Current |
| Allianz Global Corporate & Specialty SE  Allianz Global Risks US Insurance Co.  Allianz SE  Interstate Fire & Casualty Co. | Pacific Investment Management Co. LLC | Current |
| Allspring Global Investments LLC | Allspring Funds Management LLC | Current |
| | Allspring Group Holdings LLC | Current |
| | RCP Credit Opportunities Fund Loan SPV (Fund III) LP | Current |
| | RCP Customized Credit Fund Fund (Fund IV-A) LP | Current |
| | Reverence Capital Partners LLC | Current |
| | Reverence Capital Partners Opportunities Fund I (Cayman) LP | Current |
| Allspring Global Investments LLC | Allspring Funds Management LLC | Current |
| | Allspring Group Holdings LLC | Current |
| | Anna May L. Trala | Current |
| | Ashwin Krishnan | Current |
| | Benjamin J. Daverman | Current |
| | Christian B. McGrath | Current |
| | Collin E. Roche | Current |
| | Constantine S. Mihas | Current |
| | GTCR (W-1) Investors LP | Current |
| | GTCR (W-2) Investors LP | Current |
| | GTCR Fund XIV | Current |
| | GTCR Investment Holdings (Blocked) LP | Current |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | GTCR Investment Holdings (Unblocked) LP | Current |
| | GTCR LLC | Current |
| | GTCR Management Holdings LP | Current |
| | James E. Bonetti | Current |
| | Kalen J. McConnell | Current |
| | Mark M. Anderson | Current |
| | Michael S. Hollander | Current |
| | Sean L. Cunningham | Current |
| Alvarez & Marsal Holdings LLC | A&M Capital Advisors Europe LLP | Closed |
| | A&M Capital Advisors GP, LLC | Closed |
| | A&M Capital Advisors LLC | Closed |
| | A&M Capital Advisors LP | Current |
| | A&M Capital Europe, SCSp | Closed |
| | A&M Capital Europe-GP Associates, LP | Closed |
| | A&M Capital Opportunities Fund, LP | Closed |
| | A&M Capital Opportunities-GP Associates, LP | Closed |
| | A&M Capital Partners, LLC | Current |
| | A&M Capital-GP Associates, LP | Closed |
| | A&M Capital-GP Holdings, LP | Closed |
| | A&M Opportunities Fund | Closed |
| | Alvarez & Marsal AMCO Partners Fund, LP | Closed |
| | Alvarez & Marsal Capital LLC | Closed |
| | Alvarez & Marsal Capital, LP | Closed |
| | Alvarez & Marsal Europe LLP | Closed |
| | Alvarez & Marsal Holdings LLC | Closed |
| | Alvarez & Marsal Inc. | Current |
| | Alvarez & Marsal Partners Buyout Fund, LP | Closed |
| | Alvarez & Marsal Partners Europe Buyout Fund, LP | Closed |
| | Alvarez & Marsal Partners Fund, LP | Closed |
| | Alvarez & Marsal Partners Opportunities Fund, LP | Closed |
| | Barbara Gould | Closed |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | Edward Simon Middleton | Closed |
| | Wesley Arthur Edwards | Closed |
| | Wing Sze Tiffany Wong | Closed |
| Avalara Inc. | Aaron Gupta | Former |
| | Adrian R. Alonso | Current |
| | Cheryl Cecchini Leahy | Current |
| | Christian B. Sowul | Current |
| | David A. Breach | Current |
| | Franklin F. Reis | Current |
| | Fund II Foundation | Current |
| | Greg Myers | Current |
| | James Morrill Ford | Current |
| | James P. Hickey | Current |
| | Martin Taylor | Current |
| | Michael Fosnaugh | Current |
| | Nadeem Syed | Former |
| | Nicholas J. Prickel | Current |
| | Nicolas Stahl | Current |
| | Sam C. Payton | Former |
| | Smith, Robert F. | Current |
| | Vincent L. Burkett | Current |
| | Vista Capital  Solutions Fund GP LLC | Current |
| | Vista Capital Solutions Fund LP | Current |
| | Vista Capital Solutions Fund-A LP | Current |
| | Vista Consulting Group, Inc. | Current |
| | Vista Credit BDC Management LP | Current |
| | Vista Credit Partners | Current |
| | Vista Credit Partners Fund III GP LLC | Current |
| | Vista Credit Partners Fund III, L.P. | Current |
| | Vista Credit Partners Fund III-A LP | Current |
| | Vista Credit Partners III Onshore LLC | Current |
| | Vista Credit Partners LP | Current |
| | Vista Credit Strategic Lending Corp. | Current |
| | Vista Credit Strategic Lending Corp. II | Current |
| | Vista Equity Partners | Current |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | Vista Equity Partners Fund VI LP | Current |
| | Vista Equity Partners Fund VI-A LP | Current |
| | Vista Equity Partners Fund VIII LP | Current |
| | Vista Equity Partners Management LLC | Current |
| AXA XL | AXA European Infrastructure Fund SA | Closed |
| XL Specialty Insurance Co. | AXA IM Prime | Current |
| | AXA Real Estate Investment Managers UK Ltd. | Current |
| | AXA REIM SGP | Current |
| | AXA REIM SGP on behalf of AXA Avenir Infrastructure | Closed |
| | Maestro Health | Closed |
| Balyasny Asset Management LP | Balyasny Asset Management LP | Former |
| | Balyasny Europe Asset Management LLP | Former |
| Bank of America NA | Banc of America Securities LLC | Closed |
| | Bank of America Corporation | Current |
| | Bank of America NA | Closed |
| | Benjamin Klein | Current |
| | BofA Securities Inc. | Current |
| | Merrill Lynch (Asia Pacific) Limited | Closed |
| | Merrill Lynch Interfunding, Inc. | Current |
| BASF Corp. | BASF Americas Corporation | Closed |
| | BASF Corp. | Closed |
| Berkeley Research Group LLC | Berkeley Research Group Holdings LLC | Current |
| | Berkeley Research Group, LLC | Current |
| Berkshire Hathaway Inc. | AC Eagle Corp. | Current |
| | Beach Properties of Florida LLC | Current |
| | Berkshire Hathaway Inc. | Current |
| | BHE Renewables LLC | Current |
| | BHER Power Resources Inc. | Current |
| | BHH Iowa Affiliates LLC | Current |
| | BHH Affiliates LLC | Current |
| | BNSF Railway | Closed |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | Brilliant National Services, Inc. | Current |
| | CTRE LLC | Current |
| | Esslinger-Wooten-Maxwell Inc. | Current |
| | First Network Realty Inc. | Current |
| | First Realty, Ltd. | Current |
| | FlightSafety International Inc. | Closed |
| | Florida Network LLC | Current |
| | Fox & Roach LP | Current |
| | Greater Metro LLC | Current |
| | HomeServices of Illinois LLC | Current |
| | HomeServices of Oregon LLC | Current |
| | HomeServices of Washington LLC | Current |
| | HSGA Real Estate Group LLC | Current |
| | Lovejoy Realty Inc. | Current |
| | Midwest Preferred Realty Inc. | Current |
| | Pickford Real Estate Inc. | Current |
| | Pickford Realty Ltd. | Current |
| | Pilot Butte LLC | Current |
| | PNJP LLC | Current |
| | PPW Holdings LLC | Current |
| | Preferred Carolinas Realty Inc. | Current |
| | Pru-One Inc. | Current |
| | Watermark Realty Inc. | Current |
| Blackrock Fund Advisors | BlackRock Financial Management, Inc. – Decarbonization Partners Group | Current |
| | BlackRock Inc. | Current |
| | BlackRock Investment Management (UK) Limited | Closed |
| | Mark B. Florian | Current |
| BMC Software Inc. | KKR Asia Limited | Current |
| | KKR Capital Markets Asia II Ltd. | Current |
| | KKR Credit Advisors (EMEA) LLP | Closed |
| | KKR Credit Advisors (US) LLC | Current |
| | KKR Financial Services Company LLC | Former |
| | KKR Infra LP | Current |
| | Kohlberg Kravis Roberts & Co. LP | Current |
| | Terrence Ing | Closed |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| BMO Harris Bank NA | BMO Capital Markets | Current |
| Bynder LLC | Bynder BidCo BV | Current |
| | Bynder BidCo Inc. | Current |
| | Bynder BV | Current |
| | Bynder LLC | Current |
| | Bynder TopCo B.V. | Current |
| CenturyLink Communications Global Crossing Telecommunications Inc. | Lumen Technologies, Inc. | Closed |
| Cigna Health & Life Insurance Co. | CHSS JV, LLC | Current |
| | Cigna Corporation | Closed |
| Citadel Securities LLC | Citadel Americas LLC | Current |
| | Citadel Americas Services LLC | Current |
| | Citadel LLC | Current |
| | Citadel Securities LLC | Current |
| | GFS LLC | Current |
| Citibank NA | Andrew Morton | Current |
| | Citigroup Global Markets Asia Limited | Closed |
| | Citigroup Global Markets Europe AG | Closed |
| | Citigroup Global Markets Inc. | Current |
| | Citigroup Global Markets Ltd. | Current |
| | Citigroup Inc. | Current |
| Coupa Software Inc. | Andrew M. Almeida | Former |
| | Coupa Parent, LP | Current |
| | Coupa Software Australia Pty. Ltd. | Current |
| | Coupa Software Brazil Ltda. | Current |
| | Coupa Software Canada Inc. | Current |
| | Coupa Software DMCC | Current |
| | Coupa Software France | Current |
| | Coupa Software GK | Current |
| | Coupa Software Inc. | Current |
| | Coupa Software India Pvt. Ltd. | Current |
| | Coupa Software Pty. Ltd. | Current |
| | Coupa Software Spain SL | Current |
| | Coupa Software Sweden AB | Current |
| | Coupa Software Switzerland AG | Current |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | Coupa Software UK Ltd. | Current |
| | Jennifer J. Alper | Former |
| | Kenneth J. Virnig II | Former |
| | Orlando Bravo | Current |
| | Paul Holden Spaht, Jr. | Current |
| | Robert Sayle | Current |
| | Scott Crabill | Current |
| | Seth J. Boro | Current |
| | Thoma Bravo Advantage | Closed |
| | Thoma Bravo Discover Fund III LP | Current |
| | Thoma Bravo Europe Fund, LP | Current |
| | Thoma Bravo Fund XII LP | Closed |
| | Thoma Bravo Fund XIII LP | Current |
| | Thoma Bravo Fund XIV LP | Current |
| | Thoma Bravo Fund XV LP | Closed |
| | Thoma Bravo Growth Fund LP | Closed |
| | Thoma Bravo LLC | Current |
| | Thoma Bravo LP | Current |
| | Thoma Bravo Oasis Fund LP | Closed |
| | Thoma Bravo Topco LLC | Current |
| D.E. Shaw & Co. LP | Adam Deaton | Current |
| | Manish Dwivedi | Former |
| Daniel J. Edelman Inc. | Daniel J. Edelman Holdings Inc. | Current |
| GTT Communications Inc. | GTT Communications Inc. | Current |
| Deloitte | Deloitte Consulting LLP | Current |
| Deloitte Consulting LLP | Deloitte LLP | Current |
| Deloitte Tax LLP | Deloitte Tax LLP | Current |
| | Deloitte USA LLP | Current |
| Disney Enterprises Inc. | Walt Disney Company, The | Current |
| DXC Technology Services LLC | CSC Operating Company, LLC | Current |
| Federated MDTA LLC | Federated Hermes Funds, Independent Trustees | Current |
| Fidelity Management & Research Co. LLC | Fidelity Investments | Current |
| Frontier Communications Inc. | Frontier Communications Corporation | Current |
| GTreasury SS LLC | GTreasury SS LLC | Closed |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| Hartford Life & Accident Insurance Co. | Hartford Funds, Independent Trustees | Current |
| HSBC USA NA | HSBC Global Services (UK) Limited | Closed |
| | HSBC Holdings plc | Current |
| Ineos | INEOS US Chemicals Co. | Current |
| Invesco Capital Management LLC | Invesco Hong Kong Ltd. | Closed |
| | Invesco International Partnership Fund VI LP | Closed |
| | Invesco Private Capital, Inc. | Current |
| | Invesco Senior Secured Management, Inc. | Closed |
| | Invesco U.S. Venture Partnership Fund VI LP | Closed |
| JPMorgan Chase & Co. | Andrew Cohen | Closed |
| | Highbridge Capital Management, LLC | Current |
| | J.P. Morgan Asset Management | Former |
| | J.P. Morgan Investment Management Inc. | Current |
| | J.P. Morgan Securities Asia Pacific Limited | Current |
| | J.P. Morgan Securities LLC | Current |
| | J.P. Morgan Securities plc | Current |
| | JP Morgan Securities (Asia Pacific) Ltd. | Closed |
| | JP Morgan Securities (Far East) Ltd. | Closed |
| | JPMorgan Asset Management (Europe) SARL | Current |
| | JPMorgan Asset Management (UK) Ltd. | Current |
| | JPMorgan Chase & Co. | Closed |
| | JPMorgan Chase Bank, N.A. | Current |
| | JPMorgan Funds Limited | Current |
| | JPMorgan Infrastructure Investments Fund | Current |
| | JPMorgan Investment Management Inc. - Global Special Situations | Current |
| | JPMorgan Investment Management Inc. - Infrastructure Investment Group | Current |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | Kerwin Clayton | Former |
| | Third Coast Midstream, LLC | Current |
| KPMG LLP | KPMG (HK) | Current |
| | KPMG Auditores, S.L. | Closed |
| | KPMG International Ltd. | Closed |
| | KPMG International Services Ltd. | Closed |
| | KPMG Law Firm | Former |
| | KPMG LLP | Former |
| | KPMG LLP (Canada) | Current |
| | KPMG LLP (Singapore) | Current |
| Kyndryl Switzerland GmbH | Kyndryl | Current |
| | Kyndryl Inc. | Current |
| Millennium Management LLC | Bo Liu | Closed |
| | Millennium Capital Management Ltd. | Closed |
| | Millennium Capital Partners LLP | Closed |
| | Millennium Management LLC | Current |
| Moelis & Co. LLC | Atlas Crest Investment Corp. | Closed |
| | Atlas Crest Investment Corp. III | Closed |
| | Atlas Crest Investment Corp. V | Closed |
| | MA Investment Management Pty Ltd. | Closed |
| | Moelis & Company | Current |
| Northern Trust Investments Inc. | 50 South Capital Advisors, LLC | Current |
| | Northern Trust Fiduciary (Guernsey) Limited | Current |
| | Northern Trust Fiduciary Services (Guernsey) Ltd. | Current |
| Oracle America Inc. | Oracle Corp. | Closed |
| Pension Benefit Guaranty Corp. | Konstantina Diamantopoulos | Former |
| United States, Government of the, Department of Treasury, Internal Revenue Service | United States Department of Homeland Security | Current |
| Pricewaterhousecoopers LLP | David Jonas | Current |
| | PricewaterhouseCoopers LLP | Current |
| | PricewaterhouseCoopers LLP Ontario | Closed |
| SNI Cos. Inc. | GEE Group Inc. | Closed |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| Stonehill Institutional Partners LP | Stonehill Capital Management LLC | Closed |
| TD Bank NA | TD Securities Inc. | Closed |
| Thomson Reuters Tax & Accounting Inc. | Thomson Reuters Corporation | Current |
| | Thomson Reuters Foundation | Current |
| Truist Bank | BB&T Insurance Holdings, Inc. | Current |
| | Truist Bank | Current |
| | Truist Financial Corporation | Current |
| U.S. Bank NA | MUFG Union Bank, N.A. | Current |
| US Security Associates Inc. | Safra Securities LLC | Closed |
| US Security Associates Inc. | David J. Sreter | Current |
| | Jeffrey Perlman | Current |
| | Vishal Mahadevia | Former |
| | Warburg Pincus Asia LLC | Current |
| | Warburg Pincus Asia Real Estate, L.P. | Current |
| | Warburg Pincus Capital Corp. I-A | Current |
| | Warburg Pincus Capital Corp. I-B | Current |
| | Warburg Pincus Global Growth LP | Current |
| | Warburg Pincus Global Growth XIV | Closed |
| | Warburg Pincus LLC | Current |
| | Warburg Realty Partnership Ltd. | Current |
| | WP & Co., L.P. | Current |
| | WP GG Holdings IV BV | Current |
| US Security Associates Inc. | Caisse de dépôt et placement du Québec | Current |
| | Ivanhoé Cambridge Inc. | Closed |
| Vallen Distribution Inc. | Nautic Partners IX LP | Current |
| | Nautic Partners V LP | Current |
| | Nautic Partners VI LP | Current |
| | Nautic Partners VI-A | Current |
| | Nautic Partners VI-A AIV - No. 1 L.P. | Current |
| | Nautic Partners VII LP | Current |
| | Nautic Partners VII-A LP | Current |
| | Nautic Partners VIII LP | Current |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | PEP Nautic Co-Investment Holdings LLC | Current |
| | Vallen Belmont Real Estate LLC | Current |
| | Vallen Buyer LLC | Current |
| | Vallen Canada Inc. | Current |
| | Vallen Corp. | Current |
| | Vallen De Servicios Comercio Exterio SA de CV | Current |
| Vanguard Group Inc., The | The Vanguard Group | Closed |
| Wells Fargo Bank NA | Jon Kossow | Current |
| | Norwest Equity Partners | Current |
| | Norwest Equity Partners IX LP | Current |
| | Norwest Equity Partners X LP | Current |
| | Norwest Equity Partners XI LP | Current |
| | Norwest Equity Partners XI-A LP | Current |
| | Norwest Mezzanine Partners III LP | Current |
| | Norwest Mezzanine Partners IV - Debt LP | Current |
| | Norwest Mezzanine Partners IV - Equity LP | Current |
| | Norwest Mezzanine Partners V LP | Current |
| | Norwest Mezzanine Partners V-A LP | Current |
| | Wells Fargo Asset Management Luxembourg S.A. | Current |
| | Wells Fargo Bank, N.A. | Current |
| | Wells Fargo Securities LLC | Current |
| Wheels Inc. | Frank Consolidated Enterprises, Inc. | Closed |
| [Confidential] | [Confidential] | [Confidential] |
| [Confidential] | [Confidential] | [Confidential] |
| [Confidential] | [Confidential] | [Confidential] |
| [Confidential] | [Confidential] | [Confidential] |
| [Confidential] | [Confidential] | [Confidential] |
| [Confidential] | [Confidential] | [Confidential] |
| [Confidential] | [Confidential] | [Confidential] |
| [Confidential] | [Confidential] | [Confidential] |
| [Confidential] | [Confidential] | [Confidential] |

**<u>EXHIBIT C</u>**

**Brian J. Fox Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| TUPPERWARE BRANDS CORPORATION, *et al.*,[1] | ) | Case No. 24-12156 |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## DECLARATION OF BRIAN J. FOX
## IN SUPPORT OF THE DEBTOR'S APPLICATION FOR
## THE ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND
## EMPLOYMENT OF KIRKLAND & ELLIS LLP AND KIRKLAND &
## ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR THE DEBTORS
## AND DEBTORS IN POSSESSION EFFECTIVE AS OF SEPTEMBER 17, 2024

I, Brian J. Fox, Chief Restructuring Officer, of Tupperware Brands Corporation being duly sworn, state the following under penalty of perjury:

1.    I am the Chief Restructuring Officer of Tupperware Brands Corporation located at 14901 S Orange Blossom Trail, Orlando, FL 32837.

2.    I submit this declaration (this "<u>Declaration</u>") in support of the *Application of Debtors for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP as Attorneys for the Debtors and Debtors in Possession Effective as of September 17, 2024* (the "<u>Application</u>").[2]  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tupperware Brands Corporation (2333); Dart Industries Inc. (5570); Deerfield Land Corporation (0323); Premiere Products, Inc. (4064); Tupperware Home Parties LLC (1671); Tupperware International Holdings Corporation (8983); Tupperware Products AG (6765); Tupperware Products, Inc. (8796); Tupperware U.S., Inc. (2010); and Tupperware Brands Latin America Holdings, L.L.C. (0264). The location of the Debtors' service address in these chapter 11 cases is: 14901 S Orange Blossom Trail, Orlando, FL 32837.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

**The Debtors' Selection of Counsel**

3.      The Debtors recognize that a comprehensive review process is necessary when selecting and managing chapter 11 counsel to ensure that bankruptcy professionals are subject to the same client-driven market forces, scrutiny, and accountability as professionals in non-bankruptcy engagements.

4.      The Debtors have a longstanding relationship with Kirkland, having first engaged Kirkland in 2020 to review and advise on certain liability management and restructuring matters. Upon information and belief, I understand that prior to this engagement, the Debtors interviewed three firms to serve as potential restructuring counsel.  In early 2023, Kirkland began again advising on restructuring alternatives.  Accordingly, the Debtors determined that Kirkland possessed the expertise in relevant legal issues that the Debtors required in potential bankruptcy counsel.

5.      Ultimately, the Debtors retained Kirkland because of its extensive experience in corporate reorganizations, both out-of-court and under chapter 11 of the Bankruptcy Code.  More specifically, Kirkland is familiar with the Debtors' business operations and many of the potential legal issues that may arise in the context of these chapter 11 cases.  I believe that Kirkland is both well qualified and uniquely able to represent the Debtor in these chapter 11 cases in an efficient and timely manner.

**Rate Structure**

6.      In my capacity as Chief Restructuring Officer, I am responsible for supervising outside counsel retained by the Debtors in the ordinary course of business.  Kirkland has informed the Debtors that its rates for bankruptcy representations are comparable to the rates Kirkland charges for non-bankruptcy representations.  As discussed below, I am also responsible for

2

reviewing the statements regularly submitted by Kirkland, and can confirm that the rates Kirkland charged the Debtors in the prepetition period are the same as the rates Kirkland will charge the Debtors in the postpetition period.

### <u>Cost Supervision</u>

7.     The Debtors have approved the prospective budget and staffing plan for the period from September 17, 2024 to November 1, 2024, recognizing that in the course of a large chapter 11 case like these chapter 11 cases, it is possible that there may be a number of unforeseen fees and expenses that will need to be addressed by the Debtors and Kirkland.  The Debtors further recognize that it is their responsibility to monitor closely the billing practices of their counsel to ensure the fees and expenses paid by the estate remain consistent with the Debtors' expectations and the exigencies of the chapter 11 cases.  The Debtors will continue to review the statements that Kirkland regularly submits, and, together with Kirkland, amend the budget and staffing plans periodically, as the case develops.

8.     As they did prepetition, the Debtors will continue to bring discipline, predictability, client involvement, and accountability to the counsel fees and expenses reimbursement process. While every chapter 11 case is unique, these budgets will provide guidance on the periods of time involved the level of the attorneys and professionals that will work on various matters, and projections of average hourly rates for the attorneys and professionals for various matters.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  October 18, 2024                          Respectfully submitted,

                                                  _/s/ Brian J. Fox_____
                                                  Name: Brian J. Fox
                                                  Title:   Chief Restructuring Officer

4