## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TUPPERWARE BRANDS CORPORATION, *et al.*,[1] | Case No. 24-12156 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 473** |

## OBJECTION OF THE AD HOC GROUP OF SECURED LENDERS TO THE MOTION FOR ENTRY OF AN ORDER (I) DIRECTING THE UNITED STATES TRUSTEE TO APPOINT A COMMITTEE OF RETIRED EMPLOYEES OF TUPPERWARE BRANDS CORPORATION AND (II) GRANTING RELATED RELIEF

The Ad Hoc Group of Secured Lenders (the "Ad Hoc Group")[2], by and through its undersigned counsel, hereby submits this objection (the "Objection") to the *Motion of Debtors for Entry of An Order (I) Directing the United States Trustee to Appoint a Committee of Retired Employees of Tupperware Brands Corporation and (II) Granted Related Relief* [Dkt. No. 473] (the "Retiree Committee Motion"), and in support hereof, the Ad Hoc Group respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tupperware Brands Corporation (2333); Dart Industries Inc. (5570); Deerfield Land Corporation (0323); Premiere Products, Inc. (4064); Tupperware Home Parties LLC (1671); Tupperware International Holdings Corporation (8983); Tupperware Products, Inc. (8796); Tupperware U.S., Inc. (2010); and Tupperware Brands Latin America Holdings, L.L.C. (0264). The location of the Debtors' service address in these chapter 11 cases is: 14901 S Orange Blossom Trail, Orlando, FL 32837.

[2] The members of the Ad Hoc Group are listed in the *Verified Statement of the Ad Hoc Group of Secured Lenders Pursuant to Bankruptcy Rule 2019* [Docket No. 46]. The members of the Ad Hoc Group hold, in the aggregate, approximately $472.85 million, or 58%, of the approximately $817 million principal amount outstanding under the Revolving/Term Loan Credit Agreement. The debt thereunder is secured by a first lien on substantially all the Debtors' assets, including cash collateral, other than certain specified inventory on which the Revolving/Term Loan Secured Lenders have a second lien. The members of the Ad Hoc Group also hold, in the aggregate, $8 million in principal amount of loans outstanding under the Bridge Loan Credit Agreement, which is secured by a first lien on certain inventory, and the proceeds, products, and offspring thereof.

## PRELIMINARY OBJECTION

1.      The Debtors seek an order that directs the U.S. Trustee to appoint an official committee of retired employees (the "Retiree Committee").   While the Ad Hoc Group is sympathetic to the needs of retired employees, the appointment of the Retiree Committee is wholly unnecessary at this point in the chapter 11 proceedings, as it will only cause unnecessary waste of precious estate resources with no corresponding benefit.  The Debtors are in chapter 11 liquidation proceedings—there is no go-forward business under which retiree benefits may be administered as substantially all of the Debtors' assets have been sold.  Furthermore, the case is in all likelihood administratively insolvent.   There are hardly sufficient funds to satisfy the fees of the many professionals hired in this case thus far, let alone those of a Retiree Committee that will serve no beneficial purpose for any of the Debtors' stakeholders.  As such, the motion to appoint a Retiree Committee should be denied.

## BACKGROUND

2.      On November 27, 2024, Party Products LLC ("NewCo"), purchased substantially all of the Debtors' assets pursuant to the Sale Order approved by this Court on November 24, 2024.  Pursuant to the Transition Services Agreement, NewCo has retained some of the Debtors' employees.

3.      Following the NewCo sale, the remaining Debtor entities are non-operative and hold no material assets.  The Debtors filed a liquidating chapter 11 plan (the "Plan"), *see* Dkt. No. 470, under which all remaining operations and assets of the Debtor are to be wound down and liquidated by a liquidation trust.  As of the filing of this Objection, Debtors have no remaining employees, and retain no funds sufficient to provide for ongoing benefits.

4.      A small number of retirees have benefits plans that expired at the end of December 2024.   The Debtors also maintain one retiree health reimbursement plan which, outside of bankruptcy, is unilaterally terminable.

## **OBJECTION**

5.      The appointment of a Retiree Committee is not necessary under section 1114 given the procedural state of this liquidation proceeding.  Section 1114 of the Bankruptcy Code was designed to ensure that "the burden of turning a company around should not rest on the backs of retirees."  *In re Ionosphere Clubs, Inc.*, 134 B.R. 515, 522 (Bankr. S.D.N.Y. 1991).  Where a debtor is reorganizing on a go-forward basis, the section offers certain protections to retirees. Given that the Debtors herein are liquidating their remaining assets and transferring them to a liquidating trust, the Debtors clearly are not seeking to reorganize "on the back of retirees"—the key concern of Congress in enacting Bankruptcy Code section 1114 to ensure that viable companies emerging from chapter 11 did not unilaterally cut off retiree benefits.  *Id.* at 522-23.  In any event, appointment of a Retiree Committee at this stage is likely futile given the Debtors' lack of financial wherewithal to find any retiree benefits.

6.      The Third Circuit held in *In re Visteon Corp*, 612 F.3d 210 (3d Cir. 2010), that debtors reorganizing pursuant to a chapter 11 plan must comply with the procedures laid out in section 1114 of the Bankruptcy Code as it relates to all retirement plan benefits.  While this ruling is binding on this Court, the appointment of a Retiree Committee is not necessary in this case. The dispute in Visteon was whether section 1114 applies even to plans that may be terminated unilaterally by the employer outside of bankruptcy, but unlike the case herein, it involved a reorganizing debtor rather than a liquidating debtor. *See e.g. id*. at 234 ("A Chapter 11 reorganization is unique, however, because a reorganizing company avails itself of the statutory

3

privilege of bankruptcy in order to transition to greater viability. A reorganizing company hopes to emerge and be profitable, at which point the provision of retiree benefits might again inure to its benefit."). Of course this is not the case here.

7.       Courts have found that within the strictures of section 1114, the appointment of a committee may not always be in the best interest of the estate. In *In re Farmland Indus., Inc*., 294 B.R. 903 (Bankr. W.D. Mo. 2003), the court found that section 1114 "accords the Court discretion in the appointment of a committee of retired employees" and that an appointment was not appropriate in the absence of a motion to modify or terminate plans, where the appointment of such a committee "would simply delay things further, at considerable expense to the Debtors, and would not change the final result." *Id.* at 917. *See also In re N. Am. Royalties, Inc*., 276 B.R. 860, 868 (Bankr. E.D. Tenn. 2002) ("the course of events in this chapter 11 case has made it obvious for some time that employee and retiree benefits would come to an end rather soon. There is no need to appoint a committee of salaried beneficiaries to negotiate, and there are no other reasons that make it appropriate to appoint a committee.").

8.       The appointment of a Retiree Committee would not benefit the estate or any constituency at this time. Rather, the formation of a Retiree Committee would create undue delay and would only add unnecessary cost to an already likely administratively insolvent estate. Further, the Debtors are not reorganizing, they are liquidating. With no material assets remaining, the estate is no more than a shell that is to be wound down in accordance with a liquidating chapter 11 plan. There is simply no potential harm that the appointment of such a committee would alleviate.

9.       A Retiree Committee is not appropriate or necessary in this case. As such, the Court should reject the Retiree Committee Motion. In the event, however, that the Court is inclined

to grant the Motion, the Ad Hoc Group urges the Court to strictly limit the mandate for, and the budget afforded to, any such committee to ensure that the Debtors' limited estate resources are preserved for the benefit of all creditors.

10.    The Ad Hoc Group expressly reserves all right with respect to the Retiree Committee Motion and this Objection, including the right to amend or supplement this Objection, submit additional briefing, participate in any discovery and be heard at any hearing or trial related to the Objection or the Motion.  Nothing contained herein shall constitute a waiver of any of the rights or remedies of the Ad Hoc Group, each of which is expressly reserved.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Ad Hoc Group respectfully requests that this Court deny the Motion, or, alternatively, limit the relief granted as set forth herein and grant such other relief as the Court deems just and proper.

Dated: January 28, 2025

/s/ S. Alexander Faris
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Robert S. Brady (No. 2847)
Robert F. Poppiti, Jr. (No. 5052)
S. Alexander Faris (No. 6278)
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
rbrady@ycst.com
rpoppiti@ycst.com
afaris@ycst.com

-and-

**DECHERT LLP**
Allan S. Brilliant (admitted *pro hac vice*)
Shmuel Vasser (admitted *pro hac vice*)
Stephen M. Wolpert (admitted *pro hac vice*)
Miles A. Taylor (admitted *pro hac vice*)
1095 Avenue of the Americas
New York, NY 10036-6797
Tel: (212) 698-3500
Fax: (212) 698-3599
allan.brilliant@dechert.com
shmuel.vasser@dechert.com
stephen.wolpert@dechert.com
miles.taylor@dechert.com

*Counsel to Ad Hoc Group of Secured Lenders*