## Exhibit A

**Redline**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TUPPERWARE BRANDS CORPORATION, *et al.*,[1] | ) Case No. 24-12156 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF TUPPERWARE**
**BRANDS CORPORATION AND ITS DEBTOR SUBSIDIARIES**

**COLE SCHOTZ P.C.**
Patrick J. Reilley (No. 4451)
Stacy L. Newman (No. 5044)
Michael E. Fitzpatrick (No. 6797)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone:     (302) 652-3131
Facsimile:     (302) 652-3117
Email:     preilley@coleschotz.com
     snewman@coleschotz.com
     mfitzpatrick@coleschotz.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (Admitted *pro hac vice*)
Spencer A. Winters, P.C. (Admitted *pro hac vice*)
Jeffrey T. Michalik (Admitted *pro hac vice*)
Gabriela Z. Hensley (Admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:     anup.sathy@kirkland.com
     spencer.winters@kirkland.com
     jeff.michalik@kirkland.com
     gabriela.hensley@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

Dated: ~~January 14~~March 6, 2025

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tupperware Brands Corporation (2333); Dart Industries Inc. (5570); Deerfield Land Corporation (0323); Premiere Products, Inc. (4064); Tupperware Home Parties LLC (1671); Tupperware International Holdings Corporation (8983); Tupperware Products, Inc. (8796); Tupperware U.S., Inc. (2010); and Tupperware Brands Latin America Holdings, L.L.C. (0264).  The location of the Debtors' service address in these chapter 11 cases is: 14901 S Orange Blossom Trail, Orlando, FL 32837.

# TABLE OF CONTENTS

ARTICLE I.    DEFINED TERMS AND RULES OF INTERPRETATION ................................ 1

    A.       Definitions ................................................................................................ 1

    B.       Rules of Interpretation ........................................................................... 14

    C.       Computation of Time ............................................................................. 15

    D.       Controlling Document ........................................................................... 15

ARTICLE II.    ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY FEES ........................................................................................................ 15

    A.       Administrative Claims ........................................................................... 15

    B.       Professional Fee Claims ........................................................................ 16

        1.      Final Fee Applications ................................................................ 16

        2.      Professional Fee Reserve Amount ............................................. 16

        3.      Professional Fee Reserve ........................................................... 17

    C.       Priority Tax Claims ............................................................................... 17

    D.       U.S. Trustee Statutory Fees ................................................................... 17

ARTICLE III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........ 18

    A.       Classification of Claims and Interests ................................................... 18

    B.       Treatment of Claims and Interests ........................................................ 19

        1.      Class 1 –Other Secured Claims .................................................. 19

        2.      Class 2 – Other Priority Claims .................................................. 19

        3.      Class 3 – Credit Agreement Claims ........................................... 19

        4.      Class 4 – General Unsecured Claims ......................................... 20

        5.      Class 5 – Intercompany Claims .................................................. 20

        6.      Class 6 – Intercompany Interests ............................................... 20

        7.      Class 7 – Interests in Tupperware .............................................. 21

8.      Class 8 – Section 510(b) Claims .......................... 21

C.      Special Provisions Governing Unimpaired Claims ........... 21

D.      Elimination of Vacant Classes ............................ 21

E.      Controversy Concerning Impairment ........................ 22

F.      Subordination of Claims .................................. 22

G.      Reservation of Rights Regarding Claims ................... 22

H.      Postpetition Interest on Claims .......................... 22

ARTICLE IV.   MEANS FOR IMPLEMENTATION OF THE PLAN ................ 22

A.      Sources of Consideration for Plan Distributions .......... 22

B.      Vesting of Assets ........................................ 22

C.      Liquidating Trust ........................................ 23

1.      Establishment of the Liquidating Trust ................... 23

2.      Transfer of the Liquidating Trust Assets ................. 23

3.      Liquidating Trust Agreement .............................. 23

4.      Purpose of the Liquidating Trust ......................... 23

5.      Liquidating Trustee ...................................... 24

(a)     Appointment of the Liquidating Trustee ................... 24

(b)     Liquidating Trustee as Representative of the Estates ..... 24

(c)     Responsibilities and Authority of the Liquidating Trustee 24

(d)     Powers of the Liquidating Trustee ........................ 25

(e)     Compensation of the Liquidating Trustee .................. 25

(f)     Retention and Payment of Professionals ................... 26

6.      Termination of the Liquidating Trust ..................... 26

D.      U.S. Federal Income Tax Treatment and Reporting of Liquidating Trust 26

E.      Preservation of Causes of Action ......................... 28

iii

F.    Corporate Action ........................................................................................ 28

    1.    Transfer of Assets and Assumption of Liabilities .......................... 28

    2.    Dissolution of the Debtors; Removal of Directors and Officers;
    Termination of Employees ............................................................. 28

G.    Books and Records ..................................................................................... 29

H.    Transfer of Privilege/No Waiver ................................................................ 29

H.    Plan Transactions ...................................................................................... 29

I.    Effectuating Documents and Further Transactions ................................... 30

J.    Section 1146 Exemption from Certain Taxes and Fees ............................ 30

K.    Sale Order ................................................................................................. 30

L.    Authority to Act ......................................................................................... 30

M.    No Revesting of Liquidating Trust Assets ................................................. 31

N.    Cancellation of Securities and Agreements. .............................................. 31

ARTICLE V.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES; AND INSURANCE POLICIES ............................................................ 31

A.    General Treatment ..................................................................................... 31

B.    Rejection Damages Claims ........................................................................ 32

C.    Preexisting Obligations to Debtors under Executory Contracts or Unexpired
Leases ....................................................................................................... 32

D.    Insurance Preservation ............................................................................. 32

ARTICLE VI.   PROVISIONS GOVERNING DISTRIBUTIONS ............................... 33

A.    Distribution Record Date ........................................................................... 33

B.    Withholdings ............................................................................................. 33

C.    Date of Distributions ................................................................................. 33

D.    Disbursing Agent ...................................................................................... 34

E.    Powers of Disbursing Agent ...................................................................... 34

F.    Surrender or Cancellation of Instruments..................................................34

G.    IRS Forms.........................................................................................................34

H.    Delivery of Distributions.................................................................................35

I.    Manner of Payment............................................................................................35

J.    Foreign Currency Exchange Rate....................................................................35

K.    Setoffs and Recoupments.................................................................................35

L.    Minimum Distributions.....................................................................................36

M.    Allocation of Distributions Between Principal and Interest........................36

N.    Distributions Free and Clear...........................................................................36

O.    Administrative / Priority Claims Reserve.......................................................36

P.    Claims Paid or Payable by Third Parties.......................................................37

    1.    Claims Paid by Third Parties.................................................................37

    2.    Claims Payable by Third Parties............................................................37

    3.    Applicability of Insurance Policies........................................................37

ARTICLE VII.    PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED CLAIMS.....................................................................................................................38

A.    Allowance of Claims.........................................................................................38

B.    Claims Administration Responsibilities..........................................................38

C.    Estimation of Claims.........................................................................................38

D.    Adjustment to Claims Without Objection.......................................................38

E.    Time to File Objections to Claims...................................................................39

F.    Disallowance of Late Claims...........................................................................39

G.    Disputed Claims.................................................................................................39

H.    No Distributions Pending Allowance...............................................................39

I.    Distributions After Allowance..........................................................................39

ARTICLE VIII.   CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ................................ 40

    A.      Conditions Precedent ................................................................ 40

    B.      Waiver of Conditions ................................................................ 41

    C.      Effect of Vacatur of the Confirmation Order ................................ 41

    D.      Votes Solicited in Good Faith ................................................... 41

ARTICLE IX.   RELEASE, INJUNCTION, AND RELATED PROVISIONS ........................... 41

    A.      Releases by the Debtors ............................................................ 41

    B.      Releases by the Releasing Parties. .............................................. 42

    C.      Exculpation. ........................................................................... 43

    D.      Injunction. .............................................................................. 44

    E.      No Discharge ......................................................................... ~~44~~45

    F.      Release of Liens ...................................................................... 45

ARTICLE X. RETENTION OF JURISDICTION .................................................................. 45

ARTICLE XI.   MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ....... 47

    A.      Modification of the Plan ........................................................... 47

    B.      Other Amendments .................................................................. 47

    C.      Effect of Confirmation on Modifications ..................................... ~~47~~48

    D.      Revocation of Plan; Effect of Non-Occurrence of Conditions to the Effective Date ................................................................................. ~~47~~48

ARTICLE XII.   MISCELLANEOUS PROVISIONS ............................................................. 48

    A.      Debtors' Operation from Combined Hearing Through Effective Date ...... 48

    B.      Immediate Binding Effect ......................................................... 48

    C.      Additional Documents .............................................................. 48

    D.      Substantial Consummation ........................................................ ~~48~~49

    E.      Reservation of Rights ............................................................... 49

F.    Successors and Assigns .......................................................................... 49

G.    Determination of Tax Liabilities ............................................................ 49

H.    Dissolution of the Committee ................................................................ 49

I.    Post-Effective Date Service List ............................................................ 4950

J.    Notices .................................................................................................. 50

K.    Term of Injunctions or Stays ................................................................. 5152

L.    Entire Agreement ................................................................................... 5253

M.    Plan Supplement Exhibits ...................................................................... 5253

N.    Governing Law ...................................................................................... 5253

O.    Non-Severability of Plan Provision Upon Confirmation ....................... 5253

P.    Closing of the Chapter 11 Cases ............................................................ 5354

**Introduction**

Tupperware Brands Corporation and the other above-captioned debtors and debtors in possession (each, a "<u>Debtor</u>" and collectively, the "<u>Debtors</u>") propose this joint chapter 11 plan (as amended, supplemented, or otherwise modified from time to time, this "<u>Plan</u>") for the resolution of outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in Article I of the Plan.

Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. Holders of Claims against or Interests in the Debtors may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan, and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classification of Claims and Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable and set forth herein. **The Plan does not contemplate substantive consolidation of any of the Debtors other than for distributions (*i.e.*, all creditors of all Debtors will receive interests in the same Liquidating Trust) and voting purposes.**

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS AND RULES OF INTERPRETATION

### A.     Definitions

The following terms, when used in the Plan, or any subsequent amendments or modifications thereof, have the respective meanings hereinafter set forth and shall be equally applicable to the singular and plural of terms defined.

1.     "*Acquired Assets*" has the meaning set forth in the Purchase Agreement.

2.     "*Acquired Avoidance Actions*" has the meaning set forth in the Sale Order.

3.     "*Ad Hoc Group*" means the ad hoc group of lenders to the Debtors under the Credit Agreement and Bridge Credit Agreement.

4.     "*Administrative Claim*" means a Claim against any of the Debtors arising on or after the Petition Date and through the Effective Date for a cost or expense of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors; (b) the Allowed Professional Fee Claims; (c) Adequate

Protection Claims (as defined in the Cash Collateral Order and subject to allowance and procedures set forth therein); and (d) all fees and charges assessed against the Estates under section 1930 of the Judicial Code.

5.      "*Administrative Claim Bar Date*" means the deadline for filing requests for payment of Administrative Claims, which:    (a) with respect to Administrative Claims other than Professional Fee Claims, shall be the later of (i) the first Business Day that is 30 days after the Effective Date or (ii) in the event an Executory Contract or Unexpired Lease is rejected on or after the Effective Date, solely as to Administrative Claims related to such rejected Executory Contract or Unexpired Lease, the first Business Day that is 30 days after notice to the counterparty to such rejected Executory Contract or Unexpired Lease; and (b) with respect to Professional Fee Claims, shall be the first Business Day that is 45 days after the Effective Date.

6.      "*Administrative Claim Objection Bar Date"* means the deadline for filing objections to requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims), which shall be the first Business Day that is 180 days following the Effective Date; *provided* that the Administrative Claim Objection Bar Date may be extended by order of the Bankruptcy Court.

7.      "*Administrative / Priority Claims Reserve*" means a segregated account established by the Debtors in accordance with Article VI.O of the Plan.

8.      "*Administrative / Priority Claims Reserve Amount*" means the amount of Cash necessary to satisfy all Allowed Administrative Claims (other than Professional Fee Claims) and Allowed Other Secured Claims to the extent any such Claims are not Assumed Liabilities under the applicable Sale Transaction Documents, which aggregate amount shall be funded into the Administrative / Priority Claims Reserve.

9.      "*Affiliate*" means, with respect to any Entity, all Entities that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code if such Entity was a debtor in a case under the Bankruptcy Code.

10.      "*Allowed*" means with respect to any Claim, except as otherwise provided in the Plan: (a) a Claim that is evidenced by a Proof of Claim or request for payment of an Administrative Claim, as applicable, Filed by the Claims Bar Date, the Governmental Bar Date, or the Administrative Claims Bar Date, as applicable (except for a Claim in which a Proof of Claim is not or shall not be required to be Filed under the Plan, the Bankruptcy Code, or pursuant to a Final Order) in accordance with the terms of the Bar Date Order; (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not Disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim, as applicable, shall have been Allowed by a Final Order of the Bankruptcy Court.  Except as otherwise specified in the Plan or any Final Order, and except for any Claim that is Secured by property of a value in

excess of the principal amount of such Claim, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim has been timely Filed (where such Proof of Claim is required to be Filed) is not considered Allowed and shall be expunged without further action by the Debtors or the Liquidating Trustee and without further notice to any party or action, approval, or order of the Bankruptcy Court. For the avoidance of doubt: (x) a Proof of Claim or request for payment of an Administrative Claim, as applicable, Filed after the Claims Bar Date, the Governmental Bar Date, or the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim or agreement in writing by the Debtors or the Liquidating Trustee and the Holder of such late-Filed Claim; and (y) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law. "Allow" and "Allowing" shall have correlative meanings.

11.   "*Assumed Liabilities*" means any liabilities assumed by the Purchaser or its affiliates in the Sale Transaction pursuant to the terms of the Purchase Agreement.

12.   "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination, or other similar claims, Causes of Action, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including claims, Causes of Action, or remedies arising under chapter 5 of the Bankruptcy Code or under similar or related local, state, federal, or foreign statutes or common law, including fraudulent transfer laws.

13.   "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

14.   "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware presiding over the Chapter 11 Cases, or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of reference under 28 U.S.C. § 157 of the Judicial Code, the United States District Court for the District of Delaware.

15.   "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each as amended from time to time.

16.   "*Bar Date*" means, as applicable, the Administrative Claim Bar Date and any other date or dates established by an order of the Bankruptcy Court by which Proofs of Claim must be Filed, including the general bar date and bar date for Governmental Units, each as set forth in the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Claims,                                   and*

3

*(IV) Approving Form and Manner of Notice Thereof* [Docket No. 333], (as the same may be amended, supplemented, or modified from time to time after entry thereof), entered by the Bankruptcy Court on November 12, 2024.  Notwithstanding the foregoing, the Professional Fee Claims shall be Filed in accordance with Article II.B in the Plan and shall not otherwise be subject to the Bar Date

17.    "*Bar Date Order*" means the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Claims, and (IV) Approving Form and Manner of Notice Thereof* [Docket No. 333], (as the same may be amended, supplemented, or modified from time to time after entry thereof), entered by the Bankruptcy Court on November 12, 2024.

18.    "*Bidding Procedures Order*" means the *Order (I) Approving the Bidding Procedures, (II) Approving the Form and Manner of Sale Notice, (III) Scheduling a Sale Hearing, (IV) Approving the Procedures for the Assumption and Assignment of Contracts, (V) Approving the Sale of the Debtors' Assets Free and Clear, and (VI) Granting Related Relief* [Docket No. 243], (as the same may be amended, supplemented, or modified from time to time after entry thereof), entered by the Bankruptcy Court on October 23, 2024.

19.    "*Bridge Agent*" means GLAS USA LLC, in its capacity as administrative agent under the Bridge Credit Agreement and the related loan documents, and any replacement or successor agent thereto.

20.    "*Bridge Credit Agreement*" means that certain Bridge Credit Agreement, dated as of August 12, 2024 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time) by and among Tupperware Brands Corporation, each of the other Debtors, as guarantors party thereto, the lenders from time to time party thereto, the Bridge Agent, and GLAS Americas LLC, as collateral agent.

21.    "*Bridge Credit Agreement Claims*" means any Claim against any Debtor derived from, based upon, or arising under the Bridge Credit Agreement or any other Loan Document (as defined in the Bridge Credit Agreement) and any fees, costs, and expenses that are reimbursable by any Debtor pursuant to the Bridge Credit Agreement.

22.    "*Bridge Loan Lenders*" means the lenders under the Bridge Credit Agreement.

23.    "*Business Day*" means any day other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

24.    "*Cash*" or "*$*" means cash and cash equivalents, including bank deposits, checks, and other similar items, in legal tender of the United States of America.

25.    "*Cash Collateral*" has the meaning set forth in section 363(a) of the Bankruptcy Code.

26. "*Cash Collateral Order*" means the *Final Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 384] (as may be modified, amended, or supplemented by further Final Order), entered by the Bankruptcy Court on November 24, 2024.

27. "*Cause of Action*" means any and all claims, interests, controversies, actions, proceedings, reimbursement claims, contribution claims, recoupment rights, debts, third-party claims, damages, responsibilities, disputes, indebtedness, assertions, allegations, losses, injuries, attorney's fees, costs, expenses, judgments of every type, remedies, causes of action, demands, rights, suits, obligations, liabilities, accounts, defenses, counterclaims and crossclaims, offsets, powers, privileges, licenses, Liens, Avoidance Actions, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, accrued or unaccrued, contingent or non-contingent, asserted or unasserted, liquidated or unliquidated, secured or unsecured, matured or unmatured, suspected or unsuspected, disputed or undisputed, direct or indirect, assertable directly or derivatively, choate or inchoate, fixed, contingent, pending or threatened, reduced to judgment or otherwise, whether arising before, on, or after the Petition Date, in contract, tort, Law, equity or under any state or federal or common law or statute or regulation or otherwise. For the avoidance of doubt, the Debtors' Causes of Action expressly include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by Law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

28. "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

29. "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

30. "*Claims and Noticing Agent*" means Epiq Corporate Restructuring, LLC, the claims and noticing agent retained by the Debtors in the Chapter 11 Cases by order of the Bankruptcy Court [Docket No. 71].

31. "*Claims Bar Date*" means the date established pursuant to the Bar Date Order, by which Proofs of Claim must be Filed with respect to Claims, other than (i) Administrative Claims, including Claims held by Governmental Units, or (ii) other Claims or Interests for which the Bankruptcy Court entered an order excluding the Holders of such Claims or Interests from the requirement of Filing Proofs of Claim.

32. "*Claims Objection Deadline*" means the deadline for objecting to a Claim (other than an Administrative Expense Claim), which shall be the later of (a) the first Business Day that is

180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to Claims.

33.    "*Claims Register*" means the official register of Claims against and Interests in the Debtors maintained by the Claims and Noticing Agent or the clerk of the Bankruptcy Court.

34.    "*Class*" means a class of Claims or Interests pursuant to section 1122(a) of the Bankruptcy Code, as set forth in Article III of the Plan.

35.    "*Combined Hearing*" means the hearing at which the Bankruptcy Court will consider Confirmation of the Plan and approval of the Disclosure Statement, as such hearing may be adjourned or continued from time to time.

36.    "*Committee*" means the statutory committee of unsecured creditors of the Debtors, appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on September 30, 2024, as set forth in the *Notice of Appointment of Creditors' Committee* [Docket No. 106].

37.    "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

38.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

39.    "*Confirmation Order*" means the order of the Bankruptcy Court approving the adequacy of the Disclosure Statement and confirming the Plan.

40.    "*Consummation*" means the occurrence of the Effective Date.

41.    "*Credit Agreement*" means that certain Credit Agreement, dated as of November 23, 2021 (as amended by that certain First Amendment to Credit Agreement dated as of August 1, 2022, as amended by that certain Second Amendment to Credit Agreement dated as of December 21, 2022, as amended by that certain Third Amendment to Credit Agreement dated as of February 22, 2023, as amended by that certain Fourth Amendment to Credit Agreement and Limited Waiver of Borrowing Conditions dated as of May 5, 2023, as amended by that certain Debt Restructuring Agreement dated as of August 2, 2023, as amended by that certain Fifth Amendment to Credit Agreement dated as of October 5, 2023, as amended by that certain Sixth Amendment to Credit Agreement dated as of December 22, 2023, as amended, modified, and otherwise affected by that certain Forbearance Agreement dated as of February 13, 2024, and as further amended, restated, and otherwise affected by that certain Seventh Amendment to the Credit Agreement and Bridge Credit Agreement dated as of August 12, 2024, and as further amended, restated, supplemented or otherwise modified from time to time), by and among Tupperware, as Parent Borrower, Tupperware Products AG, as Swiss Subsidiary Borrower, the Lenders from time to time party thereto, and the Credit Agreement Agent (each term not defined herein, as defined in the Credit Agreement).

42. "*Credit Agreement Agent*" means Wells Fargo Bank, National Association in its capacity as administrative agent under the Credit Agreement and the related loan documents, and any replacement or successor agent thereto.

43. "*Credit Agreement Claims*" means any Claim against any Debtor derived from, based upon, or arising under the Credit Agreement or any other Loan Document (as defined in the Credit Agreement) and any fees, costs, and expenses that are reimbursable by any Debtor pursuant to the Credit Agreement.

44. "*Cure*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

45. "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy") covering any of the Debtors' current or former directors', managers', officers', and/or employees' liability and all agreements, documents, or instruments relating thereto.

46. "*Debtor Release*" means the releases given on behalf of the Debtors and their Estates as set forth in Article IX of the Plan.

47. "*Debtors*" means Dart Industries Inc.; Deerfield Land Corporation; Premiere Products, Inc.; Tupperware Home Parties LLC; Tupperware International Holdings Corporation; Tupperware Products, Inc.; Tupperware U.S., Inc.; and Tupperware Brands Latin America Holdings, L.L.C.

48. "*Disbursing Agent*" means, as applicable, the Debtors, the Liquidating Trustee, or the Entity(ies) selected by the Liquidating Trustee, which Entity(ies) may include the Notice and Claims Agent, as applicable, to make or facilitate distributions pursuant to the Plan.

49. "*Disclosure Statement*" means the disclosure statement in respect of the Plan, including all exhibits and schedules thereto, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable Law.

50. "*Disputed*" means, as to a Claim or an Interest, a Claim or an Interest (or portion thereof): (a) that is not Allowed; (b) as to which a dispute is being adjudicated by a court of competent jurisdiction in accordance with non-bankruptcy law, or (c) that is Filed in the Bankruptcy Court and not withdrawn, as to which a timely objection or request for estimation has been Filed.

51. "*Distributable Proceeds*" means all Cash of the Debtors, on or after the Effective Date, after giving effect to the funding of the Administrative / Priority Claims Reserve, the Professional Fee Reserve Account, and Statutory Fees, including, as determined by the Debtors or Liquidating Trustee, any Cash returned to the Debtors' Estates, after the irrevocable payment in full of all Allowed Professional Fee Claims and Allowed Administrative Claims.

52.    "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtors or Liquidating Trust, on or after the Effective Date, with the first such date occurring on the Effective Date or as soon as reasonably practicable thereafter, upon which the Disbursing Agent shall make distributions to Holders of Allowed Claims entitled to receive distributions under the Plan.

53.    "*Distribution Record Date*" means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the first day of the Combined Hearing or such other date as the Debtors or Liquidating Trustee determine.

54.    "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) all conditions precedent to the occurrence of the Effective Date set forth in Article VIII of the Plan have been satisfied or waived in accordance with Article VIII.B of the Plan and (b) the Debtors declare the Plan effective.  Without limiting the foregoing, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

55.    "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

56.    "*Estate*" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of such Debtor's Chapter 11 Case.

57.    "*Exculpated Parties*" means collectively, and in each case in its capacity as such, (a) the Debtors; (b) the directors, managers, and officers of the Debtors who served in such capacity between the Petition Date and the Effective Date; (c) the Committee and its members, in their capacity as members of the Committee; and (d) the Professionals retained by the Debtors and the Committee in the Chapter 11 Cases.

58.    "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

59.    "*Federal Judgment Rate*" means the federal judgment rate in effect pursuant to 28 U.S.C. § 1961 as of the Petition Date, compounded annually.

60.    "*File*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.  "Filed" and "Filing" shall have correlative meanings.

61.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the relevant subject matter, that has not been reversed, stayed, modified, or amended and as to which the time to appeal, seek certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken; or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing has been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided that*, for the avoidance of any doubt, an order or judgment that is subject to

8

appeal shall not constitute a Final Order even if a stay of such order or judgment pending resolution of the appeal has not been obtained; *provided*, *further*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order will not preclude such order from being a Final Order.

62.    "*First Day Pleadings*" means the first day pleadings that the Debtors Filed with the Bankruptcy Court upon the commencement of the Chapter 11 Cases.

63.    "*General Unsecured Claim*" means any Claim against any of the Debtors that is not (a) an Administrative Claim, (b) a Professional Fee Claim, (c) a Priority Tax Claim, (d) an Other Priority Claim, (e) a Secured Tax Claim, (f) an Other Secured Claim, (g) a Credit Agreement Claim, (h) an Intercompany Claim, (i) an Intercompany Interest, (j) an Interest, or (k) a Section 510(b) Claim.

64.    "*Governing Body*" means, in each case in its capacity as such, the board of directors, board of managers, manager, managing member, general partner, investment committee, special committee, or such similar governing body of any of the Debtors.

65.    "*Governmental Bar Date*" means the date by which Proofs of Claim must be Filed with respect to Claims held by Governmental Units pursuant to the Bar Date Order.

66.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

67.    "*Holder*" means an Entity holding a Claim against or an Interest in any Debtor.

68.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims of Interests that is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

69.    "*Intercompany Claim*" means any Claim held by a Debtor or Non-Debtor against another Debtor, other than Claim that is an Acquired Asset.

70.    "*Intercompany Interest*" means an Interest in one Debtor held by another Debtor or Non-Debtor, other than an Interest that is an Acquired Asset.

71.    "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor and any other rights, options, warrants, restricted stock awards, performance share awards, performance share units, stock appreciation rights, phantom stock rights, stock-settled restricted stock units, cash-settled restricted stock units, or other Securities or agreements to acquire the common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (whether or not arising under or in connection with any employment agreement, separation agreement, or employee incentive plan or program of a Debtor as of the Petition Date and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or similar Security and regardless of whether such interests are held directly or indirectly).

72. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

73. "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

74. "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

75. "*Liquidating Trust*" means the liquidating trust established on the Effective Date pursuant to Article IV of the Plan and the Liquidating Trust Agreement.

76. "*Liquidating Trust Agreement*" means the agreement, filed with the Plan Supplement and executed on the Effective Date, that establishes and governs the Liquidating Trust, which agreement shall be acceptable to the Debtors, the Ad Hoc Group (after consultation with the Credit Agreement Agent), and the Committee.

77. "*Liquidating Trust Assets*" means ~~$2.0 million (or such other~~(i) an amount ~~as may~~of Cash to be agreed between the Debtors, the Committee, and the Ad Hoc Group, after consultation with the Credit Agreement Agent~~)~~ and (ii) the remaining Purchase Agreement Excluded Assets.

78. *"Liquidating Trust Beneficiaries*" means all Holders of Allowed General Unsecured Claims and the Term Loan Lenders.

79. "*Liquidating Trustee*" means the trustee identified in the Plan Supplement with the consent of the Debtors, Committee and Ad Hoc Group (after consultation with the Credit Agreement Agent), as trustee of, and to administer, the Liquidating Trust, and take such other actions as may be authorized under the Liquidating Trust Agreement, along with any successor thereto.

80. "*Liquidation Proceeds Allocation*" means the allocation of proceeds of the liquidation of the Liquidating Trust Assets as follows: (a) first, to pay or reserve for fees and expenses of the Liquidating Trust, including all fees and expenses related to the wind down and liquidation of the Debtors' Estates; (b) second, $1 million in aggregate proceeds shall be allocated to holders of allowed General Unsecured Claims (except for deficiency claims and any other General Unsecured Claims of the Term Loan Lenders or the Purchaser) against the Debtors on a *pro rata* basis; and (c) third, to the extent there are any proceeds in excess of $1 million, such proceeds shall be allocated among the Term Loan Lenders and the General Unsecured Creditors on a pro rata basis, with 90% of such proceeds allocated *pro rata* to the Term Loan Lenders and 10% allocated to the remaining allowed claims of General Unsecured Creditors on a *pro rata* basis until the unsecured claims are paid in full, and then all proceeds shall be allocated solely to the Term Loan Lenders. Upon dissolution of the Liquidating Trust, any remaining Liquidating Trust Assets shall be distributed in accordance with the Liquidation Proceeds Allocation.

81. "*Non-Debtor*" means any direct or indirect subsidiary of Tupperware that is not a Debtor.

82. "*Notice and Claims Agent*" means Epiq Corporate Restructuring, LLC in its capacity as noticing, claims, and solicitation agent for the Debtors.

83. "*Other Priority Claim*" means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than:  (a) an Administrative Claim; or (b) a Priority Tax Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases; *provided* that any Other Priority Claim that is an Assumed Liability under the Purchase Agreement shall be satisfied solely under the applicable Purchase Agreement and shall not be an obligation of the Debtors.

84. "*Other Secured Claim*" means any Secured Claim other than a Credit Agreement Claim.

85. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

86. "*Petition Date*" means September 17 or 18, 2024, as applicable.

87. "*Plan Distribution*" means a payment or distribution to a Holder of an Allowed Claim, Allowed Interest, or other Entity under and in accordance with the Plan.

88. "*Plan Objection Deadline*" means the date fixed by the Bankruptcy Court for filing objections to the adequacy of the Disclosure Statement and Confirmation of the Plan.

89. "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan that will be Filed by the Debtors with the Bankruptcy Court, including the following:  (a) the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) the Schedule of Retained Causes of Action; (c) the Liquidating Trust Agreement; and (d) any additional documents Filed by the Debtors with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.  The Debtors shall have the right to alter, amend, modify, or supplement the documents contained in the Plan Supplement through the Effective Date.

90. "*Prepetition Agents*" means the Bridge Agent and the Credit Agreement Agent.

91. "*Prepetition Secured Debt Documents*" means the Credit Agreement and Bridge Credit Agreement, and, in each case, all other agreements, documents, and instruments executed or delivered in connection therewith or related thereto, including any guaranty agreements, pledge and collateral agreements, intercreditor agreements, and other security agreements, each as may be amended, restated, amended and restated, supplemented, waived, and/or otherwise modified from time to time.

92. "*Priority Claims*" means, collectively, Priority Non-Tax Claims and Other Priority Claims.

93.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

94.    "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

95.    "*Professional*" means an Entity:  (a) employed in the Chapter 11 Cases pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

96.    "*Professional Fee Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred by such Professional through and including the Confirmation Date under sections 330, 331, 363, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.  For the avoidance of doubt, any Claim of the Prepetition Agents for reimbursement of their professional fees and expenses shall not be considered a Professional Fee Claim.

97.    "*Professional Fee Reserve Account*" means an account funded by the Debtors with Cash on or before the Effective Date to satisfy unpaid Professional Fee Claims.

98.    "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

99.    "*Proof of Interest*" means a proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

100.    "*Purchase Agreement*" means the Asset Purchase Agreement dated as of November 22, 2024, by and among Wells Fargo Bank, National Association as the Administrative Agreement; Party Productions Holdings LLC, as Parent; Party Products LLC, as Purchaser; and Tupperware Brands Corporation and its Subsidiaries, as Seller, attached to the Sale Order.

101.    "*Purchase Agreement Excluded Assets*" means the "Excluded Assets" as defined in the Purchase Agreement.

102.    "*Purchased Claims*" has the meaning set forth in the Purchase Agreement.

103.    "*Purchaser*" means Party Products LLC.

104.   "*Reinstate*" means, with respect to a Claim or Interest, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.  "*Reinstated*" and "*Reinstatement*" shall have correlative meanings.

105.   "*Related Party*" means, collectively, with respect to an Entity, such Entity's current and former directors, managers, officers, shareholders, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of law or otherwise), subsidiaries, current, former, and future associated entities, managed or advised entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, fiduciaries, trustees, employees, agents (including any Disbursing Agent), advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other representatives, and other professionals, representatives, advisors, predecessors, successors, and assigns, each solely in their capacities as such (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), and the respective heirs, executors, estates, servants, and nominees of the foregoing.

106.   "*Released Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b)  each Holder of Credit Agreement Claims and each Holder of Bridge Credit Agreement Claims; (c) the Prepetition Agents; (d) the Purchaser; (e) the Committee and members of the Committee in their capacity as members of the Committee; (f) the Liquidating Trustee; (g) each Holder of Claims who opt in to granting the releases set forth herein; (h) each Holder of Interests who opt in to granting the releases set forth herein; (i) each current and former Affiliate of each Entity in the foregoing clause (a) through the following clause (j); and (j) each Related Party of each Entity in the foregoing clause (a) through this clause (j).

107.   "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b)  each Holder of Credit Agreement Claims and each Holder of Bridge Credit Agreement Claims; (c) the Prepetition Agents; (d) the Purchaser; (e) the Committee and members of the Committee in their capacity as members of the Committee; (f) the Liquidating Trustee; (g) each Holder of Claims who opt in to granting the releases set forth herein; (h) each Holder of Interests who opt in to granting the releases set forth herein; (i) each current and former Affiliate of each Entity in the foregoing clause (a) through the following clause (j); and (j) each Related Party of each Entity in the foregoing clause (a) through this clause (j), only to the extent such Holder of Claims or Interests in the foregoing clause (g) and (i) is legally entitled to bind such Affiliate or Related Party.

108.   "*Sale Order*" means the *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing the Sale of Acquired Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (III) Authorizing and Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection Therewith, and (IV) Granting Related Relief* [Docket No. 383] (as may be modified, amended, or supplemented by further Final Order), entered by the Bankruptcy Court on November 24, 2024.

109.   "*Sale Transaction*" means the sale of all or some of the Debtors' assets to the Purchaser or its affiliates, as approved by the Sale Order.

110.   "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means that certain schedule Filed with the Plan Supplement of certain Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan and in accordance with the applicable Purchase Agreement, as such schedule may be amended, modified, or supplemented from time to time by the Debtors, which, including any modifications thereto, shall be acceptable to the Purchaser.

111.   "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not Acquired Assets, Purchased Claims, or Acquired Avoidance Actions and not otherwise released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time.

112.   "*Schedules*" means, collectively, the schedules of assets and liabilities and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, including any amendments or supplements thereto.

113.   "*Section 510(b) Claim*" means any Claim against a Debtor subject to subordination under section 510(b) of the Bankruptcy Code, whether by operation of law or contract.

114.   "*Secured*" means a Claim that is:  (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable Law or by reason of an order of the Bankruptcy Court, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Debtors' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan, or separate order of the Bankruptcy Court, as a secured claim.

115.   "*Secured Tax Claim*" means any Secured Claim that, absent its Secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties; *provided* that any Secured Claim that would otherwise be a Secured Tax Claim that is an Assumed Liability under the Purchase Agreement shall be satisfied solely under such Purchase Agreement and shall not be an obligation of the Debtors, and shall not be considered a Secured Tax Claim.

116.   "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder, or any similar federal, state, or local Law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

117.   "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act.

118.    "*Solicitation Materials*" means all materials provided in connection with the solicitation of votes on the Plan pursuant to sections 1125 and 1126 of the Bankruptcy Code.

119.    "*Statutory Fee*" means all fees due and payable pursuant to section 1930 of Title 28 of the United States Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the United States Code, to the extent applicable.

120.    "*Term Loan Lenders*" means the lenders under the Credit Agreement

121.    "*Third-Party Release*" means the release set forth in Article IX.B of the Plan.

122.    "*Tupperware*" means Debtor Tupperware Brands Corporation, a public company incorporated under the Laws of State of Delaware.

123.    "*U.S. Trustee*" means the United States Trustee for the District of Delaware.

124.    "*Unexpired Lease*" means an unexpired lease of non-residential, real property to which one or more of the Debtors are a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

125.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

### B.    Rules of Interpretation

For the purposes of this Plan, and except as otherwise provided herein, the following rules of interpretation shall apply:  (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (2) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (3) any reference in this Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified or supplemented pursuant to this Plan or Confirmation Order; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) all references in this Plan to "Articles" and "Exhibits" are references to the articles and exhibits of or to this Plan unless otherwise noted; (6) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (7) the words "includes" or "including" are not limiting; (8) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (9) unless otherwise specified, references in this Plan to "Docket No." refer to entries on the docket of the Chapter 11 Cases; (10) subject to the provisions of any contract, certificate of incorporation, bylaws, or similar constituent document, instrument, release, or other agreement or document entered into or delivered in connection with this Plan, the rights and obligations arising under this Plan will be governed by, construed, and enforced in accordance with federal law, including the Bankruptcy Code and the Bankruptcy Rules, and to the extent applicable, the laws of the State of Delaware; (11) the rules of construction set forth in section 102 of the

Bankruptcy Code will apply; and (12) all references in this Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided. Any immaterial effectuating provisions of the Plan may be interpreted by the Debtors or Liquidating Trustee (as applicable) in such a manner that is consistent with the overall purpose and intent of this Plan all without further notice to or action, order, or approval, of the Bankruptcy Court or any other Entity.

### C.      Computation of Time

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply. Any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter unless otherwise specified herein.

### D.      Controlling Document

In the event of an inconsistency between this Plan and the Disclosure Statement, the terms of this Plan shall control in all respects. In the event of an inconsistency between this Plan and the Plan Supplement, the Plan shall control. In the event of an inconsistency between this Plan or the Plan Supplement and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including Professional Fee Claims) and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

### A.      Administrative Claims

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Liquidating Trustee (as applicable), each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for Statutory Fees) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim becomes due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (3) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except for Professional Fee Claims, all applications seeking allowance and payment of Administrative Claims must be Filed and served on the Debtors or the Liquidating Trustee (as applicable) and their counsel no later than the Administrative Claim Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the occurrence of the Effective Date. The burden of proof for the allowance of Administrative Claims remains on the Holder of the Administrative Claim.

Objections to such applications must be Filed and served on the requesting party by the Administrative Claim Objection Bar Date. After notice and a hearing, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, a Final Order.

**B.      Professional Fee Claims**

1.      Final Fee Applications

All requests for payment of Professional Fee Claims by Professionals for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date. Objections to Professional Fee Claims must be Filed and served no later than twenty-one (21) days after the Filing of the Professional Fee Claim. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims of Professionals after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. Unless otherwise agreed to by the Debtors or Liquidating Trustee (as applicable) and the Professional, the Liquidating Trustee shall pay Professional Fee Claims that are Allowed by Final Order following the Effective Date in Cash from the Professional Fee Reserve Account within five (5) Business Days of the entry of such Final Order.

2.      Professional Fee Reserve Amount

Unless otherwise agreed to prior to the Effective Date by the Debtors or Liquidating Trustee (as applicable) and the Professional, to receive payment for (a) unbilled fees and expenses incurred through the Confirmation Date and (b) unbilled fees and expenses anticipated to be incurred post-Confirmation Date in connection with the preparation of the Professionals' Professional Fee Claims, the Professionals shall estimate such amounts and shall deliver such estimates to the Debtors and their counsel no later than three (3) Business Days prior to the Effective Date; *provided* that such estimates shall not be binding with respect to the fees and expenses of such Professional. If a Professional does not provide an estimate of its unbilled fees and expenses, the Debtors may estimate such unbilled fees and expenses of the Professional. The total amount so estimated hereunder as of the Effective Date shall comprise the "Professional Fee Reserve Amount." The Professionals may submit invoices for their post-Confirmation Date services, including with respect to the preparation of Professional Fee Claims, to the Liquidating Trustee in the ordinary course of business; *provided*, *however*, that any such invoices related to Professional Fee Claims shall be submitted to the Liquidating Trustee no later than thirty (30) days following entry of a Final Order Allowing such Professional Fee Claims.

3.      Professional Fee Reserve

On or before the Effective Date, the Debtors shall fund the Professional Fee Reserve with Cash equal to the Professional Fee Reserve Amount, which may be held in the trust accounts of one or more counsel to the Debtors. If some or all of the Professional Fee Reserve Amount is not held in the trust account of one more counsel to the Debtors, the Liquidating Trustee is

charged with administering the Professional Fee Reserve after the Effective Date and shall open a new and segregated account at an FDIC-insured institution to effectuate this purpose.

The Professional Fee Reserve and amounts funded therein are, and shall continue to be, maintained in trust solely for each Professional separately on a per-Professional basis. Such funds shall not be considered property of the Debtors, their Estates, or the Liquidating Trust (as applicable).

### C.    Priority Tax Claims

On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent a Holder of an Allowed Priority Tax Claim and the Debtors or the Liquidating Trustee (as applicable) agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Priority Tax Claim, each Holder thereof will be paid in full in Cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

### D.    U.S. Trustee Statutory Fees

All Statutory Fees that are due and owing as of the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Liquidating Trustee shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. After the Effective Date, the Liquidating Trustee shall pay any and all applicable Statutory Fees in full in Cash when due and payable. The Liquidating Trustee shall remain obligated to pay any applicable Statutory Fees until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be treated as providing any release under the Plan. Statutory Fees are Allowed. The U.S. Trustee shall not be required to file any proof of claim or any request for administrative expense for Statutory Fees. The provisions of this paragraph shall control notwithstanding any other provision(s) in the Plan to the contrary.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.    Classification of Claims and Interests

The Plan constitutes a separate chapter 11 plan for each Debtor. Except for the Claims addressed in Article II in the Plan (or as otherwise set forth herein), all Claims and Interests are placed in Classes for each of the applicable Debtors. Unless otherwise specified, the Plan consolidates Claims against all Debtors solely for purposes of voting, Confirmation, and distribution but not for any other purpose. The Debtors reserve the right to seek substantive consolidation of the Debtors in connection with Confirmation, but substantive consolidation shall not affect the legal and organizational structure of the post-Effective Date Debtors or their separate corporate existences and will not change the distributions to Holders of Allowed Claims compared to what is proposed in the Plan.

Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the

Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class.  A Claim also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been otherwise paid, released, or satisfied at any time.

The classification of Claims against and Interests in the Debtors pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Presumed to Reject) |
| Class 6 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Presumed to Reject) |
| Class 7 | Interests in Tupperware | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

### B.    Treatment of Claims and Interests

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under this Plan the treatment described below in full and final satisfaction, settlement, and release of and in exchange for such Holder's Allowed Claim or Allowed Interest, as applicable, except to the extent different treatment is agreed to in writing by the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date (or, if payment is not then due, in accordance with such Claim's or Interest's terms in the ordinary course of business).

1.    Class 1 –Other Secured Claims

(a)    *Classification*:  Class 1 consists of all Other Secured Claims against the Debtors.

(b)    *Treatment*:  Each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor or Liquidating Trustee (as applicable), either:

(i) payment in full in Cash; (ii) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (iii) reinstatement of such Claim; or (iv) such other treatment rendering such Claim Unimpaired.

        (c)    *Voting*:  Class 1 is Unimpaired, and Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Other Secured Claims are not entitled to vote to accept or reject the Plan.

        2.    <u>Class 2 – Other Priority Claims</u>

        (a)    *Classification*:  Class 2 consists of all Other Priority Claims against the Debtors.

        (b)    *Treatment*:  Each Holder of an Allowed Other Priority Claim shall receive: (i) payment in full in Cash; or (ii) such other treatment rendering such Claim Unimpaired.

        (c)    *Voting*:  Class 2 is Unimpaired, and Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 2 Other Priority Claims are not entitled to vote to accept or reject the Plan.

        3.    <u>Class 3 – Credit Agreement Claims</u>

        (a)    *Classification*:  Class 3 consists of all Credit Agreement Claims.

        (b)    *Treatment*:  The Credit Agreement Claims are allowed in the amount of [$732,032,675].  Each Holder of an Allowed Credit Agreement Claim shall receive, in full and final satisfaction of such Allowed Credit Agreement Claim its Pro Rata share of the Distributable Proceeds, including proceeds of the Purchase Agreement Excluded Assets in accordance with the Liquidation Proceeds Allocation.

        (c)    *Voting*:  Class 3 is Impaired under the Plan.  Holders of Class 3 Credit Agreement Claims are entitled to vote to accept or reject the Plan.

        4.    <u>Class 4 – General Unsecured Claims</u>

        (a)    *Classification*:  Class 4 consists of all General Unsecured Claims against the Debtors.

        (b)    *Treatment*:  Each Holder of an Allowed General Unsecured Claim Holder shall receive its Pro Rata share of the right to recovery from the Liquidating Trust in accordance with the Liquidation Proceeds Allocation.

        (c)    *Voting*:  Class 4 is Impaired under the Plan, Holders of Class 4 General Unsecured Claims are entitled to vote to accept or reject the Plan.

5.      <u>Class 5 – Intercompany Claims</u>

(a)      *Classification:*  Class 5 consists of all Intercompany Claims.

(b)      *Treatment:*  Each Allowed Intercompany Claim shall be, at the option of the applicable Debtor or the Liquidating Trustee (as applicable), either*:*

(i)      Reinstated; or

(ii)      set off, settled, distributed, addressed, converted to equity, contributed, cancelled, or released, in each case.

(c)      *Voting:*  Class 5 is either Unimpaired or Impaired under the Plan. Holders of Allowed Intercompany Claims in Class 5 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 6 Intercompany Claims are not entitled to vote to accept or reject the Plan.

6.      <u>Class 6 – Intercompany Interests</u>

(a)      *Classification:*  Class 6 consists of all Intercompany Interests.

(b)      *Treatment:*  Each Allowed Intercompany Interest shall be, at the option of the applicable Debtor or the Liquidating Trustee (as applicable), either:

(i)      Reinstated; or

(ii)      set off, settled, distributed, addressed, converted to equity, contributed, cancelled, or released, in each case.

(c)      *Voting:*  Class 6 is either Unimpaired or Impaired under the Plan. Holders of Allowed Intercompany Interests in Class 6 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 6 Intercompany Interests are not entitled to vote to accept or reject the Plan.

7.      <u>Class 7 – Interests in Tupperware</u>

(a)      *Classification:*  Class 7 consists of all Interests in Tupperware.

(b)      *Treatment:*  Holders of Interests in Tupperware shall not receive any distribution on account of such Interests in Tupperware, which will be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect.

(c)      *Voting:*  Class 7 is Impaired under the Plan.  Holders of Class 7 Interests in Tupperware are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Class 7 Interests in Tupperware are not entitled to vote to accept or reject the Plan.

8.    <u>Class 8 – Section 510(b) Claims</u>

(a)    *Classification:*  Class 8 consists of all Section 510(b) Claims.

(b)    *Treatment:*  Holders of Allowed Section 510(b) Claims shall not receive any distribution on account of such Claims, which will be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect.

(c)    *Voting:*  Class 8 is Impaired under the Plan.  Holders of Claims in Class 8 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders of Class 8 Section 510(c) Claims are not entitled to vote to accept or reject the Plan.

## C.    **Special Provisions Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Liquidating Trustee's rights with respect to any Claims, including all legal and equitable defenses to or setoffs or recoupments against any Claims.

## D.    **Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Combined Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## E.    **Controversy Concerning Impairment**

If a controversy arises as to whether any Claim or any Class of Claims or Interests is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Combined Hearing.

## F.    **Subordination of Claims**

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, contract, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Liquidating Trustee (as applicable) reserves the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## G.    **Reservation of Rights Regarding Claims**

Except as otherwise provided in the Plan or in a Final Order of the Bankruptcy Court, nothing will affect the Debtors' or the Liquidating Trustee's respective rights and defenses,

whether legal or equitable, with respect to any Claim, including, without limitation, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

**H.     Postpetition Interest on Claims**

Except as required by applicable bankruptcy law or otherwise expressly provided in the Plan, postpetition interest, penalties, or other fees will not accrue or be payable on account of any Claim.

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.     Sources of Consideration for Plan Distributions**

Subject in all respects to the provisions of the Plan concerning the Professional Fee Reserve, the Debtors or the Liquidating Trustee (as applicable) shall fund distributions under the Plan with Cash on hand on the Effective Date and all other Liquidating Trust Assets.

**B.     Vesting of Assets**

On the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all Claims, Liens, encumbrances, charges, and other interests except as otherwise expressly provided in the Plan.

**C.     Liquidating Trust**

1.     Establishment of the Liquidating Trust

On the Effective Date, the Liquidating Trust will be established pursuant to the Liquidating Trust Agreement.   Upon establishment of the Liquidating Trust, title to the Liquidating Trust Assets shall be deemed transferred to the Liquidating Trust without any further action of the Debtors or any managers, employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtors.

2.     Transfer of the Liquidating Trust Assets

Pursuant to section 1141 of the Bankruptcy Code, all property transferred to the Liquidating Trust shall be made free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as may be otherwise provided for in the Plan.   Upon completion of the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors will have no further interest in, or with respect to, the Liquidating Trust Assets or the Liquidating Trust.   For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust in accordance with the terms herein as a transfer to the Liquidating Trust Beneficiaries, followed by a transfer of such assets by such

Liquidating Trust Beneficiaries to the Liquidating Trust, and the Liquidating Trust Beneficiaries will be treated as the grantors and owners thereof.

### 3.    Liquidating Trust Agreement

On the Effective Date, the Debtors shall execute the Liquidating Trust Agreement in substantially the same form as set forth in the Plan Supplement.  Any nonmaterial modifications to the Liquidating Trust Agreement made by the Debtors or the Liquidating Trustee (as applicable) will be automatically ratified if made in accordance with the terms of the Liquidating Trust Agreement.  The Liquidating Trust Agreement will contain provisions permitting the amendment or modification of the Liquidating Trust Agreement necessary to implement the provisions of the Plan.

### 4.    Purpose of the Liquidating Trust

The Liquidating Trust shall be established for, among other purposes, the purpose of (a) receiving and holding the Liquidating Trust Assets; (b) administering, disputing, objecting to, compromising, or otherwise resolving all Claims and Interests; (c) making distributions in accordance with the Plan and the Liquidating Trust Agreement; (d) maximizing recoveries for the benefit of the Liquidating Trust Beneficiaries; ~~and~~ (e) performing all actions reasonably requested by the Purchaser to complete all of the Debtors' outstanding obligations under the Purchase Agreement as successor to the Debtors; and (f) commencing and pursuing the Retained Causes of Action and managing and administering any proceeds thereof, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d).  The Liquidating Trust is intended to qualify as a "liquidating trust" under Treas. Reg. § 301.7701-4(d) and a grantor trust under section 671 of the Tax Code and, to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust Beneficiaries treated as grantors and owners of the Liquidating Trust.  To the extent permitted by applicable law, all parties, including the Liquidating Trustee and any Liquidating Trust Beneficiaries, shall report consistently with the foregoing for all applicable tax reporting purposes (including consistent reporting for valuation purposes).

### 5.    Liquidating Trustee

#### (a)    *Appointment of the Liquidating Trustee*

The Liquidating Trustee will be disclosed in the Plan Supplement.  The Liquidating Trustee must be acceptable to the Debtors, the Committee, and the Ad Hoc Group.  Upon the occurrence of the Effective Date, the Liquidating Trustee shall also be deemed appointed to serve as the trustee and administrator of the Liquidating Trust established pursuant to the Plan and the Liquidating Trust Agreement.  The Liquidating Trustee, subject to the terms and conditions of the Plan, the Plan Supplement, the Confirmation Order, and the Liquidating Trust Agreement, shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The

Liquidating Trustee shall have and perform all of the duties, responsibilities, rights, and obligations set forth in the Plan and the Liquidating Trust Agreement, as applicable.

(b)    *Liquidating Trustee as Representative of the Estates*

From and after the Effective Date, the Liquidating Trustee shall act as the exclusive representative of the Estates for all purposes and as the sole officer and director of each of the post-Effective Date Debtors.  Any successor Liquidating Trustee appointed pursuant to the Liquidating Trust Agreement shall be bound by and comply with the terms of the Plan, the Confirmation Order, and the Liquidating Trust Agreement.

(c)    *Responsibilities and Authority of the Liquidating Trustee*

The responsibilities and authority of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement, and shall include, among others, the following rights and responsibilities, which shall be the exclusive rights and responsibilities of the Liquidating Trustee:  (i) preserving and liquidating the Liquidating Trust Assets; (ii) administering and paying taxes, including, among other things, (1) preparing and filing appropriate tax returns for the Debtors and Liquidating Trust and (2) representing the interest and account of the Debtors and Liquidating Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding, or audit; (iii) retaining and paying, without the need for retention or fee applications, professionals in connection with the Liquidating Trustee's performance of its duties under the Plan and the Liquidating Trust Agreement; (iv) distributing information statements as required for U.S. federal income tax and other applicable tax purposes; (v) preparing and filing all monthly operating reports due after the Effective Date and all post-confirmation reports as required by the U.S. Trustee; (vi) Filing an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Cases; (vii) winding down and liquidating the Debtors' Estates; (viii) making distributions to Professionals for Allowed Professional Fee Claims, including from the Professional Fee Reserve; (ix) making distributions to the Liquidating Trust Beneficiaries in accordance with the Plan and the Liquidating Trust Agreement; and (x) such other responsibilities as may be vested in the Liquidating Trustee pursuant to the Plan, the Plan Supplement, the Liquidating Trust Agreement, or an order of the Bankruptcy Court (including, without limitation, the Confirmation Order), or as may be necessary and proper to carry out the provisions of the Plan.

(d)    *Powers of the Liquidating Trustee*

The Liquidating Trustee shall have the power and authority to perform the acts described in the Liquidating Trust Agreement (subject to the approval of the Court, where applicable), in addition to any powers granted by law or conferred to it by any other provision of the Plan, including without limitation any set forth herein, *provided*, however, that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Liquidating Trustee to act as specifically authorized by any other provision of the Plan, the Liquidating Trust Agreement, and/or any applicable law, and to act in such manner as the Liquidating Trustee may deem necessary or appropriate or to take any act deemed appropriate by the Liquidating Trustee to discharge all obligations assumed by the Liquidating Trustee or

provided herein and to conserve and protect the Liquidating Trust or to confer on the creditors the benefits intended to be conferred upon them by the Plan.

Subject to the limitations set forth of the Liquidating Trust Agreement, the powers of the Liquidating Trustee shall be set forth in the Liquidating Trust Agreement, and shall include, among others, the following: (i) the power to invest funds of the Liquidating Trust, and withdraw, make distributions, and pay taxes and other obligations owed by the Liquidating Trust from such funds in accordance with the Plan and the Liquidating Trust Agreement; (ii) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals, reasonably acceptable to the Ad Hoc Group, to assist the Liquidating Trustee with respect to its responsibilities; (iii) the power to pursue, prosecute, resolve, compromise, and settle any Retained Causes of Action, without notice to or approval of the Bankruptcy Court; (iv) the power to object to Claims, including, without limitation, the power to seek subordination or recharacterization of Claims by objection, motion, or adversary proceeding, as applicable; (v) the power and authority to wind-down, liquidate, or otherwise dissolve the post-Effective Date Debtors and their wholly-owned subsidiaries, without the necessity for any other or further actions to be taken by or on behalf of such dissolving Entity or its shareholder or any payments to be made in connection therewith, other than the filing of a certificate of dissolution with the appropriate governmental authorities, pursuant to Section 303 of the Delaware General Corporation Law codified at title 8 of the Delaware Code or other applicable state or foreign law; and (vi) such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to the Plan, the Plan Supplement, the Liquidating Trust Agreement, or by an order of the Bankruptcy Court (including, without limitation, the Confirmation Order), or as may be necessary and proper to carry out the provisions of the Plan.

(e)    *Compensation of the Liquidating Trustee*

The Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement.  The Liquidating Trustee shall fully comply with the terms, conditions and rights set forth in the Plan, the Plan Supplement, the Confirmation Order, and the Liquidating Trust Agreement.  The Liquidating Trustee (and any professionals retained by the Liquidating Trustee) shall not be required to File a fee application to receive compensation.

(f)    *Retention and Payment of Professionals*

The Liquidating Trustee shall have the right, without prior Bankruptcy Court order or approval, to retain attorneys, accountants, and other professionals and agents, reasonably acceptable to the Ad Hoc Group, to assist and advise the Liquidating Trustee in the performance of his, her, or its duties and to compensate and reimburse expenses of such professionals in accordance with the Liquidating Trust Agreement.  For the avoidance of doubt, the Liquidating Trustee can retain any professionals currently retained by the Committee.

6.    Termination of the Liquidating Trust

The Liquidating Trust shall be dissolved upon the earlier of (a) the distribution of all of the Liquidating Trust Assets to the Liquidating Trust Beneficiaries; and (b) the fifth anniversary of the creation of the Liquidating Trust; *provided* that, if warranted by the facts and

circumstances involved in resolving or monetizing any Liquidating Trust Assets, upon application to, and if approved by, the Bankruptcy Court after notice and an opportunity for hearing, and upon a finding that such extension is necessary or appropriate for purposes of resolving or monetizing such Liquidating Trust Assets and distributing the proceeds to Liquidating Trust Beneficiaries, the term of the Liquidating Trust may be extended by the Liquidating Trustee for a specified term in accordance with applicable tax laws and regulations. This application must be filed with the Bankruptcy Court no earlier than six (6) months before the termination date of the Liquidating Trust.

### D.    U.S. Federal Income Tax Treatment and Reporting of Liquidating Trust

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Debtors expect to treat the Liquidating Trust as a "liquidating trust" under section 301.7701-4(d) of the Treasury Regulations and a grantor trust under section 671 of the Tax Code, and the trustee of any Liquidating Trust will take a position on the Liquidating Trust's tax return accordingly.  For U.S. federal income tax purposes, the transfer of assets to the Liquidating Trust will be deemed to occur as (a) a first-step transfer of the Liquidating Trust Assets to the Holders of the applicable Claims, and (b) a second-step transfer by such Holders to the Liquidating Trust.

No request for a ruling from the IRS will be sought on the classification of the Liquidating Trust.  Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust.  If the IRS were to successfully challenge the classification of the Liquidating Trust as a grantor trust, the federal income tax consequences to the Liquidating Trust and the Liquidating Trust beneficiaries could vary from those discussed in the Plan (including the potential for an entity-level tax).  For example, the IRS could characterize the Liquidating Trust as a so-called "complex trust" subject to a separate entity-level tax on its earnings, except to the extent that such earnings are distributed during the taxable year.

As soon as possible after the transfer of the Liquidating Trust Assets to the Liquidating Trust, the trustee(s) of the Liquidating Trust shall make a good faith valuation of the Liquidating Trust Assets.  This valuation will be made available from time to time, as relevant for tax reporting purposes.  Each of the Debtors, the trustee(s) of the Liquidating Trust, and the holders of Claims receiving interests in the Liquidating Trust shall take consistent positions with respect to the valuation of the Liquidating Trust Assets, and such valuations shall be utilized for all U.S. federal income tax purposes.

Allocations of taxable income of the Liquidating Trust among the Liquidating Trust beneficiaries shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value) to the Liquidating Trust beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust.  Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidating Trust Assets.  The tax book value of the Liquidating Trust Assets shall equal their fair market value on the date of the transfer of the Liquidating

Trust Assets to the Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the Tax Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

The Liquidating Trust shall in no event be dissolved later than five (5) years from the creation of such Liquidating Trust unless the Bankruptcy Court, upon motion within the six (6) month period prior to the fifth (5th) anniversary (or within the six (6) month period prior to the end of an extension period), determines that a fixed period extension (not to exceed five (5) years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the trustee(s) of the Liquidating Trust that any further extension would not adversely affect the status of the trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

The Liquidating Trust will file annual information tax returns with the IRS as a grantor trust pursuant to section 1.671-4(a) of the Treasury Regulations that will include information concerning certain items relating to the holding or disposition (or deemed disposition) of the Liquidating Trust Assets (e.g., income, gain, loss, deduction and credit). Each Liquidating Trust Beneficiary holding a beneficial interest in the Liquidating Trust will receive a copy of the information returns and must report on its federal income tax return its share of all such items. The information provided by the Liquidating Trust will pertain to Liquidating Trust Beneficiaries who receive their interests in the Liquidating Trust in connection with the Plan.

With respect to any of the assets of the Liquidating Trust that are subject to potential disputed claims of ownership or uncertain distributions, or to the extent "liquidating trust" treatment is otherwise unavailable or not elected to be applied with respect to the Liquidating Trust, such assets may be subject to disputed ownership fund treatment under section 1.468B-9 of the Treasury Regulations, and if such treatment applies, any appropriate elections with respect to such treatment shall be made, and such treatment may also be applied to the extent possible for state and local tax purposes. Under such treatment, a separate federal income tax return shall be filed with the IRS for any such account. Any taxes (including with respect to interest, if any, earned in the account) imposed on such account shall be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes).

### E.    Preservation of Causes of Action

Except as otherwise provided in Article IX of the Plan or in any contract, instrument, release, or agreement entered into in connection with the Plan or the Sale Transaction, in accordance with section 1123(b) of the Bankruptcy Code, all Retained Causes of Action are preserved and transferred to the Liquidating Trust on the Effective Date. For the avoidance of doubt, the Purchased Claims and the Acquired Avoidance Actions are not Retained Causes of Action.

F.     **Corporate Action**

1.     Transfer of Assets and Assumption of Liabilities

On the Effective Date, (a) the Liquidating Trust Assets shall be automatically transferred to the Liquidating Trust; and (b) the Liquidating Trust shall assume all obligations of the Debtors under the Plan.

2.     Dissolution of the Debtors; Removal of Directors and Officers; Termination of Employees

On the Effective Date, and upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors shall be dissolved for all purposes unless the Liquidating Trustee determines that dissolution can have any adverse impact on the Liquidating Trust Assets; *provided*, *however*, that neither the Debtors nor any party released pursuant to Article IX of the Plan shall be responsible for any liabilities that may arise as a result of non-dissolution of the Debtors; *provided further*, *however*, that nothing in the Plan shall be construed as relieving the Debtors or the Liquidating Trustee (as applicable) of their duties to pay Statutory Fees to the U.S. Trustee as required by the Bankruptcy Code and applicable law until such time as a final decree is entered in the Chapter 11 Cases or the Chapter 11 Cases are dismissed or converted to cases under chapter 7 of the Bankruptcy Code.  The Liquidating Trustee shall submit with the appropriate Governmental Units a copy of the Confirmation Order, which Confirmation Order shall suffice for purposes of obtaining a Certificate of Dissolution from the applicable Secretary of State.

Without limiting the foregoing, on the Effective Date and upon the Debtors causing the Liquidating Trust Assets to be transferred to the Liquidating Trust, the Debtors shall have no further duties or responsibilities in connection with implementation of the Plan, and the directors and officers of the Debtors as of the Effective Date shall be deemed to have resigned and the employees of the Debtors as of the Effective Date shall be deemed to have been terminated. From and after the Effective Date, the Liquidating Trustee shall be authorized to act on behalf of the Estates, provided that the Liquidating Trustee shall have no duties other than as expressly set forth in the Plan and the Liquidating Trust Agreement (as applicable).

.

After the Effective Date, the Debtors will continue to exist solely with respect to (i) any applications for Professional Fee Claims or expense reimbursements for their Professionals, including preparing, objecting to, defending, and attending any hearing with respect to the same; (ii) any motions or other actions seeking enforcement or implementation of the provisions of the Plan or Confirmation Order; and (iii) any appeal pending as of the Effective Date or filed thereafter, the outcome of which could reasonably be expected to affect in any material way any cases, controversies, suits or disputes arising in connection with the Consummation, interpretation, implementation or enforcement of the Plan or the Confirmation Order.  Following the Effective Date, the Debtors' Professionals shall be entitled to reasonable compensation for services rendered in connection with the matters identified in clauses (i) through (iii).  Any such

payments made in connection therewith shall be made without any further notice to or action, order, or approval of the Bankruptcy Court.

### G. Books and Records

On the Effective Date, the Liquidating Trust shall: (a) take possession of all books, records, and files of the Debtors and the Estates that were not sold and transferred in connection with the Sale Transaction and that relate to the operation and business of the Liquidating Trust; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trustee determines, in accordance with the Liquidating Trust Agreement, that retention of same is no longer necessary or beneficial.

### H. Transfer of Privilege/No Waiver

On the Effective Date, the Debtors' evidentiary privileges relating to (i) the amount, validity, or allowability of any Disputed Claim; and (ii) assets transferred into the trust, shall be deemed transferred to the Liquidating Trustee and the Liquidating Trust. Notwithstanding anything to the contrary herein, evidentiary privileges, including but not limited to the attorney/client privilege, relating to (i) the Acquired Assets and (ii) any claims released pursuant to the Debtor Release (including any materials relating to the preparation, filing, or prosecution of these Chapter 11 Cases) shall not be transferred to the Liquidating Trustee and the Liquidating Trust hereunder. The Plan shall be considered a motion pursuant to sections 363 and 365 of the Bankruptcy Code for the purposes of granting such relief. Nothing herein nor any actions taken by the Debtors or the Liquidating Trustee pursuant hereto shall be deemed a waiver of any privilege or immunity of the Debtors or the Liquidating Trustee, including any attorney-client privilege, joint interest privilege, or work product privilege attaching to any documents or communications (whether written or oral).

### H. Plan Transactions

On the Effective Date or as soon as reasonably practicable thereafter, subject to the terms of the Plan, the Debtors and the Liquidating Trustee (as applicable) may take any and all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including, but not limited to, (1) the execution and delivery of appropriate agreements or other documents of consolidation, conversion, disposition, transfer, or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of any appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, duty, or obligation on terms consistent with the Plan; (3) the filing of appropriate documents with the appropriate governmental authorities pursuant to applicable law; and (4) any and all other actions that the Debtors or the Liquidating Trustee (as applicable) determine are necessary or appropriate to effectuate the Plan.

### I. Effectuating Documents and Further Transactions

Upon entry of the Confirmation Order, subject to the terms of the Plan, the Debtors and the Liquidating Trustee (as applicable) shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other

agreements or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of the Plan and any transactions described in or contemplated by the Plan. Subject to the terms of the Plan, the Debtors, the Liquidating Trustee, all Holders of Claims receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### J.    Section 1146 Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax, recordation fee, or governmental assessment. Such exemption specifically applies, without limitation, to the transfer of the Liquidating Trust Assets to the Liquidating Trust.

### K.    Sale Order

Notwithstanding anything to the contrary herein, nothing in the Plan, the Plan Supplement, the Liquidating Trust Agreement or the Confirmation Order, shall affect, impair, or supersede the Sale Order, which remains in full force and effect and governs in the event of any contradiction with the Plan, the Plan Supplement, the Liquidating Trust Agreement or the Confirmation Order.

### L.    Authority to Act

Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under the Plan that would otherwise require approval of the stockholders, security holders, officers, directors, or other owners of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the state in which the Debtors are formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, or other owners of the Debtors or notice to, order of, or hearing before, the Bankruptcy Court.

### M.    No Revesting of Liquidating Trust Assets

No Liquidating Trust Asset will revest in the Debtors on or after the date such asset is transferred to the Liquidating Trust, but will vest upon such transfer in the Liquidating Trust to be administered by the Liquidating Trustee in accordance with the Plan and the Liquidating Trust Agreement.

N.    **Cancellation of Securities and Agreements.**

Except for the purpose of enabling Holders of Allowed Claims to receive a distribution under the Plan as provided herein and except as otherwise set forth in the Plan, the Plan Supplement, or the Confirmation Order, on the Effective Date:  (1) the obligations of the Debtors under the Prepetition Secured Debt Documents and any other certificate, Security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) shall be cancelled solely as to the Debtors and their affiliates, and the Liquidating Trustee shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors and their affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds (but not including any surety bonds issued on behalf of any of the Debtors), indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of or ownership interests in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged. Notwithstanding the foregoing, no Executory Contract or Unexpired Lease that (i) has been, or will be, assumed pursuant to section 365 of the Bankruptcy Code or (ii) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date.

**ARTICLE V.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND INSURANCE POLICIES**

A.    **General Treatment**

On the Effective Date, except as otherwise provided herein (which exclusion includes the Insurance Policies), all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court will be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code other than those Executory Contracts or Unexpired Leases that are the subject of a motion to assume that is pending on the Effective Date or identified on the Schedule of Assumed Executory Contracts and Unexpired Leases.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, and payment of any Cure amounts relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall

be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court upon the Cure of all defaults under such Executory Contract or Unexpired Lease to the extent required under the Bankruptcy Code.

### B. Rejection Damages Claims

If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order results in a Claim, then, unless otherwise ordered by the Court, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Estates, the Liquidating Trustee, the Liquidating Trust, or any of their respective assets and properties unless a Proof of Claim is Filed with the Notice and Claims Agent within thirty (30) days of the Effective Date.

The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease under the Plan and Confirmation Order; any other Claims held by a party to a rejected Executory Contract or Unexpired Lease shall have been evidenced by a Proof of Claim Filed by the applicable Bar Date or shall be barred and unenforceable.  Claims arising from the rejection of Executory Contracts or Unexpired Leases under the Plan and Confirmation Order shall be classified as General Unsecured Claims and shall, if Allowed, be treated in accordance with Article III.B.4 of the Plan.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order that are not timely Filed within thirty (30) days of the Effective Date will be automatically disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Estates, the Liquidating Trustee, the Liquidating Trust, or any of their respective assets and properties.**

### C. Preexisting Obligations to Debtors under Executory Contracts or Unexpired Leases

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or Liquidating Trustee (as applicable) under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors and the Liquidating Trustee (as applicable) expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties, indemnity or continued maintenance obligations.

### D. Insurance Preservation

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan.  Unless otherwise provided in the Plan, on the Effective Date, (i) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims, including all D&O Liability Insurance Policies, and (ii) such insurance policies and any agreements, documents, or instruments relating thereto, including all D&O Liability Insurance Policies, shall vest in the Liquidating Trust.

33

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors, or their respective agents, shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Interests.  The Disbursing Agent shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring on or after the Distribution Record Date.  The Disbursing Agent shall be entitled to recognize and deal for all purposes hereunder only with those record Holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Debtors or the Liquidating Trustee (as applicable); *provided further*, *however*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder and the Debtors or Liquidating Trustee (as applicable) shall have no obligation to determine alternative or current addresses.

### B.    Withholdings

The Liquidating Trustee shall (1) withhold, deduct, and pay over to the appropriate governmental authority any amount required to be withheld under tax laws with respect to any distribution pursuant to the Liquidating Trust Agreement; and (2) comply with any reporting requirements imposed by any federal, state, local, or foreign taxing authority.  The Liquidating Trustee may withhold all or the appropriate portion of any distribution due to any Liquidating Trust Beneficiary to comply with any withholding requirements of any governmental authority.  Any tax withheld shall be treated as distributed and received by the applicable beneficiary for all purposes of the Liquidating Trust Agreement and Plan.  If a Liquidating Trust Beneficiary fails to provide the information necessary to comply with any withholding requirements of any governmental authority on or before the day that is six (6) months after the Effective Date of the Plan, then such beneficiary's distribution may be treated as unclaimed property in accordance with the Liquidating Trust Agreement.

### C.    Date of Distributions

Distributions made after the Effective Date to Holders of Allowed Claims shall be deemed to have been made on the Effective Date and no interest shall accrue or be payable with respect to such Claims or any distribution related thereto.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as

reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### D.      Disbursing Agent

Except as otherwise provided herein, all distributions under the Plan shall be made by the Disbursing Agent on or after the Effective Date.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.  If the Disbursing Agent is otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Liquidating Trust.

### E.      Powers of Disbursing Agent

Subject to the terms of the Plan, the Disbursing Agent may (1) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of the Plan; (2) make all distributions contemplated hereby; and (3) perform such other duties as may be required of the Disbursing Agent pursuant to the Plan.

### F.      Surrender or Cancellation of Instruments

As a condition precedent to receiving any distribution under the Plan, each holder of a certificated instrument or note, other than those certificated instruments or notes held by the Credit Agreement Agent or any other holder of a Credit Agreement Claim, which instruments and notes are deemed cancelled on and as of the Effective Date, must surrender such instrument or note held by it to the Disbursing Agent or its designee.  All notes or other instruments being held by the holder of such instrument or note that fails to (1) surrender the instrument or note; or (2) execute and deliver an affidavit of loss or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent within six (6) months of being entitled to such distribution shall be deemed to have forfeited all rights and claims and may not participate in any distribution hereunder.

### G.      IRS Forms

In connection with the Plan, to the extent applicable, the Debtors and the Liquidating Trustee (as applicable) shall comply with all tax withholding and reporting requirements imposed by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Debtors and the Liquidating Trustee (as applicable) shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors and the Liquidating Trustee reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

As a condition precedent to receiving any distribution under the Plan, each Holder of an Allowed Claim that is entitled to a distribution under the Plan must provide the Liquidating

Trustee an executed IRS Form.  An Allowed Claim of a Holder that fails to provide an executed IRS Form or provide any other required information to effectuate a distribution within sixty (60) days after service (by first class mail) of a formal request for the same by the Liquidating Trustee shall be deemed disallowed and expunged for purposes of distributions under the Plan.  For the avoidance of doubt, the Liquidating Trustee is not required to follow up with any Holder of an Allowed Claim if they fail to timely provide an executed IRS Form.

### H.    Delivery of Distributions

Subject to applicable Bankruptcy Rules, all distributions to Holders of Allowed Claims shall be made by the Disbursing Agent, who shall transmit such distributions to the applicable Holders of Allowed Claims or their designees.

If any distribution to a Holder of an Allowed Claim (a) is returned as undeliverable for lack of a current address or otherwise; or (b) is not cashed or otherwise presented for collection by the Holder of the Allowed Claim within sixty (60) days after the mailing of such distribution, the Liquidating Trustee shall be authorized to cancel such distribution check.  For the avoidance of doubt, the Liquidating Trustee shall have no obligation to determine the correct current address of such Holder.  Thirty (30) days after the cancellation of a distribution check by the Liquidating Trustee, (a) the Holder of such Claim shall cease to be entitled to the undeliverable distribution or uncashed distribution, which will revert to the Liquidating Trust for distribution in accordance with the Plan and the Liquidating Trust Agreement; and (b) the Allowed Claim of such Holder shall be deemed disallowed and expunged for purposes of further distributions under the Plan.

### I.    Manner of Payment

Any distributions to be made by or on behalf of the Debtors or the Liquidating Trustee (as applicable) pursuant to the Plan shall be made by checks drawn on accounts maintained by the Debtors or the Liquidating Trustee (as applicable), or by wire transfer if circumstances justify, at the option of the Debtors or the Liquidating Trustee (as applicable).

### J.    Foreign Currency Exchange Rate

As of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal* on the Petition Date.

### K.    Setoffs and Recoupments

The Debtors or the Liquidating Trustee (as applicable), pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy, and/or non-bankruptcy law, without the approval of the Bankruptcy Court and upon no less than fourteen (14) days' notice to the applicable Holder of a Claim, or as may be agreed to by the Holder of a Claim, may, but shall not be required to, setoff or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is to be made on account of such Allowed Claim), any claims of any nature whatsoever that the Debtors or their Estates may have against the Holder of such Allowed Claim; *provided*, *however*, that

neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Liquidating Trustee (as applicable) of any such claim the Debtors or their Estates may have against the Holder of such Claim.  The Debtors or the Liquidating Trustee (as applicable) shall be required to file such notice on the docket of the Chapter 11 Cases.

### L.     Minimum Distributions

No payment of Cash in an amount of less than fifty U.S. dollars ($50.00) shall be required to be made on account of any Allowed Claim.  Such undistributed amount may instead be used in accordance with the Plan and the Liquidating Trust Agreement.

If the Cash available for the final distribution is less than the cost to distribute such funds, the Liquidating Trustee may donate such funds to the unaffiliated charity of the Liquidating Trustee's choice.

### M.     Allocation of Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a distribution under the Plan includes both principal and accrued but unpaid prepetition interest, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid prepetition interest.

### N.     Distributions Free and Clear

Except as otherwise provided in the Plan, any distribution or transfer made under the Plan shall be free and clear of any Liens, Claims, encumbrances, charges, and other interests, and no other entity shall have any interest, whether legal, beneficial, or otherwise, in property distributed or transferred pursuant to the Plan.

**O.      Administrative / Priority Claims Reserve**

On or before the Effective Date, the Debtors shall transfer Cash to the Liquidating Trust in the Amount of an estimate of the Allowed Administrative Claims, Allowed Priority Claims and Allowed Other Secured Claims (reducing such reserve for any amounts held by creditors or other parties to satisfy those claims), which Cash shall be used by the Liquidating Trustee to fund the Administrative/Priority Claims Reserve.  The Cash so transferred shall not be used for any purpose other than to pay Allowed Administrative Claims, Allowed Priority Claims, and Allowed Other Secured Claims.  The Liquidating Trustee (i) shall segregate and shall not commingle the Cash held in the Administrative / Priority Claims Reserve and (ii) subject to the terms and conditions of the Plan and the Liquidating Trust Agreement, shall pay each Administrative Claim (except Professional Fee Claims, which shall be paid from the Professional Fee Reserve), Priority Claim and Other Secured Claim on or as soon as reasonably practicable after the date such Claim becomes an Allowed Claim.

**P.      Claims Paid or Payable by Third Parties**

1.      Claims Paid by Third Parties

If a Holder of a Claim receives a payment or other satisfaction of its Claim other than through the Debtors or the Liquidating Trustee (as applicable) on account of such Claim, such Claim shall be reduced by the amount of such payment or satisfaction without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, and if the Claim was paid or satisfied in full other than through the Debtors or the Liquidating Trustee (as applicable), then such Claim shall be disallowed and any recovery in excess of a single recovery in full shall be paid over to the Debtors or the Liquidating Trustee (as applicable) without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided, however*, that a notice of satisfaction shall be Filed and served reflecting that a particular Claim has been satisfied.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment or satisfaction from a party that is not the Debtors or the Liquidating Trustee (as applicable) on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the Debtors or Liquidating Trustee (as applicable), to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

2.      Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy or is required to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurer's agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Notwithstanding anything to the contrary contained herein, nothing contained in the Plan shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers, under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED CLAIMS

### A.    Allowance of Claims

After the Effective Date, the Liquidating Trustee shall have and retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date.

### B.    Claims Administration Responsibilities

Except as otherwise specifically provided in the Plan, after the Effective Date, subject to the Liquidating Trust Agreement, the Liquidating Trustee shall have the authority to: (1) File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

### C.    Estimation of Claims

Before or after the Effective Date, the Debtors or the Liquidating Trustee (as applicable) may (but is not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.

Notwithstanding any provision otherwise herein, a Claim that has been expunged or disallowed from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars ($0.00) unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Debtors or the Liquidating Trustee (as applicable) may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

### D.    Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied, or assumed by Purchaser or its affiliates in connection with the Sale Transaction, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors or the Liquidating Trustee (as applicable) without an objection to such Claim having to be Filed following notice filed on the docket (*i.e.*, a notice of satisfaction of claims) in the Bankruptcy Court of such adjustment or expungement.

### E.    Time to File Objections to Claims

Except as otherwise provided herein, any objections to Claims (other than Administrative Expense Claims) shall be Filed on or before the Claims Objection Deadline (as such date may be extended upon order of the Bankruptcy Court).

### F.    Disallowance of Late Claims

Except as provided in the Plan or otherwise agreed to by the Debtors or the Liquidating Trustee (as applicable), any Holder of a Claim Filed, via Proof of Claim, after the applicable Bar Date shall not receive any distributions on account of such Claims, to the extent such Claim has been disallowed and expunged upon objection on notice to the affected Claimant; *provided*, *however*, that any Claim Filed, via proof of claim, after the Effective Date of the Plan shall not receive any distributions on account of such Claim unless, within sixty (60) days of filing such Claim, the Claim has been deemed timely Filed by a Final Order approving a motion by such Holder satisfying the standard for excusable neglect.

### G.    Disputed Claims

All Claims held by Persons or Entities against whom or which the Debtors or the Liquidating Trustee (as applicable) has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed Disputed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject the Plan.  A Claim deemed Disputed pursuant to this Article VII.G shall continue to be Disputed for all purposes until the relevant proceeding against the Holder of such Claim has been settled or resolved by a Final Order and any sums due to the Debtors or the Liquidating Trustee (as applicable) from such Holder have been paid.

### H.    No Distributions Pending Allowance

If an objection to a Claim, Proof of Claim, or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim, Proof of Claim, or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

I.    **Distributions After Allowance**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim.  No interest shall accrue or be paid on any Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Claim.

**ARTICLE VIII.**
**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

A.    **Conditions Precedent**

The occurrence of the Effective Date of the Plan is subject to each of the following conditions precedent.

1.    The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2.    The Confirmation Order shall have been entered and shall be in full force and effect.

3.    There shall have been no modification or stay of the Confirmation Order or entry of any other order prohibiting the transactions contemplated by the Plan from being consummated.

4.    All TSA Service Periods, as defined in the Transition Services Agreement attached to the Purchase Agreement, have expired or terminated.

5.    The Debtors shall have paid all Allowed Professional Fee Claims in full in Cash and transferred Cash in an amount equal to the Professional Fee Reserve Amount with respect to any unpaid Professional Fee Claims, whether Allowed or otherwise, to the Professional Fee Reserve Account pending approval of such Professional Fee Claims by the Bankruptcy Court.

6.    The Administrative / Priority Claims Reserve shall have been funded in accordance with the Plan.

7.    All actions, documents and agreements necessary to implement the Plan shall have been effected, executed, and/or tendered for delivery.  All conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to

41

the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date).

        8.      The Liquidating Trust Agreement shall have been executed.

        9.      The Liquidating Trustee shall have been appointed and assumed its rights and responsibilities under the Plan and the Liquidating Trust Agreement, as applicable.

        10.      The Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents necessary to implement the Plan and any transaction contemplated hereby that are required by law, regulation, or order.

## B.    <u>Waiver of Conditions</u>

Unless otherwise specifically provided for in the Plan, the conditions set forth in Article VIII.A of the Plan may be waived in whole or in part by the Debtors, in consultation with the Committee and the Ad Hoc Group, without notice to any parties in interest or the Bankruptcy Court and without a hearing.

## C.    <u>Effect of Vacatur of the Confirmation Order</u>

If the Confirmation Order is vacated: (1) the Plan will be null and void in all respects, including with respect to the release of Claims and distributions for Allowed Claims; and (2) nothing contained in the Plan will (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors or (b) prejudice in any manner the rights, including any claims or defenses, of any party in interest.

## D.    <u>Votes Solicited in Good Faith</u>

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code.

## ARTICLE IX.
## RELEASE, INJUNCTION, AND RELATED PROVISIONS

## A.    <u>Releases by the Debtors</u>

**Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed forever released and discharged and acquitted by the Debtors and their Estates from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of the Debtors, that the Debtors or their Estates, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor, or other Entity, or that any Holder of any Claim against or Interest in a Debtor, or other Entity could have asserted on behalf of the Debtors, based on or relating to or in any manner arising from in whole or in part, the Debtors, their businesses, the Debtors' in- or out-of-court restructuring efforts, their**

capital structures, the purchase, sale, or recission of any security of the Debtors, any Avoidance Actions, intercompany transactions between or among the Debtors or between the Debtors and their non-Debtor Affiliates, the Confirmation Order, the Sale Order, the First Day Pleadings, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Sale Transaction, the Purchase Agreement, the Mexican Stock Purchase Agreements (as defined in the Sale Order (prior to closing thereof)), the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Sale Order, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (a) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, or any post-Effective Date transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (b) the rights of any Holder of Allowed Claims to receive distributions under the Plan; or (c) any matters retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for a hearing; and (f) a bar to any of the Debtors, or the Debtors' Estates asserting any claim or Cause of Action released pursuant to the Debtor Release.

B.      Releases by the Releasing Parties.

As of the Effective Date, each Releasing Party is deemed to have forever released and discharged and acquitted each Released Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, or the Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to or in any manner arising from, in whole or in part, the Debtors, the Debtors' in- or out-of-court restructuring efforts, their capital structures, the purchase, sale, or recission of any security of the Debtors, any Avoidance Actions, intercompany transactions between or among the Debtors or between the Debtors and their non-Debtor Affiliates, the Confirmation Order, the Sale Order, the First Day Pleadings, the Chapter 11 Cases, the formulation, preparation,

dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Sale Transaction, the Purchase Agreement, the Mexican Stock Purchase Agreements (as defined in the Sale Order (prior to closing thereof)), the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Sale Order, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (a) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, or any post-Effective Date transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) the rights of any Holder of Allowed Claims to receive distributions under the Plan, (c) any obligations incurred by any Seller (as defined in the Purchase Agreement) in the Sale Transaction, (d) any claims that are Remaining Credit Agreement Obligations (as defined in the Sale Order), or (e) any claims against any of the Debtors' non-debtor subsidiaries, including, without limitation, Tupperware Product A.G.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for a hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

C.      **Exculpation.**

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur any liability for, and each Exculpated Party is and shall be released and exculpated from any Cause of Action related to any act or omission in connection with, relating to or arising out of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of any prepetition transactions, the Disclosure Statement, the Plan, the Plan Supplement, or any contract, instrument, release or other agreement or document created or entered into in connection with any prepetition transactions, the Disclosure Statement, the Sale Transaction, the Purchase Agreement, the Plan, the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of the Sale Order, the pursuit of Confirmation, the pursuit of Consummation, the administration and

implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for Causes of Action related to any act or omission that is determined in a Final Order to have constituted willful misconduct or actual fraud.  For the avoidance of doubt, the Debtors themselves shall not be so released or exculpated from liability for the Remaining Prepetition Debt (as defined in the Sale Order), any claims included in the Acquired Assets (other than the Purchased Claims and the Acquired Avoidance Actions), or any other claims entitled to receive distribution under the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any obligations arising on or after the Effective Date of any Person or Entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.  **Further, the exculpation set forth above does not alter the obligations incurred by any Seller (as defined in the Purchase Agreement) in the Sale Transaction as set forth in the Purchase Agreement.**

D.    **Injunction.**

**In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors.  Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors.**  Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all **Persons or** Entities who have held, hold, or may hold ~~claims, interests~~**Claims, Interests**, or Causes of Action that have been released or are subject to exculpation under the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors **or the Liquidating Trust (but solely to the extent such action is brought against the Debtors or the Liquidating Trust to directly or indirectly recover upon any property of the Estates, upon the Effective Date)**, the Exculpated Parties, or the Released Parties **(including the Debtors), and any successors, assigns or representatives of such Persons or Entities**:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of

45

**Action unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim, interest, Cause of Action, or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, interests, or Causes of Action released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any post-Effective Date obligations of any party or entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. For avoidance of doubt, ~~post-Effective Date claims for performance of~~ obligations ~~under~~incurred by the Sellers (as defined in the Purchase Agreement) in the Sale Transaction are not subject to the foregoing injunction.**

**Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this section D hereof.**

### E.    No Discharge

Because the Debtors are liquidating, they are not entitled to a discharge of obligations pursuant to section 1141 of the Bankruptcy Code with regard to any Holders of Claims.

### F.    Release of Liens

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns.

If any Holder of a Secured Claim or any agent for such Holder has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Liquidating Trustee that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Liquidating Trustee shall be entitled to make any such filings or recordings on such Holder's behalf.

## ARTICLE X.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases, the Sale Transaction, the Confirmation Order, the Plan Supplement, and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction over, among other items, each of the following:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests.

2.      Resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including Claim objections, allowance, disallowance, subordination, estimation, and distribution.

3.      Decide and resolve all matters related to the granting and denying, in whole or in part of, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan.

4.      Resolve any matters related to:  (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which one or more Debtors is party or with respect to which the Debtors may be liable and to hear, determine, and, if necessary, liquidate, any Cure amount arising therefrom; and/or (b) any dispute regarding whether a contract or lease is or was executory or expired.

5.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date.

6.      Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code.

7.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters relating to the Retained Causes of Action.

8.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement.

9.      Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Person's or Entity's obligations incurred in connection with the Plan.

10.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with enforcement of the Plan.

11.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions.

12.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated.

13.     Determine any other matters that may arise in connection with or related to the Purchase Agreement or related Sale Transaction documents, the Disclosure Statement, the Plan, the Plan Supplement, and the Confirmation Order.

14.     Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan.

15.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by any Holder for amounts not timely repaid.

16.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order.

17.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, or the Confirmation Order.

18.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtors or the Liquidating Trustee on behalf of the Liquidating Trust (as applicable) for an expedited determination of tax under section 505(b) of the Bankruptcy Code).

19.     Recover all assets of the Debtors and property of the Estates, wherever located.

20.     Consider requests for extensions of the term of the Liquidating Trust.

21.     Enter an order or final decree concluding or closing the Chapter 11 Cases.

22.     Enforce all orders previously entered by the Bankruptcy Court.

23.     Hear any other matter over which the Bankruptcy Court has jurisdiction.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.      Modification of the Plan

Subject to the limitations contained in the Plan, the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules (1) to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129 of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### B.      Other Amendments

The Debtors may make appropriate non-material, technical adjustments and modifications to the Plan and the Plan Supplement prior to the Effective Date without further order or approval of the Bankruptcy Court.

### C.      Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### D.      Revocation of Plan; Effect of Non-Occurrence of Conditions to the Effective Date

Subject to the conditions to the Effective Date, the Debtors reserve the right to revoke or withdraw the Plan prior to entry of the Confirmation Order and to File subsequent plans of reorganization or liquidation.  If the Debtors revoke or withdraw the Plan, or if entry of the Confirmation Order or the Effective Date does not occur, then (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan, the Plan Supplement, the Confirmation Order, or the Disclosure Statement shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of the Debtors or any other Person or Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

### A.      Debtors' Operation from Combined Hearing Through Effective Date

During the period from the Combined Hearing through and until the Effective Date, the Debtors shall continue to operate as debtors-in-possession, subject to the oversight of the

Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

**B.      Immediate Binding Effect**

Notwithstanding Bankruptcy Rules 3020(e) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Liquidating Trustee, all Holders of Claims against and Interests in the Debtors (regardless of whether any such Holder has voted or failed to vote to accept or reject the Plan and regardless of whether any such Holder is entitled to receive any distribution under the Plan), all Persons or Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Person or Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases, and all parties in interest.

**C.      Additional Documents**

Subject to the terms of the Plan, on or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Subject to the terms of the Plan, the Debtors, the Liquidating Trustee, all Holders of Claims or Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may reasonably be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

**D.      Substantial Consummation**

On the Effective Date, the Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101 of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

**E.      Reservation of Rights**

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

**F.      Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, beneficiaries or guardian, if any, of each Person or Entity.

### G.    Determination of Tax Liabilities

As of the Effective Date, the Liquidating Trustee will be responsible for preparing and filing any tax forms or returns on behalf of the Estates and Liquidating Trust; *provided*, *however*, that the Liquidating Trustee shall not be responsible for preparing or filing any tax forms for Holders of Interests in the Debtors (which Interests shall be cancelled pursuant to the Plan), but shall provide such Holders with any information reasonably required to prepare such forms.  The Debtors and the Liquidating Trustee (as applicable) shall have the right to request an expedited determination of any tax liability pursuant to section 505 of the Bankruptcy Code, including on any unpaid liability of the Estate or the Liquidating Trust for any tax incurred during the administration of the Chapter 11 Cases.

### H.    Dissolution of the Committee

On the Effective Date, the Committee will dissolve and the members thereof will be released and discharged from all duties and obligations arising from or related to the Chapter 11 Cases; *provided*, *however*, that, after the Effective Date, the Committee will continue to exist solely with respect to any applications for Professional Fee Claims or expense reimbursements for members of the Committee, including preparing, objecting to, defending, and attending any hearing with respect to the same.  Any such payments made in connection therewith shall be made without any further notice to or action, order, or approval of the Bankruptcy Court.

### I.    Post-Effective Date Service List

Pursuant to Bankruptcy Rule 2002 and any applicable Local Rule, notice of all post-Confirmation matters for which notice is required to be given shall be deemed sufficient if served upon counsel for the Debtors, counsel to the Ad Hoc Group, U.S. Trustee, counsel for the Liquidating Trustee, and all persons on the Bankruptcy Rule 2002 service list as well as any parties who may be affected by the relief sought.  With the exception of the Liquidating Trustee and the U.S. Trustee, any Person desiring to remain on the Bankruptcy Rule 2002 service list shall be required to file a request for continued service and to serve such request upon counsel to the Liquidating Trustee within thirty (30) days after the Effective Date.  Persons shall be notified of such continued notice requirements in the notice of entry of the Confirmation Order.  **Persons who do not file a request for continued service within thirty (30) days subsequent to the Effective Date shall be removed from the Bankruptcy Rule 2002 service list.**

### J.    Notices

In order for all notices, requests, and demands to or upon the Ad Hoc Group, Debtors or the Liquidating Trustee, as the case may be, to be effective, such notices, requests and demands shall be in writing (including by electronic mail) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received, and served on or delivered to the following parties:

| Debtors | Counsel to the Debtors |
|---|---|

| | |
|---|---|
| Tupperware Brands Corporation<br>14901 South Orange Blossom Trail<br>Orlando, FL 32837<br>Attention: Karen Sheehan, Executive Vice President,<br>Chief Legal Officer & Secretary<br>E-mail address:<br>karensheehan@tupperware.com | Kirkland & Ellis LLP<br>333 W. Wolf Point Plaza<br>Chicago, IL 60654<br>Attention: Anup Sathy, P.C.<br>Spencer A. Winters, P.C.<br>Jeffrey T. Michalik<br>Gabriela Zamfir Hensley<br>E-mail address:<br>anup.sathy@kirkland.com<br>spencer.winters@kirkland.com<br>jeff.michalik@kirkland.com<br>gabriela.hensley@kirkland.com<br><br>and<br><br>Cole Schotz P.C.<br>500 Delaware Avenue, Suite 1410<br>Wilmington, DE 19801<br>Attention: Patrick J. Reilley<br>Stacy L. Newman<br>Michael E. Fitzpatrick<br>E-mail address:<br>preilley@coleschotz.com<br>snewman@coleschotz.com<br>mfitzpatrick@coleschotz.com |
| **Liquidating Trustee** | |
| To be included in the Plan Supplement | |

| **United States Trustee** | |
|---|---|
| Office of The United States Trustee<br>Attention: Timothy J. Fox<br>844 King Street<br>Suite 2207<br>Wilmington, DE 19801<br>Email Address:<br>Timothy.Fox@usdoj.gov | |
| **Ad Hoc Group of Secured Lenders** | **Counsel to the Ad Hoc Group of Secured Lenders** |
| c/o Dechert LLP<br>1095 Avenue of the Americas<br>New York, New York 10036-6797<br>Attention: Allan S. Brilliant | Dechert LLP<br>1095 Avenue of the Americas<br>New York, New York 10036-6797<br>Attention: Allan S. Brilliant<br>Shmuel Vasser<br>Stephen M. Wolpert<br>Miles Taylor<br>allan.brilliant@dechert.com<br>shmuel.vasser@dechert.com<br>stephen.wolpert@dechert.com<br>miles.taylor@dechert.com<br><br>and<br><br>Young Conaway Stargatt & Taylor LLP<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Attention: Robert S. Brady<br>Robert F. Poppiti, Jr.<br>rbrady@ycst.com<br>rpoppiti@ycst.com |

### K.    Term of Injunctions or Stays

Except as otherwise provided in the Plan, to the maximum extent permitted by applicable law and subject to the Bankruptcy Court's post-Confirmation jurisdiction to modify the injunctions and stays under the Plan (1) all injunctions with respect to or stays against an action against property of the Debtors or the Estates arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, and in existence on the date the Confirmation Order is entered, shall remain in full force and effect until such property is no longer property of the Debtors or the Estates; and (2) all other injunctions and stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (a) the date that the Chapter 11 Cases are closed pursuant to a Final Order of the Bankruptcy Court, or (b) the date that the Chapter 11 Cases are dismissed pursuant to a Final Order of the Bankruptcy Court.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect indefinitely.

**L.      Entire Agreement**

On the Effective Date, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**M.      Plan Supplement Exhibits**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Copies of such exhibits and documents shall be made available upon written request to Debtors' counsel or Liquidating Trustee's counsel (as applicable) at the address above or by downloading such exhibits and documents free of charge from the Notice and Claims Agent's website.

Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan, the Plan shall control.  The documents in the Plan Supplement are considered an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

**N.      Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

**O.      Non-Severability of Plan Provision Upon Confirmation**

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is the following: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors and the Liquidating Trustee (as applicable); and (3) non-severable and mutually dependent.

**P.**    **Closing of the Chapter 11 Cases**

After the full administration of the Chapter 11 Cases, the Liquidating Trustee shall promptly File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, a motion pursuant to Local Rule 3022-1(a), and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

Dated: ~~January 14~~March 6, 2025            TUPPERWARE BRANDS CORPORATION
                                             on behalf of itself and all other Debtors


                                             */s/ Brian J. Fox*
                                             Name:  Brian J. Fox
                                             Title:  Chief Restructuring Officer